Filed: 11/17/2015 4:35:15 PM
Eloy R. Garcia, District Clerk
Starr County, Texas

Ana Martinez

Cause No. DC-15-604

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP D/B/A ALLIED WASTE SERVICES OF RIO GRANDE VALLEY, Plaintiff | § § § § § | IN THE DISTRICT COURT |
| v. | § § § | |
| CITY OF RIO GRANDE, TEXAS AND ITS ELECTED OFFICIALS IN THEIR OFFICIAL CAPACITIES, | § § § § § | 229TH JUDICIAL DISTRICT |
| Defendants, | § § § | |
| v. | § § § | |
| GRANDE GARBAGE COLLECTION CO., Intervenor/Plaintiff. | § § § | STARR COUNTY, TEXAS |

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/18/2015 10:42:56 AM
KEITH E. HOTTLE
Clerk

## INTERVENER/PLAINTIFF GRANDE GARBAGE COLLECTION CO. AND DEFENDANTS CITY OF RIO GRANDE, TEXAS AND ITS ELECTED OFFICIALS IN THEIR INDIVIDUAL CAPACITIES' JOINT NOTICE OF INTERLOCUTORY APPEAL

Intervener/Plaintiff Grande Garbage Collection Co.[1] and Defendants City of Rio Grande, Texas and Its Elected Officials in Their Official Capacities[2] desire to appeal from the "temporary injunction order" signed by the Court in the above-referenced matter on November 10, 2015.[3] This appeal is taken to the Fourth Court of Appeals at San Antonio, Texas. This is an accelerated appeal, but it is not a parental termination or child protection case, as defined in Texas Rule of Appellate Procedure 28.4.

---

[1] Intervener/Plaintiff Grande Garbage Collection Co. intervened in this case while pending in federal court after removal by Defendants City of Rio Grande City, Texas and Its Elected Officials in Their Official Capacities. *See* attached Ex. A, B, C.

[2] The Elected Officials of the City of Rio Grande, Texas are Mayor Joel Villarreal, Herman R. Garza III, Arcadio Salinas III, Rey Ramirez, and Dave Jones, and they join in this appeal.

[3] *See* attached Ex. D; TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4); TEX. R. APP. P. 26.1(b).

INTERVENER/PLAINTIFF GRANDE GARBAGE COLLECTION CO. AND DEFENDANTS CITY OF RIO GRANDE, TEXAS AND ITS ELECTED OFFICIALS IN THEIR INDIVIDUAL CAPACITIES' JOINT NOTICE OF INTERLOCUTORY APPEAL

1

Respectfully submitted,

/s/ Brandy Wingate Voss
Brandy Wingate Voss
State Bar No. 24037046
Smith Law Group LLLP
820 E. Hackberry Ave.
McAllen, TX 78501
(956) 683-6330
(956) 225-0406 (fax)
brandy@appealsplus.com

*Appellate Counsel for Intervener/Plaintiff Grande Garbage Collection Co.*

Eloy R. Garcia, Jr.
Law Office of Eloy R. Garcia, Jr.
State Bar No. 24043671
118 E. Cano
Edinburg, Texas 78539
(956) 287-0416
(956) 287-3716 (fax)
eloygarciajr@gmail.com

*Trial Counsel for Intervener/Plaintiff Grande Garbage Collection Co.*

/s/ Jacqueline Lefevre Salinas with permission by Brandy Wingate Voss
Jacqueline Lefevre Salinas
State Bar No. 24027947
Salinas Law Firm
507 N. Briton Ave.
Rio Grande City, Texas 78582
(956) 488-1000
(956) 317-1269 (fax)
salinaslawfirm@gmail.com

*Counsel for Defendants City of Rio Grande City, Texas And Its Elected Officials in Their Official Capacities*

Antonio Martinez
State Bar No. 13139000
Martinez, Barrera, y Martinez L.L.P.
1206 E. Van Buren St.
Brownsville, Texas 78520
(956) 546-7159
(956) 544-0602 (fax)
Tony@mbymlaw.com

*Counsel for Defendants City of Rio Grande
City, Texas And Its Elected Officials in Their
Official Capacities*

## CERTIFICATE OF SERVICE

By my signature above, I certify that on the 17th day of November 2015, a true and correct copy of the foregoing document was served on the following parties by electronic mail and/or facsimile as follows:

John David Franz
Law Office of John David Franz
400 N. McColl Rd. Ste. B
McAllen, Texas 78501
(956) 686-3578 (fax)
jdf@johndavidfranz.com

*Counsel for Plaintiff BFI Waste Services of Texas, LP, d/b/a
Allied Waste Services of Rio Grande Valley*

Gilberto Hinojosa
Hinojosa Law Firm
622 E. St. Charles
Brownsville, Texas 78520
ghinojosa@ghinojosalaw.net
(956) 544-1335 (fax)

*Counsel for Plaintiff BFI Waste Services of Texas, LP, d/b/a
Allied Waste Services of Rio Grande Valley*

/s/ Brandy Wingate Voss
Brandy Wingate Voss

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, | § | |
| LP, D/B/A ALLIED WASTE | § | |
| SERVICES OF RIO GRANDE | § | |
| VALLEY. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CASE NO. 7:15-cv-459 |
| | § | |
| CITY OF RIO GRANDE CITY, TEXAS | § | |
| AND IT'S ELECTED OFFICIALS IN | § | |
| THEIR OFFICIAL CAPACITIES | § | |
| Defendants/Counter Plaintiffs | § | |

## ORIGINAL PETITION IN INTERVENTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure and Rule 60 of the Texas Rules of Civil Procedure, NOW COMES Grande Garbage Collection Company, hereinafter called Intervenor, and files this Original Petition in Intervention and in support hereof, shows the Court the following:

### I. PARTIES

1.      Intervenor GRANDE GARBAGE COLLECTION COMPANY ("GRANDE GARBAGE") is a Texas corporation with its principal office located at 505 E. Main St., Rio Grande City, Starr County, Texas.

2.      Plaintiff/Counter Defendant BFI WASTE SERVICES OF TEXAS, LP, D/B/A ALLIED WASTE SERVICES OF RIO GRANDE VALLEY ("ALLIED WASTE") a Delaware Limited Partnership, with its principal place of business and headquarters in Phoenix, Arizona, may be served with process at 18500 North Allied Way, Phoenix, Arizona 85054.

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, CLERK
By _____
Deputy Clerk

3.     Defendant/Counter Plaintiff CITY OF RIO GRANDE , TEXAS and its Mayor Joel Villarreal, Mayor Pro-Tem Hernan R. Garza III, Arcadio Salinas III, Rey Ramirez and Dave Jones ("CITY") is a home rule formed under the laws of and incorporated in the state of Texas. All may be served at 5332

## II.  ORIGINAL LAWSUIT

4.     Allied Waste initiated this action for the purpose of seeking declaratory judgment, injunctive relief and damages.  The City has asserted a general denial and affirmative defenses along with a counterclaim for breach of contract, etc., against Allied Waste.

## III.  VENUE AND JURISDICTION

5.     This Court has subject matter jurisdiction and diversity jurisdiction over this case because the amount in controversy exceeds the minimum jurisdictional requirements and diversity exists between the parties.

## IV.  FACTUAL ALLEGATIONS

6.     On September 9, 2015, the City Council of Rio Grande City, Texas ("City") at a duly called meeting of the council voted to terminate the services of Allied Waste effective 30 days from the day of this vote. The City also approved the City Administration to negotiate a contract with a third party solid waste provider.  A true and correct copy of the City agenda and the Minutes for the City meeting are attached as "Exhibit A and Exhibit B."

7.     After the September 9, 2015 Council vote, negotiations between the City Manager and Grande Garbage began.  On September 14, 2015, Allied Waste was notified and had actual knowledge that their contract with the City was terminated and to cease operations on October 9, 2015.  On September 18, 2015, Allied Waste sent Grande Garbage a "Notice to Cease and Desist Solid Waste Collection in Violation of Exclusive License possessed by Allied Waste."  A copy of this notice is attached as "Exhibit C."  Grande Garbage did not respond to Allied Waste's Notice.  Grande Garbage at the time of the notice and to this day, provides solid waste collection services to the County of Starr and to the Rio Grande City CISD under Grande Garbage's own exclusive franchise collection contract.  Collection for those entities takes place within and outside of the corporate city limits of Rio Grande City.  A true and correct copy of the contract between Grande Garbage and Rio Grande City CISD is attached as "Exhibit D."

8.     On September 28, 2015, the City Council held a meeting in which the discussion and possible action to approve an agreement with Grande Garbage for solid waste services was on the agenda.  A true and correct copy of the City agenda is attached as "Exhibit E."  The City approved the

awarding of the solid waste collection and disposal service contract to Grande Garbage. A true and correct copy of the City minutes is attached as "Exhibit F." The Contract for Solid Waste Collection and Disposal Service ("Contract") was entered into and executed by all parties on September 28, 2015. The effective date for services to begin was on October 10, 2015. A true and correct copy of the Contract is attached as "Exhibit G."

9.       On October 8, 2015, Allied Waste instituted a lawsuit against the City for declaratory judgment, injunctive relief and damages ("Lawsuit"). A copy of the Lawsuit is attached as "Exhibit H." In the Lawsuit, Allied Waste applied for and was granted a Temporary Restraining Order("TRO") that allowed Allied Waste to continue operating and usurped Grande Garbage's ability to perform under its contract with the City. The City filed its answer and counter claim against Allied Waste for breach of contract, fraud and other causes of action. A copy of the City's Original Answer and Counterclaim is attached as "Exhibit I."

10.       On October 22, 2015, a hearing on the TRO was held in the 229th District Court. During this hearing, counsel for Allied Waste introduced as Exhibit 19 a misleading, false, and potentially fraudulent City Agenda ('FALSE AGENDA") that omitted section 3 of "Exhibit E" entitled City Manager's Report. A copy of the FALSE AGENDA is attached as "Exhibit J."

11.       At the end of the hearing on October 22, 2015, the court extended the TRO. The proceedings were terminated in favor of Allied Waste and once again stopping Grande Garbage from being able to perform under their contract which was in effect on October 10, 2015

12.       On October 31, 2015, the City filed their Notice of Removal to Federal Court.

## V.   INTERVENOR'S INTEREST IN THIS ACTION

13.       Intervenor has a justiciable interest in the matters in controversy in this litigation in that Allied Waste seeks to have the Contract between Grande Garbage and the City declared void and to assert its own contract valid, even though it has been terminated. Allied Waste's actions to this point have interfered with Grande Garbage's Contract with the City.

14.       A party holds a justiciable interest in a lawsuit when her interests will be affected by the litigation. *In Re Union Carbide Corp.*, 273 S.W. 3d 152, 155 (Texas 2008); *Law Office of Windle Turley, P.C. v. Ghiasinefad*, 109 S.W. 3d 68, 70 (Tex. App.-Fort Worth 2003, no pet.). A party may intervene in a suit if she could have brought all or part of the same suit in her own name. *In Re Union Carbide Corp.*, 273 S.W. 3d at 155; *Guar. Fed. Sav. Bank v. Horseshoe Operating Co*, 793 S.W. 2d 652, 657 (Tex. 1990); *E & B Carpet Mills v. State*, 776 S.W. 3d 286, 290 (Tex. App.-Austin 1989, writ dism'd).

15.       Intervention will not complicate the case by excessively multiplying the issues underlying this suit.

16. Intervenor's intervention in this action is essential to effectively protect the Intervenor's interest, as their claims involve the same facts and allegations as set forth by the City.

## V. CAUSES OF ACTION

### a. FIRST CAUSE OF ACTION: VIOLATION OF CONTRACT CLAUSE-U.S.

15. The actions of Allied Waste as set forth above substantially impair the contractual rights of Grande Garbage to be the exclusive provider of solid waste and disposal services in the corporate limits of the City.

16. The actions of Allied Waste do not advance a legitimate public goal, much less a significant and legitimate public goal.

17. Even if the actions of Allied Waste were to advance a legitimate public goal, its actions were neither reasonable nor necessary to advance such a goal.

18. Therefore, Allied Waste's actions violate the "Contract Clause" of the United States Constitution, Article 1, Section 10.

### b. SECOND CAUSE OF ACTION: VIOLATION OF CONTRACT CLAUSE-TEXAS

19. The actions of Allied Waste are specifically directed at and directly repudiate Grande Garbage's contractual rights to provide exclusive solid waste and disposal services in the corporate limits of the City.

20. The actions of Allied Waste do not represent an exercise of the police powers.

21. Therefore, Allied Waste's actions violate the "Contract Clause" of the Texas Constitution, Article 1, Sections 16 and 29.

### c. THIRD CAUSE OF ACTION: VIOLATION OF DUE COURSE OF LAW CLAUSE-TEXAS

22. The actions by Allied Waste improperly impair Grande Garbage's vested rights under the Contract between the City and Grande Garbage.

23. The "due course of law" clause of the Texas Constitution prevents any person, entity , or city from depriving a citizen of the state of vested rights unless its acts according to its police powers and by due course of law.

24. Allied Waste's actions do not represent an exercise of the police powers. Because Allied Waste's actions will impair Grande Garbage's vested rights under the contract between the City and Grande Garbage, Allied Waste's actions violate the "due course of law" clause of the Texas Constitution, Article 1, Section 19.

### d. FOURTH CAUSE OF ACTION: VIOLATION OF THE 14TH AMENDMENT-U.S.

25.     Allied Waste's action will deprive Grande Garbage of its vested right under the Contract.

26.     Allied Waste did not afford Grande Garbage any due process of law before taking the actions which will deprive Grande Garbage of its vested rights.

27.     Allied Waste's actions are not an exercise of its police power.

28.     The Due Process Clause, U.S. Const. Amend. 14, protects citizens from being subject to actions by Allied Waste which Allied Waste does not have the power to take.

29.     Allied Waste's actions will deprive Grande Garbage of those rights without due process of law in violation of U.S. Const. Amend. 14. Section 1.

e.  **FIFTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH A CONTRACT**

30.     On September 28, 2015, the City and Grande Garbage entered into a contractual agreement, as set forth in "Exhibit G," that gave Grande Garbage the exclusive right to perform all solid waste collection and disposal services throughout the city limits of Rio Grande City.

31.     Allied Waste was given notice on September 14, 2015 that its own contract was terminated and service to the City was ending on October 9, 2015. Allied Waste was on notice that Grande Garbage was awarded the new contract to be the sole provider of solid waste collection and disposal services in the City. Additionally, Allied Waste had knowledge of the fact and was aware of circumstances that Grande Garbage was commencing to begin service on October 10, 2015.

32.     Allied Waste willfully and intentionally brought forth its Lawsuit along with the TRO on October 8, 2015 solely to cause damage to Grande Garbage in their lawful business. Allied Waste had substantial time to assert its claims prior to the commencement of Grande Garbage's contract. Allied Waste failed to assert its claims in a timely manner and did so with the intent to damage Grande Garbage, knowing that such action would interfere and disrupt Grande Garbage from operating under the Contract. Allied Waste's actions were the proximate cause of harm to Grande Garbage.

33.     Allied Waste's actions at the October 22, 2015 TRO hearing, where a misleading and potentially fraudulent document was introduced as an exhibit constitute malicious and fraudulent intentions on the part of Allied Waste. The intent to introduce such a document with the purpose to void Grande Garbage's Contract would deprive Grande Garbage of its vested right to be the exclusive provider of solid waste collection and disposal services in the City.

**VI. DAMAGES**

34.     As a result of Allied Waste's actions, Intervenor has suffered loss and actual damages and seeks unliquidated damages within excess of the jurisdictional limits of this court.

**VII. EXEMPLARY DAMAGES**

35.     Intervenor, Grande Garbage's injury resulted from Allied Waste's malice and actual fraud which entitles Grande Garbage to exemplary damages under Texas Civil Practice and Remedies Code Section 41.003(a).

## VIII.  ATTORNEY'S FEES

36.     Intervenor, Grande Garbage is entitled to and requests judgment against Allied Waste for Grande Garbage's reasonable and necessary attorney's fees incurred in bringing and prosecuting this action. Grande Garbage is entitled to attorney's fees pursuant to the Texas Civil Practice and Remedies Code Section 38.000 *et. seq*.

## IX.  JURY DEMAND

37.     Grande Garbage hereby requests a trial by jury.

## X.     PRAYER

WHEREFORE PREMISES CONSIDERED, Intervenor Grande Garbage prays the Court order the following relief:

1.     Judgment against Allied Waste for an amount within the jurisdiction of the court.

2.     Judgment against Allied Waste for exemplary damages as determined by the trier of fact, together with interest at the highest allowed by law per year from the date of the judgment until paid.

3.     All reasonable attorney's fees in bringing this action.

4.     Award Grande Garbage its reasonable costs in bringing this action.

5.     Costs of the court and pre-judgment and post-judgment interest allowed by law.

6.     Provide for such other and further relief at law and in equity to which Grande Garbage may be justly entitled.

Respectfully submitted,

LAW OFFICE OF ELOY R. GARCIA, JR.
118 E. Cano
Edinburg, Texas 78539
Phone:     (956) 287-0416
Facsimile: (956) 287-3716
Email:  eloygarciajr@gmail.com

By:_____
ELOY R. GARCIA, JR.
State Bar No. 24043671
Federal Bar No. 847118

ATTORNEY FOR INTERVENOR


## CERTIFICATE OF SERVICE


The undersigned certifies that the foregoing document was served electronically and through facsimile on this ___31st___ day of October, 2015 to the following:

Salinas Law Firm
507 N. Briton Ave
Rio Grande City, Texas 78582
Office: (956) 488-1000
Fax: (956) 317-1269
Email: salinaslawfirm@gmail.com
Attorney for Rio Grande City

Law Office of John David Franz
400 N. McColl Rd.
Ste. B
McAllen, Texas 78501
Office: (956) 686-3300
Fax: (956) 686-3578
Email: jdf@johndavidfranz.com
Attorney for Allied Waste

THE STATE OF TEXAS        §
                                       §

COUNTY OF STARR        §

### VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared PATRICIO Hernandez, who swore upon his oath that the following facts are true and correct:

"My name is PATRICIO HERNANDEZ. I am the Plaintiff in the above styled and numbered cause."

"I hereby verify that I have read the foregoing PLAINTIFF'S ORIGNAL PETITION and that the facts set forth in said Petition are true and correct.

BY: _____
            Patricio Hernandez

SWORN AND SUBSCRIBED TO BEFORE ME by the said PATRICIO HERNANDEZ, on this

the 31 day of October, 2015.

_____
Notary Public in and for The State of Texas

My Commission expires: _1_/_22_/_2019_

NANCY L. GARZA
Notary Public
STATE OF TEXAS
My Comm. Exp. Jan. 22, 2019



# RIO GRANDE CITY
*Hill Country of the Valley*

STATE OF TEXAS     *

                       *      CERTIFICATE OF PUBLIC RECORD

COUNTY OF STARR     *

I, Holly D. Guerrero, hereby certify, in the performance of the functions of my office, that the following is a true and correct copy of the agenda posted for the Rio Grande City Commission Meeting held on September 9, 2015 and the same appears of record in my office; and that said copy is an official record from the public office of the City Secretary of Rio Grande City, Starr County, Texas, and is kept in said office.

In witness whereof I have hereunto set my hand and affixed the official seal of said office this 28th day of October, 2015.

Holly D. Guerrero
City Secretary





AGENDA OF A REGULAR MEETING OF THE
CITY COMMISSION OF RIO GRANDE CITY
WEDNESDAY, SEPTEMBER 9, 2015  6:00 PM
COMMISSION CHAMBERS, CITY HALL
5332 E. Highway 83    Rio Grande City, Texas

1.  GENERAL:
   A)  Call to order, invocation and Pledge of Allegiance.
   B)  Roll call and finding of quorum.
   C)  Public Forum.
   D)  Departmental Reports.

2.  **CONSENT AGENDA:** *[All matters listed under Consent Agenda are considered to be routine by the Commission and will be enacted by one motion. There will be no separate discussion of these items; however, if discussion is desired, that item(s) will be removed from the Consent Agenda and will be considered separately.]*
   A)  Approval of Departmental Travel Requests.
   B)  Approval of EDC action from meeting of September 1, 2015.

3.  ORDINANCES
   A)  Second Reading and adoption of Ordinance No. 2015-8 amending Ordinance 2007-12 Municipal Solid Waste.
   B)  First Reading and approval of Ordinance No. 2015-9 adopting the General, Special and Enterprise Funds Budget for fiscal year 2015-2016.
   C)  First Reading and approval of Ordinance No. 2015-10 establishing an ad valorem tax and levying a maintenance and operation tax rate and an interest and sinking tax rate for the tax year ending 2015.

4.  RESOLUTIONS
   A)  Discussion and possible action to approve Resolution No. 2015-28 authorizing the submission of a grant application for the 2016 Local Border Security Program (LBSP), Office of the Governor, Criminal Justice Division.
   B)  Discussion and possible action to approve Resolution No. 2015-29 authorizing the submission of an application for funding assistance to the Texas Water Development Board for the planning, design and construction of an elevated water tank to replace the existing tank on Garcia Street.

5.  CONTRACTS AND AGREEMENTS
   A)  Discussion and possible action to approve a Professional Services Agreement with Hollis Rutledge & Associates, Inc. to begin November 20, 2015 with a one year option to renew.
   B)  Discussion and possible action to approve a Lease Agreement with the RGC EDC for premises at 406 E. Main Street for the Main Street Coordinator office.
   C)  Discussion and possible action to approve a Lease Agreement with Behavioral Health Solutions of South Texas for premises at 405 E. Mirasoles, Suite A., Lopez-Tijerina-Complex.
   D)  Discussion and possible action to approve a Memorandum of Understanding with the U.S. Fish and Wildlife Service for the use of Fire Station #2.
   E)  Discussion and possible action to approve the Engagement of Bond Counsel agreement with The J. Ramirez Law Firm.

6.  PLANNING
   A)  Discussion and possible action on setback and parking variance request by Verdad Real Estate for a proposed Carl's Jr Restaurant to be located at 4011 E Hwy 83.
   B)  Discussion and possible action on request by Rio Delta Engineering for final approval of the Laredo Estates Subdivision Phase 1.
   C)  Discussion and possible action on request by Melden and Hunt for preliminary and final approval of the Divino Descanso Subdivision.
   D)  Discussion and possible action on request by Mas Engineering for preliminary and final approval of the Jesus Garcia Commercial Subdivision.

7. **EXECUTIVE SESSION, CHAPTER 551, TEXAS GOVERNMENT CODE SECTION 551.071 (Consultation with Attorney) and SECTION 551.072 (Deliberations regarding Real Property)**
   A) Discussion and possible action – Consultation with attorney regarding Cause No. DC-14-182 Jose De La Fuente f/d/b/a Del Sol Homes and Del Sol Homes, LLC vs. Rio Grande City, Texas, 229th District Court of Starr County, Texas.
   B) Discussion and possible action – Consultation with attorney regarding Cause No. DC-10-279 Remedios Herrera v. City of Rio Grande City, 381st District Court of Starr County, Texas.
   C) Discussion and possible action – Consultation with attorney regarding Cause No. DC-15-471, Maria Julissa Pena, et al v. Rio Grande City, Texas, 381st District Court of Starr County, Texas.
   D) Discussion and possible action regarding notice to Allied Waste through Resolution No. 2015-9 and response from Allied Waste.
   E) Discussion and possible action regarding Prospect No. 2015-6.

8. **ADJOURNMENT**

> With regard to any item, the City Commission may take various actions including but not limited to rescheduling an item in its entirety for a future date or time. The City Commission may elect to go into Executive Session on any item listed above as authorized by the Texas Government Code Sections 551.071(Consultation with Attorney), 551.072 (Deliberations regarding Real Property), 551.072 (Deliberations regarding Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations regarding Security Devices) and 551.087 (Deliberations regarding Economic Development Negotiations).

## CERTIFICATION

This is to certify that I, Holly D. Guerrero, posted this Notice on the alcove wall adjacent to the front door entrance of City Hall, visible and accessible to the general public during and after regular working hours. This Notice was posted on the 4th day of September 2015 on or before 5:00 pm and will remain so posted for at least 72 hours preceding the scheduled time of said meeting in accordance with Chapter 551 of the Texas Government Code.

Holly D. Guerrero, City Secretary

City Commission
9-9-2015



# RIO GRANDE CITY
*Hill Country of the Valley*

STATE OF TEXAS          *
                        *          CERTIFICATE OF PUBLIC RECORD
COUNTY OF STARR         *

I, Holly D. Guerrero, hereby certify, in the performance of the functions of my office, that the following is a true and correct copy of the approved minutes of the City of Rio Grande City Commission Meeting held on September 9, 2015 and the same appears of record in my office; and that said copy is an official record from the public office of the City Secretary of Rio Grande City, Starr County, Texas, and is kept in said office.

In witness whereof I have hereunto set my hand and affixed the official seal of said office this 28th day of October, 2015.

Holly D. Guerrero
City Secretary



MINUTES OF A REGULAR MEETING OF THE
CITY COMMISSION OF RIO GRANDE CITY
WEDNESDAY, SEPTEMBER 9, 2015  6:00 PM
COMMISSION CHAMBERS
5332 E. U.S. Highway 83  Rio Grande City, Texas  78582

Officials Present:
Mayor Joel Villarreal
Mayor Pro-Tem Hernan R. Garza, III
Commissioner Arcadio J. Salinas, III
Commissioner Rey Ramirez
Commissioner Dave Jones
Deputy City Manager Elisa Y. Beas
City Attorney Kennedy Salinas
City Secretary Holly D. Guerrero

CALL TO ORDER (Item 1A)
Mayor Villarreal called the meeting to order at 6:00 pm; the invocation was given and the assembly recited the U.S and Texas Pledge of Allegiance.

ROLL CALL (Item 1B)
The roll was called and a quorum was declared.

PUBLIC FORUM (Item 1C)
No one requested to address the Commission on the Public Forum.

DEPARTMENTAL REPORTS (Item 1D)
Departments submitting reports in the Agenda Packet were:  Police Dept.; Fire Dept.; Municipal Court; Public Works; Planning / Code Enforcement and Animal Control; Parks and Recreation; Finance; Municipal Library; Personnel; and Tourism and Heritage.  The Public Utility Department distributed a report at the meeting.  The following items were highlighted by department:

- Public Works – Mr. Guerra, Director, is planning the installation of 22 new streetlights, mostly in the Los Trevinos area.  Please see Exhibit A detailing the location of the proposed new streetlights.
- Municipal Library – The library will be celebrating its' 25th year anniversary this month.
- Tourism & Heritage – The Viva Mexico event will be held on Sept. 12 at Britton Ave.  Planning is ongoing for the Halloween in the Park event.
- Parks & Rec – Registration for Pee Wee football has increased.  The re-surfacing of the basketball court at Villarreal Park has begun.
- Public Utility – Delinquent accounts are being reduced.
- Police Dept. – Ten new body cameras have been ordered.
- Fire Dept. – Working with FEMA on the disaster relief funding from the May flooding.  Fire Prevention Week coming up in October.
- EDC – Ms. Guillen and Ms. Beas are working with Lewis Zwick and Larry Gonzalez of Plains Capital Bank on a development plan for the area.
- Animal Control – Had a surprise visit from the state to inspect the kennel; no demerits were assessed.
- Municipal Court – Recommended favorable on item 5C of this agenda.  Announced that Mr. R.C. Salinas will be working with the court to coordinate volunteer service hours.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

CONSENT AGENDA (Items 2A, 2B)
All matters on the Consent Agenda were considered to be routine by the Commission and were enacted by one motion. There was no separate discussion of the items. Cmr. Salinas moved to approve the Consent Agenda items and Cmr. Ramirez seconded the motion. The motion passed unanimously.   The items approved were as follows:
  2A)   Departmental Travel requests as per list attached as Exhibit B.
  2B)   EDC action taken at meeting of 9-1-2015; copy of memo from EDC Executive Director attached as Exhibit C.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

ORDINANCE NO. 2015-8, MUNICIPAL SOLID WASTE (item 3A)
The first reading of this ordinance was at the meeting of August 12, 2015.  This ordinance amends previous Ordinance No. 2007-12 which stated that the solid waste collection contractor for the city shall have the sole and exclusive franchise to collect within the city limits.  This amendment continues the solid waste franchise but excludes governmental entities within the city boundaries such as a county or school district entity which are considered sovereign governmental entities.  Cmr. Ramirez moved to adopt Ordinance No. 2015-8 and Mayor Pro-Tem Garza seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

ORDINANCE NO. 2015-9, GENERAL, SPECIAL AND ENTERPRISE FUNDS BUDGET FOR FISCAL YEAR 2015-2016 (item 3B)
The Budget for Fiscal Year 2015-2016 is a balanced budget prepared with a modest 4% increase in revenue to support the maintenance and operation of the City.  The budget allows for an increase in personnel to keep up with the City's growth in terms of health and safety services.  It also provides for overtime pay for a majority of the department heads under the proposed new labor regulations.   There are also provisions for the upcoming May 2016 election and the costs associated with new debt payments from the purchase of communication and road equipment.  Staff recommends approval of the first reading of Ordinance No. 2015-9.  Mayor Pro-Tem Garza moved to approve the first reading of the ordinance and Cmr. Ramirez seconded the motion.  A record vote was called and the Commission voted as follows:  Mayor Villarreal – In Favor; Mayor Pro-Tem Garza – In Favor; Cmr. Salinas – In Favor; Cmr. Ramirez – In Favor;  Cmr. Jones – In Favor. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

ORDINANCE NO. 2015-10, AD VALOREM TAX RATE FOR TAX YEAR 2015 (Item 3C)
The proposed tax rate for tax year 2015 is as follows:
| Maintenance and Operations rate | .412128 per $100 valuation |
| Interest and Sinking rate | .102621 per $100 valuation |
| Total Tax Rate | .514749 per $100 valuation |

This is the same rate as last year and the year before; however the proposed ad valorem rate is 3.69% higher than the effective rate which was calculated by the Tax Assessor-Collector to be .496427 per $100 valuation. This difference required the City to hold public hearings which were held on August 24 and August 31. Mayor Pro-Tem Garza moved that the property tax rate be increased by the adoption of a tax rate of 0.514749, which is effectively a 3.69 percent increase in the tax rate. Cmr. Ramirez seconded the motion and a record vote was called.  The Commission voted as follows: : Mayor Villarreal – In Favor;

Mayor Pro-Tem Garza – In Favor; Cmr. Salinas – In Favor; Cmr. Ramirez – In Favor; Cmr. Jones – In Favor.
The motion passed unanimously.
The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## RESOLUTION NO. 2015-28, LOCAL BORDER SECURITY PROGRAM 2016 GRANT APPLICATION (Item 4A)
Chief Castillo was present to address the Commission on this item. This resolution authorizes the submission of a grant application for the 2016 Local Border Security Program (LBSP) funding in the amount of approximately $130,000.00. The resolution also designates Elisa Y. Beas, Deputy City Manager, as the City's authorized official. Chief Castillo informed the Commission that the funds would be used for overtime for police officers. Mayor Pro-Tem Garza moved to approve Resolution No. 2015-28 and Cmr. Jones seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## RESOLUTION NO. 2015-29 AUTHORIZING A GRANT APPLICATION TO THE TEXAS WATER DEVELOPMENT BOARD, GARCIA STREET WATER TANK PROJECT (Item 4B)
At the meeting of August 12, 2015, Resolution No. 2015-27 was adopted authorizing the grant application for the planning, design and construction of a new elevated water tank to replace the existing tank on Garcia Street. However, the Bond Counsel name has changed making it necessary to re-approve the resolution. Cmr. Ramirez moved to approve Resolution No. 2015-29 and Cmr. Salinas seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## HOLLIS RUTLEDGE & ASSOCIATES, INC. PROFESSIONAL SERVICES AGREEMENT (Item 5A)
Mr. Hollis Rutledge was present to address the Commission on this item. Ms. Beas informed the Commission that Mr. Rutledge was instrumental in assisting the City in securing funding for the Garcia Street Water Tank project from TWDB, the Skate Ramp facility from TX Parks and Wildlife and the Los Olmos Drainage Improvement project from the EDA and his services will be needed for future projects. The professional services agreement provides for grant application preparation, agency representation and legislative liaison services and begins on November 20, 2015 for one year with a one year option to renew. Cmr. Ramirez moved to approve the agreement and Mayor Pro-Tem Garza seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## LEASE AGREEMENT WITH RGC EDC, 406 E. MAIN ST., LOPEZ-TIJERINA COMPLEX (Item 5B)
The RGC EDC is interested in leasing the space at 406 E. Main Street at the Lopez-Tijerina Complex as the office for the Main Street Program. As discussed at the EDC Workshop in July, the rent would be waived in lieu of the maintenance costs associated with the upkeep of the grounds and the buildings. Staff recommends approval of the lease with the EDC. Cmr. Salinas moved to approve the lease agreement and Cmr. Jones seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## LEASE AGREEMENT WITH BEHAVIORAL HEALTH SOLUTIONS OF SOUTH TEXAS, 405 E. MIRASOLES, SUITE A, LOPEZ-TIERINA COMPLEX (Item 5C)

Behavioral Health Solutions of South Texas is requesting office space at 405 E. Mirasoles St., Suite A to offer free counseling services to our community. They would also coordinate with the Municipal Court on court referrals. The organization has requested that rent be waived in lieu of the free services to the community. Staff recommends approval of the lease with the Behavioral Health Solutions of South Texas. Cmr. Ramirez moved to approve the lease agreement and Cmr. Salinas seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## MEMO OF UNDERSTANDING WITH U.S. FISH AND WILDLIFE FOR USE OF STATION #2 (Item 5D)

Chief Reyes was present to address the Commission on this issue. The U.S. Fish and Wildlife personnel have been using Station #2 for approximately 6 years and have assisted our Fire Department and area fire departments in fighting grass and wildland fires on private or government held lands. The proposed agreement is for a period of four (4) years from the date of execution. Staff recommends approval of the MOU with the Department of the Interior, U.S. Fish and Wildlife Service. Cmr. Ramirez moved to approve the lease agreement and Mayor Pro-Tem Garza seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## BOND COUNSEL AGREEMENT WITH THE J. RAMIREZ LAW FIRM (Item 5E)

Attorney Jesus Ramirez has acted as the City's Bond Counsel for some time through the firm of Ramirez and Guerrero. Mr. Ramirez recently informed the City he is no longer in association with Mr. Guerrero, thus necessitating a new Bond Counsel Agreement. The agreement before the Commission has been forwarded to the City Attorney for review. Cmr. Ramirez moved to approve the Bond Counsel Agreement and Mayor Pro-Tem Garza seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## SETBACK AND PARKING VARIANCE REQUESTS FROM VERDAD REAL ESTATE AT 4011 E. U.S. HIGHWAY 83 (Item 6A)

Verdad Real Estate has requested a setback and parking variance at 4011 E. U.S. Highway 83 for a proposed Carl's Jr. Restaurant; this site is the old Economy Gas Station/convenience store location next to IBC Bank. The improvement to the property had been proposed to consist of a single story 2,999 square foot restaurant which would result in only 22 parking spaces; the minimum parking ratio required by ordinance being 40 spaces. However, the developer has subsequently proposed to downsize the building. This would result in a minimum parking requirement of 34 spaces vs. the new available parking 28 spaces. The developer would still need a variance on 6 parking spaces but would no longer need a setback variance. Staff recommends approval of the variance for 6 parking spaces. Cmr. Salinas moved to approve the variance and Cmr. Ramirez seconded the motion. The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## FINAL APPROVAL OF PLAT OF LAREDO ESTATES SUBDIVISION, PHASE I (Item 6B)

Mr. Gilbert Guerra, Rio Delta Engineering, was present to represent the developer, Cayetano Interests, LLC.   This is a 26.86 acre tract of land divided out of Share 5-E and Share 5-F, Porcion 82, Camargo Jurisdiction. The subdivision consists of 39 lots averaging .50 acres each; the proposed development lies within the City's one mile ETJ. Preliminary approval for the subdivision was approved at the City Commission meeting of May 13, 2015, which included the condition to request annexation. Mr. Guerra informed the Commission that the developer does not want to pursue annexation of the subdivision into the City and furthermore, he stated that the owners of an adjoining 421 remaining acres of a tract that had been annexed into the City some time ago would soon be requesting de-annexation from the City; a Disannexation Exhibit was distributed and is attached as Exhibit D. Mayor Pro-Tem Garza moved to grant final approval to the plat of the Laredo Estates Subdivision Phase I, subject to the terms and conditions included in the Interoffice Memorandum dated Sept. 4, 2015, except that the owner retains the option to not annex the property into the City. Cmr. Ramirez seconded the motion and it passed unanimously.   A copy of the Interoffice Memorandum is attached as Exhibit E.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## PRELIMINARY AND FINAL APPROVAL OF THE DIVINO DESCANO SUBDIVISION (Item 6C)

Ruben Chapa, Melden and Hunt Engineering, was present to represent the developers, Luis and Rebecca T. Falcon. The subdivision is comprised of 2.967 acres out of Share 31-A, Porcion 77, Camargo Jurisdiction and is a one lot commercial subdivision which will be developed into a funeral home business.   Mayor Pro-Tem Garza moved to grant preliminary and final approval to the plat of the Divino Descanso Subdivision, subject to the terms and conditions included in the Interoffice Memorandum dated Sept. 4, 2015, a copy of which is attached as Exhibit F. Cmr. Salinas seconded the motion and it passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

## PRELIMINARY AND FINAL APPROVAL OF THE PLAT OF THE JESUS GARCIA COMMERCIAL SUBDIVISION (Item 6D)

Jesus and Patricia Garcia, represented by MAS Engineering, are requesting preliminary and final approval for the Jesus Garcia Commercial Subdivision being a 0.717 acre tract of land out of Share 75, Porcion 82, Camargo Jurisdiction.   The subdivision is a one lot commercial subdivision located on U.S. Highway 83. Mayor Pro-Tem Garza moved to grant preliminary and final approval to the plat of the Jesus Garcia Commercial Subdivision, subject to the terms and conditions included in the Interoffice Memorandum dated Sept. 4, 2015, a copy of which is attached as Exhibit G. Cmr. Jones seconded the motion and it passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-9-2015 audio recording.

### EXECUTIVE SESSION (Item 7A-E)

The Mayor convened the Executive Session at 7:17 pm in accordance with the Open Meetings Act authorized by Texas Government Code Section 551.071 (Consultation with Attorney), Section 551.072 (Deliberation Regarding Real Estate) as regards items 7A-E of this agenda. The Mayor re-opened the public meeting at 7:50 pm.

**NOTICE TO ALLIED WASTE REGARDING RESOLUTION NO. 2015-9 AND THEIR RESPONSE (Item 7D)**
Cmr. Jones moved to terminate services with Allied Waste effective in 30 days and to allow the City Administration to negotiate an emergency contract with a third party solid waste provider. Mayor Pro-Tem Garza seconded the motion and it passed unanimously.

**PROSPECT NO. 2015-6 (Item 7E)**
Mayor Pro-Tem Garza moved to proceed on this item as discussed in Executive Session. Cmr. Ramirez seconded the motion and it passed unanimously.

**NOTE:** No action was taken by the Commission on Items 7A-C of this agenda.

**ADJOURNMENT (Item 8)**
Mayor Pro-Tem Garza moved to adjourn and Cmr. Ramirez seconded the motion. After the affirmative vote, the Mayor adjourned the meeting at 7:51 pm.

Joel Villarreal, Mayor

Prepared by:

Holly D. Guerrero, City Secretary

EXHIBIT A
COMMISSION
9-9-2015



City of Rio Grande City
Public Works Department
203 W. Water St.
Rio Grande City, TX 78582
PH: (956) 488-8382
Fax: (956) 488-2186

*Zone A.*
*Street Lights needed*

# POLES WITH TRANSFORMERS

1 PALMVIEW & OLD EL SAUZ RD

2 CORNER OF LEAL & CHAPOTE

3 1006 FT WORTH 5T.

4 1523 CANALES ST.

5 309 SAN DIEGO ST.

6 204 SAN DIEGO ST.

7 1841 GUADALUPE CIR.

8 OLD EL SAUZ BETWEEN SUMMERFIELD & CANYON ST.

9 1749 PLAINVIEW

10 CORNER OF PLAINVIEW & LIVE OAK

11 121 OLD EL SAUZ RD.

12 103 PALITO BLANCO ST.

13 154 CHARCO BLANCO RD.

14 156 CHARCO BLANCO RD.

15 CORNER OF FAIRVIEW & JACKSON ST.

16 CORNER OF JACKSON & LUCIEN LN.

17 SW CORNER OF ROOSEVELT & MARTINEZ

18 202 WOODROW WILSON

19. Massaro

20. Oscar. Olivarez.

21. Fairview & Charco Blanco

22. North Mtz St.

EXHIBIT 9
CITY COMMISSION
9-9-2015

**TRAVEL REQUESTS FOR APPROVAL**
**COMMISSION MEETING**
**9-9-2015**

## ADMINISTRATION

Elisa Beas and Holly D. Guerrero – TML Annual Conference – San Antonio –
September 22-25

EXHIBIT C
CITY COMMISSION
9-9-2015



### RIO GRANDE CITY

### ECONOMIC DEVELOPMENT CORPORATION

### MEMORANDUM

TO:          CITY COUNCIL MEMBERS

FROM:        DALINDA GUILLEN, RGCEDC EXECUTIVE DIRECTOR

SUBJECT:     SUMMARY OF ACTIONS TAKEN AT RGCEDC BOARD MEETING ON SEPTEMBER 1, 2015

DATE:        SEPTEMBER 9, 2015

CC:          ELISA BEAS, RGC DEPUTY CITY MANAGER

---

During the regular meeting of the Rio Grande City Economic Development Corporation on September 1, 2015, the board took the actions summarized below.

1. Action: Approved minutes from previous Rio Grande City EDC meetings.

2. Action: Approved ratifying the existing Rio Grande City EDC bylaws with a condition to regain the spirit of the bylaws and have a staggered board, by having Lori Perez, Rey Ramirez, and Dave Jones serving an initial 1-year term. After that, they may be reappointed every 2 years.

3. Action: Approved EDC grant and committee guidelines. Committee will have its first meeting on Friday, Sept. 11, 2015.

405 E. MIRASOLES ST. RIO GRANDE CITY, TEXAS 78582     (956) 487-3476



18357931.95 SQ FT
421.44 ACRES

DISANNEXATION EXHIBIT
421.44 ACRES
RIO GRANDE CITY, TEXAS
STARR COUNTY

RIO DELTA ENGINEERING
FIRM REGISTRATION No. F-7626
SURVEY FIRM No. 10194027
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-380-5152   (FAX) 956-380-5083

EXHIBIT E
CITY COMMISSION
9-8-2015

## INTEROFFICE MEMORANDUM

**TO:**       Mayor, Mayor Pro-Temp and Commissioners

**FROM:**   Gilbert Millan, Planning Director

**CC:**       Elisa Beas, Deputy City Administrator

**SUBJECT:**   Final Plat Approval of Laredo Estates Phase 1

**DATE:**     September 4, 2015

---

**OVERVIEW:**       Cayetano Interests LLC represented by Rio Delta Engineering is requesting **Preliminary Approval** for **Laredo Estates Subdivision Phase 1**, being **26.86 acres** situated out of Share 5-E and Share 5-F, in Porcion No. 82 Ancient Jurisdiction of Camargo, Mexico, and now Starr County, Texas.

The area is divided into thirty-nine (39) **lots averaging .50 acres each**. The proposed development is within the 1 mile ETJ.

**Sewer:**       The owner is proposing to service the area with septic tanks (OSSF)

**Water:**       The area is within the CCN of El Tanque WS. The owner is proposing to service the area with an **8" water line.**

**Drainage:**   Drainage will be provided on-site.

**CONDITIONS:**

1. Park fee as required by the City's adopted park fee ordinance shall be provided at the time of building construction or at the time a letter of compliance is issued by the City.
2. Water rights shall be provided to the City in the appropriate amount; one (1) acre of Municipal Water for each acre of land developed, or $2,500 per acre of land developed.
3. Development/construction shall comply with all of the requirements of Chapter 13 Subdivision Regulations.
4. Must confirm with all the requirements previously approved at preliminary stage including but not limited to annexation.


**\*\*\*\*\*This item was approved by the Planning and Zoning Commission in their regular meeting agenda of September 3, 2015\*\*\*\*\***





PLAT SHEET 2
WATER AND O.S.S.F.
LAREDO ESTATES SUBD. PH. I
RIO GRANDE CITY, TEXAS

RIO DELTA ENGINEERING
FIRM REGISTRATION No. F-7628
SURVEY FIRM No. 10104027
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-380-5152   (FAX) 956-380-5083



# LAREDO ESTATES
## SUBDIVISION PHASE I
### RIO GRANDE CITY, TEXAS



VICINITY MAP
NOT TO SCALE

PROJECT SITE

STARR
COUNTY

## STARR COUNTY COMMISSIONERS COURT

| | |
|---|---|
| ELOY VERA | COUNTY JUDGE |
| ADEL CANTU | COMMISSIONER, PCT. 1 |
| RAUL "ROY" PEÑA JR. | COMMISSIONER, PCT. 2 |
| ELOY GARZA | COMMISSIONER, PCT. 3 |
| RUBEN SAENZ | COMMISSIONER, PCT. 4 |

## CITY OFFICIALS

| | |
|---|---|
| JOEL VILLARREAL | MAYOR |
| HERNAN E. GARZA, III | COUNCILMAN |
| ARMANDO J. SALINAS, II | COUNCILMAN |
| REY RAMIREZ | COUNCILMAN |
| DAVE JONES | COUNCILMAN |

## INDEX OF SHEETS

| SHT. | DESCRIPTION |
|---|---|
| 1 | COVER SHEET |
| 2 | EXISTING TOPOGRAPHICAL LAYOUT |
| 3 | OVERALL PAVING & DRAINAGE LAYOUT |
| 4, 5, 6 | PAVING & DRAINAGE PLAN AND PROFILE |
| 7 | OVERALL WATER LAYOUT |
| 8 | EXISTING PLAN |
| 9 | TYPICAL DETAILS |





## RIO DELTA ENGINEERING
FIRM REGISTRATION No. F-7528
SURVEY FIRM No. 10194027
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-383-5168   (FAX) 956-383-5083

**COVER SHEET**
LAREDO ESTATES SUB. PHASE I
RIO GRANDE CITY, TEXAS
STARR COUNTY

TOPOGRAPHIC LAYOUT
LAREDO ESTATES SUBD. PH I
RIO GRANDE CITY, TEXAS
STARR COUNTY

RIO DELTA ENGINEERING
FIRM REGISTRATION No. F-7020
SURVEY FIRM No. 10194027
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-380-5152 (FAX) 956-380-5053



**RIO DELTA ENGINEERING**
FIRM REGISTRATION No. F-7625
SURVEY FIRM No. 10194027
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-380-5152  (FAX) 956-380-5053

**OVERALL PAVING AND DRAINAGE LAYOUT**
**LAREDO ESTATES SUBD. PH I**
**RIO GRANDE CITY**
**STARR COUNTY, TEXAS.**





PAVING PLAN AND PROFILE
LAREDO ESTATES SUBD. PH I
RIO GRANDE CITY, TEXAS
STARR COUNTY

RIO DELTA ENGINEERING
FIRM REGISTRATION No. F-7625
SURVEY FIRM No. 10194027
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-380-5152  (FAX) 956-380-5083



RIO DELTA ENGINEERING

FIRM REGISTRATION NO. F-7628
SURVEY FIRM No. 10194057
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-380-5168   (FAX) 956-380-6083

PAVING PLAN AND PROFILE
LAREDO ESTATES SUBD., PH I
RIO GRANDE CITY, TEXAS
STARR COUNTY







TYPICAL DETAILS
LAREDO ESTATES SUBD. PH. I
RIO GRANDE CITY, TEXAS
STARR COUNTY

RIO DELTA ENGINEERING
FIRM REGISTRATION No. F-7028
SURVEY FIRM No. 10194027
921 S. 10TH AVENUE EDINBURG, TEXAS 78539
(TEL) 956-380-5152  (FAX) 956-380-5003

EXHIBIT F
CITY COMMISSION
9-8-2015

## INTEROFFICE MEMORANDUM

**TO:** Mayor, Mayor Pro-Temp and Commissioners

**FROM:** Gilbert Millan, Planning Director

**CC:** Elisa Y Beas, Deputy City Administrator

**SUBJECT:** Preliminary and Final Plat Approval for **Divino Descanso Subdivision**

**DATE:** September 4, 2015

---

**OVERVIEW:** Luis and Rebecca T. Falcon represented by Melden and Hunt are requesting **Preliminary and Final Approval** for **Divino Descanso Subdivision**. Being a 2.967 Acres out of Share 31-A, Porcion 77, Ancient jurisdiction of Camargo, Mexico now Starr County, Texas.

The area is to be divided into one commercial **(1) lot**. The proposed development is located on the corner of Eisenhower Rd and Old El Sauz Rd for the purposes of building a funeral home.

**Sewer:** The owner is proposing to service the area with **Sanitary Sewer.**
**Water:** The area is within the CCN of Rio Grande City. The owner is proposing to service the area with an **8" water line.**
**Drainage:** Drainage will be provided on-site.

The following conditions are addressed:

1. Park fee as required by the City's adopted park fee ordinance shall be provided at the time of building construction or at the time a letter of compliance is issued by the City.
2. Development/construction shall comply with all of the requirements of Chapter 13 Subdivision Regulations.
3. A preconstruction conference will be required before any subdivision construction is started.
4. Provide a street lighting plan prior to subdivision construction.
5. Provide complete drainage report.
6. Further review and corrections maybe required from staff whether stated here or not.

**\*\*\*\*\*This item was approved by the Planning and Zoning Commission in their regular meeting agenda of September 3, 2015\*\*\*\*\***







CONSULTANTS ∘ ENGINEERS ∘ SURVEYORS
FRED L. KURTH • ALLAN F. BOOE • KELLEY A. HELLER-VELA • ROBERT TAMEZ

TBPE Firm # F-1435
TBPLS # 10096900

Mr. Gilbert Millan                                              August 28, 2015
Planning Director - City of Rio Grande City
5332 E. Highway 83
Rio Grande City, Texas 78582

RE:     Divino Descanso Subdivision

Dear Mr. Millan:

We have received and reviewed the Plat Requirement Checklist and have responded and/or corrected each item as needed. Attached is all the information required as requested.

In regards to Items:

**Plat:**

2.      Utility and Drainage easements have been (flipped)/adjusted as requested and drainage considerations have been revised.
3.      Note #11 has been revised.
4.      Note #13 has been added to include the fire hydrant statement.

**Utilities:**

2.      The nearest fire hydrant is shown across Eisenhower Rd. All others are distant from this development. See Note #4 in "Plat" above.
3.      A sanitary sewer service has been proposed at the southwest corner of the development.

**Drainage:**

1.      See Note #4 in "Plat" above. A 15" PVC pipe with a headwall has been proposed to connect the proposed drainage swale to the existing inlet along Old El Sauz Road.

Should you have any questions, please do not hesitate to call me.

Sincerely,

Melden and Hunt, Inc.

Ruben Chapa, P.E.



# R

CIVIL ENGINEERING • PROJECT MANAGEMENT • LAND DEVELOPMENT
TEXAS REGISTERED ENGINEERING FIRM F-7628
TEXAS LICENSED SURVEYING FIRM #10194027

**∠ENGINEERING**

August 26, 2015

Mr. Gilbert Milan
Planning Dept.
Rio Grande City
101 S. Washington
Rio Grande City, Texas 78582

Re      Divino Descanso Subdivision
        Melden and Hunt

Dear Mr. Milan,

After reviewing the submitted plans for the above-named subdivision we have the following comments and observations for your consideration:

Subdivision
Plat:
1.  This commercial development lies within the Corporate limits of the City of Rio Grande City and is subject to their subdivision regulations and requirements.
2.  The drainage easement and the utility easement need to be "flipped" so that the drainage easement is along the southern boundary of the lot.
3.  Note #11 may need to be modified to remove "drainage report and" from the note.
4.  A note needs to be added stating that additional fire hydrants may be required upon site plan review.

Utilities:
1.  This development will be provided potable water service and sanitary sewer service by the City.  A site utility layout will be required at time of building permit and site plan review along with a full set of construction plans for the site development.
2.  The plat utility plan needs to indicate the location of the nearest existing fire hydrants in all directions.
3.  The plat utility plans needs to indicate if the proposed sanitary sewer service will be installed now, or at time of site development.

Drainage:
1.  As noted on the Plat comments, the drainage easement needs to be located along the boundary of the lot. The proposed swale should be "bled" off into the existing storm inlet along the west side of Old El Sauz. The bleeder line can be PVC, at least 12' dia., no more that 15" dia., and will require a headwall at the swale.

021 S. 10th • Edinburg, Texas 78539 • Phone: (956) 380 5152 • Fax: (956) 380-5083

All of these comments can be addressed prior to the pre-construction meeting. Please accept my recommendation for Preliminary Plat Approval.

Please call me at (956) 380-5152 if you have any questions regarding any of the above.


Thank You,

Gilbert J. Guerra, P.E.

EXHIBIT 9
CITY COMMISSION
9-8-2015

# INTEROFFICE MEMORANDUM

**TO:**      Mayor, Mayor Pro-Temp and Commissioners

**FROM:**   Gilbert Millan, Planning Director

**CC:**      Elisa Y Beas, Deputy City Administrator

**SUBJECT:** Preliminary and Final Plat Approval for **Jesus Garcia Commercial Subdivision**

**DATE:**    September 4, 2015

---

**OVERVIEW:**      Jesus and Patricia Garcia represented by MAS Engineering are requesting **Preliminary and Final Approval** for **Jesus Garcia Commercial Subdivision**. Being a 0.717 Acres out of Share 75, Porcion 82, Ancient jurisdiction of Camargo, Mexico now Starr County, Texas.

The area is to be divided into one commercial **(1)** lot. The proposed development is located along Highway 83 next to the Guns Unlimited Store.

**Sewer:**     The owner is proposing to service the area with **Sanitary Sewer.**
**Water:**     The area is within the CCN of Rio Grande City.  The owner is proposing to service the area with an **8" water line.**
**Drainage:**  Drainage will be provided on-site.

The following conditions are addressed:

1. Park fee as required by the City's adopted park fee ordinance shall be provided at the time of building construction or at the time a letter of compliance is issued by the City.
2. Development/construction shall comply with all of the requirements of Chapter 13 Subdivision Regulations.
3. A preconstruction conference will be required before any subdivision construction is started.
4. Provide a street lighting plan prior to subdivision construction.
5. Provide complete drainage report.
6. Further review and corrections maybe required from staff whether stated here or not.

**\*\*\*\*\*This item was approved by the Planning and Zoning Commission in their regular meeting agenda of September 3, 2015\*\*\*\*\***





PRELIMINARY SITE PLAN

U.S. HIGHWAY 83
(120.00' R.O.W.)

PRELIMINARY SITE PLAN
JESUS GARCIA
PLAZA
PLAZA
UTILITY PLAN

THIS DOCUMENT IS RELEASED FOR THE
PURPOSE OF INTERIM REVIEW UNDER THE
AUTHORITY OF NARDO A. SALINAS, P.E. 98611
ON JULY, 2015.
IT IS NOT TO BE USED FOR CONSTRUCTION
OR BIDDING PURPOSES.

MAS ENGINEERING LLC.
CONSULTING ENGINEERING
FIRM NO. F-15499
4037 W. EXP.83, SUITE 150         PH. (956) 537-:311
MCALLEN, TEXAS. 78501         E-MAIL: MSALINAS6973@ATT.NET

PROJECT NAME:
THE WOODLANDS CONDOMINIUMS
PHASE II

ADDRESS:
700 SUNSET DR.
MCALLEN, TEXAS 78501

C-1



# RIO DELTA ENGINEERING

CIVIL ENGINEERING • PROJECT MANAGEMENT • LAND DEVELOPMENT
TEXAS REGISTERED ENGINEERING FIRM F-7628
TEXAS LICENSED SURVEYING FIRM #10194027

August 11, 2015

Mr. Gilbert Milan
Planning Dept.
Rio Grande City
101 S. Washington
Rio Grande City, Texas 78582

Re:    Jesus Garcia Commercial Subdivision
       MAS Engineering, LLC

Dear Mr. Milan,

After reviewing the submitted plans for the above-named subdivision we have the following comments and observations for your consideration:

Subdivision:
 Plat:
1. This commercial development lies within the Corporate limits of the City of Rio Grande City and is subject to their subdivision regulations and requirements.
2. A 20 foot Front Setback line needs to be indicated on the plat
3. Note #3 needs to be corrected to read: "10 feet, easement width if greater, or as the City may require at time of building permit and site review." (rear setback)
4. Add a note stating that: " A TxDOT permit authorizing the improvement of the existing drive will be required at the time of building permit and site plan review."
5. Add a note stating: " The site developer may be required to provide additional municipal water rights or the appropriate fees for the acquisition of additional municipal water rights, based on projected building occupancy at full development, at the time of building permit and site plan review."
6. The engineer submitted a drainage report and statement but did not include the calculations. Please have him re-submit the report with the calculations, or provide the calculations.

Utilities:
1. This development will be provided potable water service by the City via an existing 8" water line. The existing water meter needs to be indicated on the Plat.
2. This development will be provided sanitary sewer service by the City via an existing 8" sanitary sewer line that runs along the front of the property. The sewer service will be provided at the time of site development.

921 S. 10th • Edinburg, Texas 78539 • Phone: (956) 380-5152 • Fax: (956) 380-5083

Preliminary Site Plan:

1. The proposed site plan will need to be adjusted to accommodate the 20 foot front setback.
2. The proposed site plan will need to be adjusted to ensure that there is a minimum 24' aisle between parking spaces.
3. The proposed site plan will need to be adjusted in order to accommodate the location of the detention area someplace other than in the utility easement and over the sewer and water lines.
4. The proposed site plan needs to be adjusted to include a dumpster location accessible by the local trash collection service.
5. The proposed fire hydrant shall be Mueller.
6. The site developer will need to construct a 6" concrete sidewalk along HWY 83, the full width of the property, and include ramps and warning strips at the proposed entrance as required to meet ADA requirements.
7. The site developer will need to provide the City with a copy of a TxDOT permit authorizing the improvement to the existing drive and the connection of the detention bleeder line to the TxDOT drainage system.
8. The site developer will need to provide a full set of construction drawings, signed and sealed by the appropriate Engineer and/or Architect, as may be required, to include; site grading plan, site dimension plan, site utility plan, site lighting plan, structural, mechanical, electrical, plumbing plans, a revised drainage report if necessary, and the appropriate standard construction details.
9. The site developer will need to coordinate with the Planning Dept. and Code Enforcement in order to determine the correct number of parking spaces required, based on projected type of businesses which will occupy the proposed spaces, and the number of occupants projected to be on-site at any given time.

Please call me at (956) 380-5152 if you have any questions regarding any of the above.

Thank You,

Gilbert J. Guerra, P.E.

09/18/2015  14:46    9566863578           JOHN DAVID FRANZ                    PAGE   02/20

LAW OFFICES OF

# JOHN DAVID FRANZ

400 N. McCOLL, SUITE B
McALLEN, TX 78501

BOARD CERTIFIED
PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

(956) 688-3300
FAX: (956) 688-3578

September 18, 2015

Patricio Hernandez,
Grande Garbage Collection Co., L.L.C.   CMRRR 7008 1140 0002 8027 3038
505 E. Main St.                      & Fax (956) 488-1508
Rio Grande City, Texas 78582-4546

Grande Garbage Collection Co., L.L.C.   CMRRR 7008 1140 0002 8027 3045
505 E. Main St.
Rio Grande City, Texas 78582-4546

RE:   Notice to Cease and Desist Solid Waste Collection in
Violation of Exclusive License possessed by Allied Waste

Dear Mr. Hernandez:

Please be advised that I represent Allied Waste Services of Rio Grande Valley ("Allied"). On February 6, 2013, Allied Waste entered into a an "exclusive" contract to collect and dispose of residential, commercial, industrial, construction, demolition and brush/bulky solid waste in the corporate limits of the City of Rio Grande. The exclusive contract terminates on September 30, 2018. A copy of the contract is attached as **Exhibit 1**. The contract contains very specific language regarding Allied Waste's exclusive right to provide collection and disposal services in the City of Rio Grande during the contract term. Specifically, **Section 14.00 on Page 12** of the contract contains the following:

*14.00 EXCLUSIVE CONTRACT*

*The Contractor [Allied] shall have the sole and exclusive franchise, license, and privilege to provide brush/bulky waste, residential, commercial, industrial and construction/demolition refuse collection, removal and disposal services within the corporate limits of the City.*

Jon Deicla, Allied's General Manager in the Rio Grande Valley, has advised me that Grande Garbage Collection Co., LLC ("Grande") has been providing solid waste collection containers to locations within the corporate limits of Rio Grande City and further that Grande is collecting solid waste within the corporate limits of the City. Allied hereby places you and Grande Garbage on notice that this action violates the exclusivity provision found in Section 14 of Allied's existing and enforceable contract with the City of Rio Grande. You are not authorized to provide any type of solid waste

6873-28.Grande Garbage (Notice to Cease and Desist 9.18.15).doc

collection services in Rio Grande City as the City has granted that exclusive right to
Allied Waste through September 30, 2018. As such, demand is hereby made that you,
Grande Garbage's representatives, agents and employees cease and desist from any
action that violates Allied's exclusive license and right to collect and dispose of solid
waste in Rio Grande City. A failure to cease and desist may result in the filing of a
petition for injunctive relief and a declaratory action seeking judgment that you and/or
Grande Garbage have no right to perform waste collection services in Rio Grande City as
Allied Waste possesses an exclusive license for this business. Allied will seek judgment
for actual damages as well as an award of attorney's fees and court costs incurred by
Allied in protecting its rights pursuant to a lawful and enforceable contract right granted
by Rio Grande City. You are hereby placed on notice that if you or your representatives
continue to infringe on Allied Waste's exclusive right to provide solid waste collection
services in Rio Grande City during the current contract term, Allied Waste will seek all
lawful damages to which it is entitled and you and Grande Garbage will be exposed to a
judgment for actual damages, attorneys fees and court costs. I trust that you and Grande
Garbage's representatives will cease any and all action that infringes on Allied Waste's
exclusive license to collect solid waste during the term of Allied Waste's contract with
the City of Rio Grande.

Please stop all solid waste collection activity in the City of Rio Grande. Finally,
please remove any and all Grande Garbage trash collection containers at businesses,
government locations and residences within the city limits of Rio Grande City on or
before September 25, 2015.

If you have any questions, please do not hesitate to call. I remain,

Very Truly Yours,

John David Franz

Encl.: Contract between Cameron County and Allied Waste

6873-28.Grande Garbage (Notice to Cease and Desist 9.18.15).doc

## AGREEMENT

The **RIO GRANDE CITY CONSOLIDATED INDEPENDENT SCHOOL DISTRICT** (hereinafter the **District**) hereby engages the services of **GRANDE GARBAGE COLLECTION CO.** hereinafter the **Company**) and agree as follows:

1. **Term.** This agreement shall be become effective on the 1st day of January, 2015 and shall terminate on the 31st day of December, 2017.

2. **Scope of Services.** The Company is engaged to provide the following product and services:

**SOLID WASTE SERVICES COMPETITIVE SEALED PROPOSAL #15-15**

in accordance with Company's quotation sheet and the Special Terms and Conditions of the quotation solicitation package which is attached hereto (Attachment I).

3. **Fee.** For services to be rendered under this agreement, the Company shall be entitled to the following fees stated in the proposal sheet which is attached hereto(Attachment II), and incorporated for all purposes. Company shall submit a monthly invoice to District which is payable upon the expiration of forty-five (45) days from receipt by the District.

4. **Use of Employees.** The Company shall perform the duties and services under this agreement using only the Company's employees. The Company's employees shall not be, nor be considered, the employees of the District. District does not intend to control or direct in any manner the conduct of Company's work, but is interested solely in the results obtained and production of Company. The manner and means by which the Company carries out the terms of this Agreement are within the Company's sole discretion, and Company has complete and total authority to control and direct the performance of the work, subject only to District's right of inspection, supervision, and control of the site, to secure satisfactory completion of the project pursuant to the terms of this Agreement without the express written consent of District. Company and Company's employees and agents shall have no right or authority, actual or apparent, to make any correct in the name of District or otherwise bind District or transact any business in District's name. Company will have an affirmative duty to prevent any employee or agent of the Company from making representations to anyone as having such right or authority.

5. **Devotion of Time and Effort.** The Company shall devote such time and effort as is reasonably necessary for a satisfactory performance of the services contracted.

6. **Criminal History Record.** The Bidder agrees to comply with Section 22.0834 Criminal History Record Information Review of Certain Contract Employees, Texas Education Code if awarded a contract through this solicitation. The undersigned vendor. if awarded a contract, shall obtain criminal history record information through the criminal history clearinghouse as provided by Section 411.0845, Government Code relating to an employee or applicant of Bidder who has or will have continuing duties related to the contracted services; and the employee or applicant of Bidder has or will perform said duties on District property or a location where students are present. The Bidder agrees to certify of the receipt of criminal history record information before or immediately after employing or securing the services of the employee or applicant that has or will have continuing duties related to the contracted services if the employee or applicant has or will perform said duties on District property or a location where students are present. The Bidder further agrees that if awarded a contract, Bidder shall assume all expenses associated with the criminal background check and shall immediately remove any employee or agent who was

convicted of any felony, or a misdemeanor involving moral turpitude, as defined by Texas law, from District property or a location where students are present.

7. **Hold-Harmless and Indemnification.** The Company agrees to hold harmless and indemnify the District from any liability, damages, costs and expenses which may directly or indirectly arise from or occur in connection with the Company's performance under this Contract including but not limited to the collection of solid waste, or any action, activity or omission incident thereto. Such indemnification shall include but not be limited to all District's attorneys fees and costs incurred in defending or responding to any action brought or threatened against District for any action or omission arising from or incident to Company's performance under this Contract.

8. **Assignment.** The duties and services of the Company are non-delegable. The Company may not assign its duties, responsibilities, obligations, and services under this agreement without the prior written consent from the District.

9. **Attorney's Fees.** If any action at law or in equity is brought by any party hereto to enforce or interpret the provisions of this agreement, the prevailing party shall be entitled to recover from the other party its reasonable attorney's fees in addition to any other relief to which it may be entitled.

10. **Governing Law.** This agreement is made in Starr County, Texas, and is to be performed in Starr County, Texas. This agreement shall be governed in all respects by the laws of State of Texas.

11. **Termination.** Either party to this agreement may terminate this agreement with or without cause, upon 30 days written notice of such termination.

12. **Entire Agreement.** This agreement and the attached documents constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties respecting this subject matter.

| DISTRICT | GRANDE GARBAGE COLLECTION CO |
|---|---|
| By: _____ | By: _____ |
| Signature | Signature |
| | |
| Typed/ | Typed/ |
| Printed Name: Roel Gonzalez | Printed Name: _Patricio Hernandez_ |
| | |
| Title: Superintendent | Title: _Owen /CEO_ |
| | |
| Date: 12/16/14 | Date: 12-16-2014 |

## ATTACHMENT I
### SPECIAL TERMS AND CONDITIONS:

1. **PENALTY:** Failure to perform in keeping with the terms of this agreement may result in immediate termination and service may be awarded to the next responsible proposer.

2. **This proposal will be awarded on an all or nothing group basis.** The total proposal as a whole, including all items listed, providing the best value to the district, will be recommended for approval.

3. **INSURANCE:** Workman's compensation is required for this proposal Insurance Certificates must be submitted with the proposal. The Rio Grande City C.I.S.D. reserves the right to review all insurance policies pertaining to the proposal item(s) to guarantee that the proper coverage is obtained by the contractor.

   Contractor will be required to maintain in full force and in effect the following types of insurance:

   a) Worker's Compensation......:.................................... $100K/$500K/$100k
   b) Comprehensive General Liability........................................... $1,000,000.00 per occurrence
   c) Bodily Injury Liability (CSL)*................................... $300,000.00
   d) Property Damage Liability (CSL)*.............................. $300,000.00
   e) Automobile Bodily Injury Liability..............................$300,000.00
   f) Automobile Property Damage Liability........................... $100,000.00

   *Combined Single Limit
   Each insurance policy to be furnished by successful contractor shall include, by endorsement to the policy, a statement that a notice shall be given to District by certified mail thirty (30) days prior to cancellation or upon any materials change in coverage. Any non-compliance with this section will result in termination of contract.

4. **FIRM PRICES:** Proposal prices must be firm from January 1, 2015 through the end of the thirty-six month (36) contract term. This will be awarded as a multi-year proposal: The District will award a multi-year contract to the selected proposer, subject to availability of funds beyond the current fiscal year. All proposers are required to submit firm proposal prices for the proposal terms as specified in the proposal sheets (Line Items). The selected proposer's obligation to honor proposal prices in all years shall be unconditional. However, the district shall have no obligation to make payments or purchases if, for whatever reason, it does not appropriate any monies to a special fund designated specifically for the purpose of making payments under the awarded proposal Proposals are subject to School Board approval and are contingent upon actual need, funding and favorable service. The District is interested in establishing the best value through locked-in pricing for thirty-six (36) month contract with two (2) additional twelve (12) month contracts if agreed to by both parties.

5. **MODIFICATION OF RATES:** Rates will be fixed for a minimum of nine months (September through May and part of August) June and July and part of August will be adjusted to 1/2 the full monthly rate. PLEASE SUBMIT PROPOSAL PRICING ON THE RESPECTIVE PROPOSAL SHEETS, PER MONTH AND THEN PROVIDE A MONTHLY TOTAL PER CATEGORY. INVOICES FOR AUGUST MUST REFLECT THE "Light & Heavy" Portions.

6. **LICENSE AGREEMENT:** The successful offeror and the Rio Grande City C.I.S.D. School District will enter a License Agreement (form attached).

## ATTACHMENT II
## SOLID WASTE SERVICES
## REQUIREMENTS/SPECIFICATIONS

The Rio Grande City C.I.S.D., is soliciting proposals for daily collection (every business day as shown on the enclosed school calendar), transportation and disposal services of large commercial solid waste. Proposals, at a minimum, should respond to the following specifications:

**Responsibility of Collections:** The contractor must carry out responsibilities in a safe and efficient manner with consideration to traffic and students. **If a single collection fails to capture all of the solid waste present, a second collection must be performed at no additional cost to the District.**

Upcoming new campuses will be included upon project completion. Pricing from existing campuses will be utilized respectively. **Quantities per campus may increase / decrease at any time throughout the contract term. Deviations from the pricing structure are prohibited unless they are less than the proposed amount.**

**PLEASE NOTE: The District will not enter into a "new" service contract or agreement at the time of an addition or subtraction of container. The License Agreement developed by the Rio Grande City C.I.S.D. and subsequent Purchase Orders will serve as notice.**

**Service Requirements:**

a) DUMPSTER SIZE: Provide large commercial-trash receptacles per campus listed by the quantities on the attached Proposal Sheets. Other receptacle sizes **may** be used **if total cubic yards matches stated size.** Please state on bid sheets of any deviations.

b) RATES: Provide rates per location for solid waste collection and disposal for the campuses listed on the Proposal Sheet and the List of Waste Receptacle Sites & Quantities Needed, as per the instructions on the Special Terms and Conditions.

c) INVOICING REQUIREMENTS: The awarded vendor must provide separate invoices for Child Nutrition Program and for Maintenance Department on a monthly basis.

d) CONTACT PERSONS: Inquiries shall be directed as follows:
   Child Nutrition Program – Patricia Ramirez, Director at (956)716-6793
   Maintenance Department – Arcadio Salinas Jr., Director at (956)716-4600

e) TRASH COLLECTION: The district reserves the right to call the awarded vendor for extra trips of overflow trash collection as the need may arise at no additional cost to Rio Grande City C.I.S.D.

f) OVERFLOW TRASH: All trash must be collected, including any trash outside the receptacles at no additional cost to Rio Grande City C.I.S.D.

*Solid Waste Services Requirements/Specifications Cont.*

g) **DUMPSTER INSPECTION:** The awarded vendor must comply with a dumpster inspection and evaluation during the months of June and December and subsequently provide respective maintenance of trash dumpsters. The maintenance inspections shall be for the purpose of identifying those dumpsters that may have holes on dumpster base, damaged lids, bent side doors and for corrosion control. Dumpsters requiring maintenance shall be replaced promptly due to corrosion or wear and tear at no additional cost to Rio Grande City C.I.S.D. These inspections must be coordinated through both the Child Nutrition Program Director and the Maintenance Department and an inspection schedule must be forwarded to both the Child Nutrition Program Director and the Maintenance Department.

h) **DUMPSTER PRESSURE WASHING REQUIREMENTS:** At a minimum, the awarded vendor must pressure wash all Child Nutrition Program dumpsters once a month and Maintenance Department during the months of June and December, at the awarded vendor's expense. This service must be coordinated through both the Child Nutrition Program Director and the Maintenance Department Director and subsequently, a dumpster pressure washing schedule must be forwarded to both the Child Nutrition Program and the Maintenance Department prior to pressure washing of dumpsters.

i) **SCHOOL DISTRICT HOURS OF OPERATION FOR TRASH COLLECTION SERVICES.** August through May: every business day as reflected in school calendar from 6:00 a.m. to 6 p.m.; June and July: every business day as reflected in school calendar from 7:00 a.m. through 3:00 p.m. The awarded vendor must verify summer schedule with both the Child Nutrition Services Director and the Maintenance Department.



# RIO GRANDE CITY
*Hill Country of the Valley*

STATE OF TEXAS     *

                  *      CERTIFICATE OF PUBLIC RECORD

COUNTY OF STARR    *

I, Holly D. Guerrero, hereby certify, in the performance of the functions of my office, that the following is a true and correct copy of the agenda posted for the Rio Grande City Commission Meeting held on September 28, 2015 and the same appears of record in my office; and that said copy is an official record from the public office of the City Secretary of Rio Grande City, Starr County, Texas, and is kept in said office.

In witness whereof I have hereunto set my hand and affixed the official seal of said office this 28th day of October, 2015.

Holly D. Guerrero
City Secretary





AGENDA OF A MEETING OF THE
CITY COMMISSION OF RIO GRANDE CITY
MONDAY, SEPTEMBER 28, 2015  6:00 PM
COMMISSION CHAMBERS, CITY HALL
5332 E. Highway 83    Rio Grande City, Texas

## 1. GENERAL:
A) Call to order, invocation and Pledge of Allegiance.
B) Roll call and finding of quorum.
C) Public Forum.
D) Reading of proclamation designating October 4 to October 10 as Fire Prevention Week.

## 2. ORDINANCES
A) Second Reading and adoption of Ordinance No. 2015-9 adopting the General, Special and Enterprise Funds Budget for fiscal year 2015-2016.
B) Second Reading and adoption of Ordinance No. 2015-10 establishing an ad valorem tax and levying a maintenance and operation tax rate and an interest and sinking tax rate for the tax year ending 2015.

## 3. CITY MANAGER'S REPORT
A) Discussion and possible action to approve an agreement with Grande Garbage Collection for emergency solid waste residential and commercial services.\
B) Discussion and possible action to designate a name for the 61 acres of land purchased from Plains Capital Bank.

## 4. EXECUTIVE SESSION, CHAPTER 551, TEXAS GOVERNMENT CODE SECTION  551.071 (Consultation with Attorney) and SECTION 551.072 (Deliberations regarding Real Property)
A) Discussion and possible action – Consultation with attorney regarding Cause No. DC-14-182 Jose De La Fuente f/d/b/a Del Sol Homes and Del Sol Homes, LLC vs. Rio Grande City, Texas, 229th District Court of Starr County, Texas.
B) Discussion and possible action – Consultation with attorney regarding Cause No. DC-10-279 Remedios Herrera v. City of Rio Grande City, 381st District Court of Starr County, Texas.
C) Discussion and possible action – Consultation with attorney regarding Cause No. DC-15-471, Maria Julissa Pena, et al v. Rio Grande City, Texas, 381st District Court of Starr County, Texas.
D) Discussion and possible action regarding notice to Allied Waste through Resolution No. 2015-9 and response from Allied Waste.
E) Discussion and possible action regarding Prospect No. 2015-6.

## 5. ADJOURNMENT

With regard to any item, the City Commission may take various actions including but not limited to rescheduling an item in its entirety for a future date or time.  The City Commission may elect to go into Executive Session on any item listed above as authorized by the Texas Government Code Sections 551.071(Consultation with Attorney), 551.072 (Deliberations regarding Real Property), 551.072 (Deliberations regarding Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations regarding Security Devices) and 551.087 (Deliberations regarding Economic Development Negotiations).

### CERTIFICATION
This is to certify that I, Holly D. Guerrero, posted this Notice on the alcove wall adjacent to the front door entrance of City Hall, visible and accessible to the general public during and after regular working hours.  This Notice was posted on the 25th day of September 2015 on or before 5:00 pm and will remain so posted for at least 72 hours preceding the scheduled time of said meeting in accordance with Chapter 551 of the Texas Government Code.

Holly D. Guerrero, City Secretary

City Commission
9-28-2015



# RIO GRANDE CITY
*Hill Country of the Valley*

STATE OF TEXAS     *

                 *      CERTIFICATE OF PUBLIC RECORD

COUNTY OF STARR    *

I, Holly D. Guerrero, hereby certify, in the performance of the functions of my office, that the following is a true and correct copy of the approved minutes of the City of Rio Grande City Commission Meeting held on September 28, 2015 and the same appears of record in my office; and that said copy is an official record from the public office of the City Secretary of Rio Grande City, Starr County, Texas, and is kept in said office.

In witness whereof I have hereunto set my hand and affixed the official seal of said office this 28th day of October, 2015.

Holly D. Guerrero
City Secretary



MINUTES OF A MEETING OF THE
CITY COMMISSION OF RIO GRANDE CITY
MONDAY, SEPTEMBER 28, 2015   6:00 PM
COMMISSION CHAMBERS
5332 E. U.S. Highway 83   Rio Grande City, Texas  78582

Officials Present:
Mayor Joel Villarreal
Mayor Pro-Tem Hernan R. Garza, III
Commissioner Arcadio J. Salinas, III
Commissioner Rey Ramirez
Commissioner Dave Jones
Deputy City Manager Elisa Y. Beas
City Attorney Jacqueline R. Salinas
City Secretary Holly D. Guerrero

CALL TO ORDER (Item 1A)
Mayor Villarreal called the meeting to order at 6:04 pm; the invocation was given and the assembly recited the U.S and Texas Pledge of Allegiance.

ROLL CALL (Item 1B)
The roll was called and a quorum was declared.

PUBLIC FORUM (Item 1C)
No one requested to address the Commission on the Public Forum.

READING OF PROCLAMATION FOR FIRE PREVENTION WEEK (Item 1D)
Mayor Villarreal read the Proclamation into the record designating October 4 to October 10 as Fire Prevention Week.

WHEREAS, the City of Rio Grande City is committed to ensuring the safety and security of all those living in and visiting Rio Grande City; and

WHEREAS, fire is a serious public safety concern both locally and nationally, and homes are the locations where people are at greatest risk from fire; and

WHEREAS, home fires killed 2,755 people in the United States in 2013, according to the National Fire Protection Association (NFPA), and fire departments in the United States responded to 369,500 home fires; and

WHEREAS, working smoke alarms cut the risk of dying in reported home fires in half; and

WHEREAS, three out of five home fire deaths result from fires in properties without working smoke alarms; and

WHEREAS, in one-fifth of all homes with smoke alarms, none were working; and

WHEREAS, when smoke alarms should have operated but did not do so it was usually because batteries were missing, disconnected, or dead; and

WHEREAS, half of home fire deaths result from fires reported at night between 11 p.m. and 7 a.m. when most people are asleep; and

WHEREAS, Rio Grande City's residents should install smoke alarms in every sleeping room, outside each separate sleeping area, and on every level of the home; and

WHEREAS, Rio Grande City's residents should install smoke alarms and alert devices that meet the needs of people who are deaf or hard of hearing; and

WHEREAS, Rio Grande City's residents who have planned and practiced a home fire escape plan are more prepared and will therefore be more likely to survive a fire; and

WHEREAS, Rio Grande City's first responders are dedicated to reducing the occurrence of home fires and home fire injuries through prevention and protection education; and

WHEREAS, Rio Grande City's residents are responsive to public education measures and are able to take personal steps to increase their safety from fire, especially in their homes; and

WHEREAS, the 2015 Fire Prevention Week theme, "Hear the Beep Where You Sleep. Every Bedroom Needs a Working Smoke Alarm!" effectively serves to remind us that we need working smoke alarms to give us the time to get out safely.

NOW, THEREFORE, I, Joel Villarreal, Mayor of Rio Grande City do hereby proclaim October 4-10, 2015, as Fire Prevention Week throughout this city, and I urge all the people of Rio Grande City to install smoke alarms in every bedroom, outside each sleeping area, and on every level of the home, including the basement and to support the many public safety activities and efforts of Rio Grande City's fire and emergency services during Fire Prevention Week 2015.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-28-2015 audio recording.

### ORDINANCE NO. 2015-9, GENERAL, SPECIAL AND ENTERPRISE FUNDS BUDGET FOR FISCAL YEAR 2015-2016 (Item 2A)

The Budget for Fiscal Year 2015-2016 is a balanced budget prepared with a modest 4% increase in revenue to support the maintenance and operation of the City. The budget allows for an increase in personnel to keep up with the City's growth in terms of health and safety services. It also provides for overtime pay for a majority of the department heads under the proposed new labor regulations. There are also provisions for the upcoming May 2016 election and the costs associated with new debt payments from the purchase of communication and road equipment.

The first reading of this ordinance was at the meeting of Sept. 9, 2015. A few changes were made from the first reading approval due to errors in the computation of benefits and formula anomalies. Staff recommends adoption of Ordinance No. 2015-9. Cmr. Salinas moved to adopt Ordinance No. 2015-9 with changes made by the Deputy City Manager and Cmr. Ramirez seconded the motion. A record vote was called and the Commission voted as follows: Mayor Villarreal – In Favor; Mayor Pro-Tem Garza – In Favor; Cmr. Salinas – In Favor; Cmr. Ramirez – In Favor; Cmr. Jones – In Favor.
The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-28-2015 audio recording.

### ORDINANCE NO. 2015-10, AD VALOREM TAX RATE FOR TAX YEAR 2015 (Item 2B)

The first reading of this ordinance was at the City Commission meeting of Sept. 9, 2015. No changes were made to the ordinance from the first approval. The proposed tax rate for tax year 2015 is as follows:

| | |
|---|---|
| Maintenance and Operations rate | .412128 per $100 valuation |
| Interest and Sinking rate | .102621 per $100 valuation |
| Total Tax Rate | .514749 per $100 valuation |

This is the same rate as last year and the year before; however the proposed ad valorem rate is 3.69% higher than the effective rate which was calculated by the Tax Assessor-Collector to be .496427 per $100 valuation. This difference required the City to hold public hearings which were held on August 24 and August 31. Mayor Pro-Tem Garza moved that the property tax rate be increased by the adoption of a tax rate of 0.514749, which is effectively a 3.69 percent increase in the tax rate. Cmr. Ramirez seconded the motion and a record vote was called. The Commission voted as follows: : Mayor Villarreal – In Favor; Mayor Pro-Tem Garza – In Favor; Cmr. Salinas – In Favor; Cmr. Ramirez – In Favor; Cmr. Jones – In Favor.
The motion passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-28-2015 audio recording.

**DESIGNATION OF NAME FOR THE 61 ACRES OF LAND PURCHASED FROM PLAINS CAPITAL BANK (Item 3B)**
At the time the City purchased the new City Hall building at 5332 E. U.S. Highway 83, it also purchase a tract of 61.80 acres of land out of the W/2 of Porcion 83, Camargo Jurisdiction, just down the street from the City Hall building. The acreage is to be used for events. Plains Capital Bank has volunteered to assist the City with a dedication ceremony for the new event area. After a brief discussion, Cmr. Ramirez moved to designate the area as "Buffalo Fairgrounds". Mayor Pro-Tem Garza seconded the motion and it passed unanimously.

The full discussion of this item is on file at the City Secretary's office; City Commission 9-28-2015 audio recording.

**EMERGENCY CONTRACT FOR SOLID WASTE COLLECTION AND DISPOSAL SERVICE WITH GRANDE GARBAGE COLLECTION CO. (Item 3A)**
The Mayor recused himself from discussion and voting in this item as Mr. Patricio Hernandez, owner of Grande Garbage Collection Co., was his Campaign Treasurer for the June 27, 2015 Special Election. The Mayor left the Commission Chambers and he did not return to the public meeting.

Mayor Pro-Tem Garza took charge of the meeting and moved to take this item into Executive Session. The motion was seconded by Cmr. Ramirez and passed unanimously.

**EXECUTIVE SESSION (Items 3A and 4A-E)**
Mayor Pro-Tem Garza convened the Executive Session at 6:25 pm in accordance with the Open Meetings Act authorized by Texas Government Code Section 551.071 (Consultation with Attorney), Section 551.072 (Deliberation Regarding Real Estate) as regards items 3A and 7A-E of this agenda. The Mayor Pro-Tem re-opened the public meeting at 7:13 pm.

**EMERGENCY CONTRACT FOR SOLID WASTE COLLECTION AND DISPOSAL SERVICE WITH GRANDE GARBAGE COLLECTION CO. (Item 3A)**
Cmr. Ramirez moved to approve as discussed in Executive Session. Cmr. Jones seconded the motion and it passed unanimously.

NOTE: No action was taken by the Commission on Items 4A-E of this agenda.

**ADJOURNMENT (Item 5)**
Cmr. Ramirez moved to adjourn and Cmr. Salinas seconded the motion. After the affirmative vote, Mayor Pro-Tem Garza adjourned the meeting at 7:14 pm.

Joel Villarreal, Mayor

Prepared by:
Holly D. Guerrero, City Secretary

| THE STATE OF TEXAS | § |
|---|---|
| CITY OF RIO GRANDE CITY | § |
| COUNTY OF STARR | § |

## CONTRACT FOR SOLID WASTE COLLECTION AND DISPOSAL SERVICE

This Contract for Solid Waste Collection and Disposal Service for the City of Rio Grande, Texas (hereinafter referred to as the "Contract") is made on the 28th day of September, 2015 between the City of Rio Grande, Texas (hereinafter referred to as ("City") 5332 East Highway 83. Rio Grande, Texas 78582 and Grande Garbage Collection Co. (hereinafter referred to as Contractor") 201 Britton Avenue, Rio Grande City, Texas 78582.

### TERM

The term of the contract with the City of Rio Grande City and the Contractor will be effective beginning October 10, 2015 through October 11, 2018, a three-year term. An option to renew this contract for an additional two-year term.

The provisions of this Contract shall be strictly complied with and conformed to by the Contractor and the City, and no amendment to this Contract shall be made except upon the written consent of the City and the Contractor.

No amendment to this Contract shall be construed to release either party from any obligation of this Contract except as especially provided for in such amendment.

The Contractor shall not be liable for the failure to perform its duties, in whole or in part, if such failure is caused by catastrophe, riot, war, governmental order or regulation, strike, fire, act of god, inclement weather, changes to city, state or federal regulations impacting the Contractor.

In the event that any provision or portion of this Contract shall be found invalid, unconstitutional, or unenforceable, by a court of competent jurisdiction, its invalidity, unconstitutionally, or unenforceability, or unenforceability shall not affect remaining provisions of this Contract and the remaining provisions shall continue in full force and effect as if such invalidity, unconstitutionality or unenforceability never existed.

### 1.00   DEFINITIONS

1.01   BIN -- Mental receptacle designed to be lifted and emptied mechanically for use only at commercial and industrial units.

1.02   BRUSH -- Tree trimmings, grass cutting, dead trees or branches thereof, shrubs, chips shavings produced at an occupied residential lot. Brush generated from lot

clearing operations is not covered under the definition of brush.

1.03    **BULKY WASTE** – Appliances such as washers, dryers, stoves, air conditioners and refrigerators (provided Freon has been removed by a licensed facility and is labeled as such), water tanks, furniture, and mattresses generated at an occupied residential, or small commercial lot.

1.04    **CITY** – City of Rio Grande City, Texas.

1.05    **COMMERCIAL AND INDUSTRIAL REFUSE** – All bulky waste, construction debris, garbage, and rubbish and stable matter generated by a producer or contractor at a commercial and industrial unit.

1.06    **COMMERCIAL AND INDUSTRIAL UNIT** – All premises locations or entities, public or private requiring refuse collection within the corporation limits of the City not a residential unit.

1.07    **CONSTRUCTION DEBRIS** – Waste building materials resulting from commercial, industrial, or residential construction, remodeling, repair or demolition operations.

1.08    **CONTAINERS** – 96 Gallon wheel carts for residential use, to be provided by contractor, to be used in conjunction with a fully authorized pickup plan.

1.09    **CONTRACT DOCUMENTS** – Contractor's proposal, general specifications, the contract and any addenda or changes to the foregoing documents agreed to by the City of Rio Grande City and the Contractor. Contract documents shall include the following documents, and this Contract does hereby expressly incorporate same herein as fully as is set forth verbatim in this contract:

    a.   The Contractor's Rate Quotations;
    b.   The General Specifications;
    c.   The resolution of the City of Rio Grande City ordering or authorizing the work and services contemplated herein;
    d.   This instrument; and;
    e.   Any addenda or change to the foregoing documents agreed to by the parties hereto.

1.10    **CONTRACTOR** – Grande Garbage Collection Company that is the corporation performing refuse collection and disposal under contract with the City.

1.11    **DEAD ANIMALS** - Animals or portions thereof equal to or less than 20 pounds in weight that have expired from any cause, except those slaughtered or killed for human use.

1.12    **DISPOSAL SITE** – A refuse depository not limited to sanitary landfills, transfer

stations, incinerators, and waste processing/separation centers licensed, permitted or approved to receive for processing or final disposal of refuse and dead animals by all governmental bodies and agencies having jurisdiction and requiring such licenses, permits or approvals.

1.13 GARBAGE – Any and all dead animals of less than 10 pounds in weight, except those slaughtered for human consumption; every accumulation of waste (animal, vegetable and/or other matter) that results from the preparation, processing, consumption dealing in, handling, packing, canning, storage, transportation, decay or decomposition of meats, fish, fowl, birds, fruits, but not by way of limitation, used tin cans and other decomposable waste animal or vegetable matter which is likely to attract flies or rodents); except (in all cases) any matter included in the definition of bulky waste, construction debris, dead animals, hazardous waste, rubbish or stable matter.

1.14 HAZARDOUS WASTE – Waste, in any amount, which is defined, characterized or designated as hazardous by the United States Environmental Protection Agency or appropriate State Agency by or pursuant to Federal or State law, or waste, in any amount, which is regulated under Federal or State law. For purposes of this contract, the term hazardous waste shall also include motor oil, gasoline, paint and paint cans.

1.15 LANDFILL – A lawfully permitted sanitary landfill of the Contractor's selection.

1.16 PRODUCER – An occupant of a commercial and industrial unit, construction site, or a residential unit who generates refuse.

1.17 REFUSE – Residential refuse, commercial and industrial refuse, brush/bulky items, construction debris, demolition debris, and stable matter generated by a producer or contractor.

1.18 RESIDENTIAL REFUSE – All garbage and rubbish generated by a producer at a residential unit or a small business receiving residential service.

1.19 RESIDENTIAL UNIT – A dwelling within the corporate limits of the City occupied by a person or group of persons comprising not more than four families. A residential unit shall be deemed occupied when water services are being supplied to thereto. A condominium dwelling, whether of single or mulita-level construction, consisting of four or less contiguous or separate single-family dwelling within any such residential unit shall be treated as a residential unit, except that each single-family dwelling within any such residential unit.

1.20 RUBBISH – See BULKY WASTE.

1.21 STABLE MATTER – All manure and other waste matter normally accumulated in or about a stable, or nay animal, livestock or poultry enclosure, and resulting

from the keeping of animals, poultry or livestock.

## 2.00   SCOPE OF WORK

The work under this Contract shall consist of commercial, industrial, construction, demolition, brush/bulky, and residential solid waste collection and disposal, including all the supervision, material, equipment, labor and all other items necessary to complete said work in accordance with the contract documents.

## 3.00   COLLECTION OPERATIONS

## 3.01   SERVICE PROVIDED

(a) Contractor shall provide automated curbside cart collection service for the collection of residential refuse to each residential unit and commercial unit receiving residential serviced one (1) time per week.

(b) Contractor shall provide dumpster bin collection services for the collection of refuse to commercial units, industrial units, and muliti-family residential complexes of five (5) or more dwellings, or any units under construction according to individual agreement.

(c) During the term of this contract the Contractor shall make available or provide for the special collection from residential units, commercial units, and construction / demolition sites for construction / demolition material, debris, and stable matter upon terms and conditions as contractor shall specify. Also, the Contractor may from time to time provide for the special collection of Dead Animals and Hazardous Waste at commercial and Industrial Units and Residential Units at its sole discretion and upon such terms and conditions as agreed to by City and Contractor.

(d) Contractor shall provide the following services to City owned properties at no additional cost.

- Furnish six 30-cubic yard roll-off hauls per year for annual events of the City and Economic Development committee.

- Up to seven (7) 4-yard dumpsters (or 96 gallon carts) serviced once per week at various City locations including City Hall, Fire Department, Public Works Facility, Library, Public Utility Department, and other municipal buildings.

- Assistance in up to four (4) city wide clean-ups per year. Contractor will assist with City wide clean-ups four (4) times per year with brush truck collection. Items collected will be of the same nature of waste collected during the monthly brush/bulky item collection.

### 3.02   LOCATION OF BINS, CONTAINERS, BRUSH/BULKY WASTE FOR COLLECTION

(a) Containers and brush/bulky items shall be placed at curbside for collection as required by City ordinance. Curbside refers to that portion of right-of-way adjacent to paved or traveled City roadways. Containers, brush/bulky items shall be placed as close to the roadway as practicable without interfering with or endangering the movement of vehicles or pedestrians. When construction work is being performed in the right-of-way, containers, brush/bulky items shall be places as close as practicable to an access point for the collection vehicle. Contractor may decline to collect any residential refuse not properly placed in a Contractors issued container.

(b) Contractor shall provide bins for commercial and industrial units and construction sites whenever customers request their use. Each bin shall be placed in an accessible, unobstructed location on a hard surface according to individual agreement, subject to city ordinance. Contractor may decline to collect refuse in binds no so placed to permit a collection vehicle unobstructed access. Contractor will not be held responsible for wear and tear or surface damage on customer's private property caused by normal collection operations.

### 3.03   ITEMS NOT COLLECTED

Items not collected under the terms of this contract include batteries, liquids of any kind, medical waste, hazardous waste, asbestos. junk vehicles, dirt, rocks, asphalt, items containing Freon, corrugated metal, or any materials not included under the definitions of garbage, rubbish.

### 4.00   COLLECTION OPERATIONS

### 4.01   HOURS OF OPERATION

(a) Collection of residential refuse shall not start before 7:00 a.m. or continue after 7:00 p.m. on the same day unless by the mutual agreement of City and Contractor due to unusual circumstances.

(b) Collection of commercial and industrial refuse and construction debris shall take place according to agreement between Contractor and its customers but such agreement shall conform to the terms of City ordinance.

### 4.02   ROUTES OF COLLECTION

(a) Residential collection routes shall be established by the Contractor and provided to Rio Grande City. Contractor shall submit a schedule designating

the residential unit collection routes to the City for its approval, which approval shall not be unreasonably withheld. The Contractor may from time to time propose changes in routes or schedule, contingent on approval of City, which approval shall not be unreasonably withheld. Upon City's approval of the collection routes or any subsequent proposed changes, Contractor shall promptly give written or published notice to the affected residential units.

(b) Commercial and industrial unit collection routes shall be established by the Contractor and provided to Rio Grande City. All routing must comply with City and State traffic laws. Contractor is not to use alleyways for traffic passage unless bins are located in the alleyway. Contractor shall submit a schedule designating the commercial and industrial unit collection routes to the City for its approval, which approval shall not be unreasonably withheld. The Contractor may from time to time propose changes in routes or schedule, contingent on approval of City,

## 4.03   HOLIDAYS

The following shall be holidays for the purpose of this contract:

> New Year's Day
> Memorial Day
> Independence Day
> Labor Day
> Thanksgiving Day
> Christmas Day

Contractor may decide to observe any or all of the above mentioned holidays by suspension of collection services on the holiday, but such decision in no manner relieves Contractor of its obligation to provide collection services at residential units once per week and commercial, industrial, and construction customers as per agreement with customer. Contractor will furnish advance notice to City of which holidays will be observed and what the alternate schedule will be. Alternate schedules will be subject to approval by the City.

## 4.04   COMPLAINTS

All complaints from a producer, the public or the City shall be made directly to the Contractor and shall be given prompt and courteous attention. In the case of alleged missed scheduled collections, the Contractor shall investigate, and if such allegations are verified, shall arrange from the collection of refuse not collected within 24 hours after the complaint is received.

## 4.05   COLLECTION EQUIPMENT

The contractor shall provide an adequate number of vehicles for regular collection

services. All vehicles, bins and other equipment shall be kept in good repair, appearance, and in a sanitary condition at all times. Each vehicle shall have clearly visible, on each side, the identification and telephone number of the Contractor. The Contractor shall also provide reliable back up vehicles for regular collection service vehicles.

### 4.06   OFFICE

The Contractor shall maintain an office or other facilities through which he can be contacted. It shall be equipped with sufficient telephones and a local telephone number or a toll free number, and shall have a responsible person in charge from 8:00 a.m. to 5:00 p.m. from Monday through Friday, except for holidays.

### 4.07   HAULING

All refuse hauled by the Contractor shall be so contained or enclosed that leaking, spilling or blowing are reasonably prevented.

### 4.08   DISPOSAL

All refuse collected for disposal by the Contractor shall be hauled to disposal site. The charge for disposal shall be included in the rates set forth in the proposal for each commercial and industrial unit and residential unit serviced by the contractor.

### 4.09   NOTIFICATION

The Contractor shall initially notify all producers at commercial and residential units about regulations and days for scheduled refuse collection.

### 4.10   POINT OF CONTACT

All dealings between the Contractor and the City shall be directed by the Contractor to the City Manager or his/her designated appointee, and by the City to appropriate person to be designated by the Contractor.

### 5.00   COMPLIANCE WITH LAW

The Contractor shall conduct operations under this Contract in compliance with all applicable laws; provided, however, that the General Specifications shall govern the obligations of the Contractor where there exist conflicting ordinances of the City on the subject.

### 6.00   EFFECTIVE DATE

This Contract shall be effective upon the execution of the Contract and

performance of such contract shall begin on the date as jointly agreed upon by the parties involved which will ensure a smooth transition of responsibilities between the out-going and in-coming contractor and avoid the interruption of services to the customers. For the purpose of this agreement the effective date will be October 10, 2015.

## 7.00 NONDISCRIMINATION

The Contractor shall not discriminate against any person because of race, sex, age, creed, color, religion or national origin.

## 8.00 INDEMNITY

The Contractor will indemnify and save harmless the City, its officers, agents, servants, and employees from and against any and all suits, actions, legal proceedings, claims, demands, damages, costs, expenses, and attorneys' fees arising out of a willful or negligent act or omission of the Contractor, its officers, agents, servants, and employees; provided, however, that the Contractor shall not be liable for any suits, actions, legal proceedings, claims, demands, damages, costs, expenses and attorney's fees arising out of the award of this Contract or a willful or negligent act or omission of the City, its officers, agents, servants and employees.

## 9.00 LICENSES AND TAXES

The Contractor shall obtain all licenses and permits (other than the license and permit granted by the contract) and promptly pay all taxes required by the State.

## 10.00 TERM

(a)     The term of the contract with the City of Rio Grande City and the Contractor will be effective beginning October 10, 2015 through October 11, 2018 (EXPIRATION DATE). The Contract shall be for a three (3) year period beginning upon the execution of Contract. The initial three (3) year term of this Contract can be extended for successive additional two (2) year terms provided both parties are in mutual agreement. Should a mutual agreement not be reached, either party shall notify the other party in writing not less than ninety (90) days prior to the expiration date of the initial three (3) year term or of any successive term, if its intention is to terminate this contract. Any such written notice shall be served by certified or registered mail, return receipt requested.

## 11.0 INSURANCE

Contractor shall at all times during the Contract maintain in full force and effect Employer's liability, Worker's Compensation (or equivalent), Public Liability,

and Property Damage insurance, including contractual liability coverage for the provision of Section VIII.

Before commencement of work hereunder, Contractor agrees to furnish to City certificate of insurance or other evidence satisfactory to City to the affect that such insurance has been procured and is in full force.

For the purpose of this Contract, Contractor shall carry the following types of insurance in at least the limits specified below:

| Coverage: | Limits of Liability: |
| --- | --- |
| Worker's Compensation (or equivalent) | Statutory |
| Employer's Liability | $500,000.00 |
| Bodily Injury Liability Except Automobile | $500,000.00 each occurrence $1,000,000.00 aggregate |
| Property Damage Liability Except Automobile | $500,000.00 each occurrence $1,000,000.00 aggregate |
| Automobile Bodily Injury Liability | $500,000.00 each occurrence $1,000,000.00 aggregate |
| Automobile Property Damage Liability | $500,000.00 each occurrence |
| Excess Umbrella Liability | $500,000.00 each occurrence |
| Commercial General Liability | $500,000.00 |

## 12.00   TRANSFERABILITY OF CONTRACT

Other than by operation of law and assignment to affiliates of Contractor, no assignment of the Contract or any right accruing under this Contract shall be made in whole or in part by the Contractor without the express written consent of the City, which consent will not be unreasonably withheld. Upon the assignment, the assignee shall assume the liability of the Contractor. Notwithstanding anything contained herein to the contrary, Contractor shall be permitted to assign this Agreement to an affiliate of the Contractor without the City's consent. This provision is not intended to preclude the Contractor or other company from acquiring or merging with another authorized Contractor providing collection services under a contract with the City at the time of such acquisition or merger.

## 13.00   BASIS AND METHOD OF PAYMENT

### 13.01   COLLECTION

(a) For collection service required to be performed pursuant to Section 3.01 (a)-(c), the charges shall not exceed the rates as fixed by the contract documents as adjusted in accordance with Section 13.02.

(b) For special collection provided by the Contractor pursuant to Section 3.01 (d), the charges are to be negotiated between the Contractor and the producer prior to collection. Fees charges shall be in compliance with a schedule of fees.

(c) Invoices sent to City by Contractor should reflect the rates shown on the attached rate quotations sheet. Rates shall be charged in accordance with the attached schedule of rates from Allied Waste letter dated September 1, 2014.

### 13.02   MODIFICATION TO RATES

(a) Modifications to rates shall be approved by both parties mutually every twelve (12) month period, if necessary. As soon as possible before a Rate Modification Date, Contractor shall send to City a comparative statement setting out for both the Water and Sewer and Trash Collection Services index and the Diesel Prices Index: (i) the twelve month average index values as of the month of June from the current and previous year; (ii) the net percentage change;(iii) the composite percentage change equal to ninety percent (90%) of the net percentage in the Water and Sewer and Trash Collection Services index, plus ten percent (10%) of the percentage change in the Diesel Prices Index; and (iv) the increase in the fees which may be charged by Contractor. Increases enacted under this section shall not exceed 4% per contract year and must be mutually agreed to by both parties.

### 13.03   CITY TO ACT AS COLLECTOR. The City shall submit statements to and collect from all customers for residential, commercial receiving residential, and commercial bin services provided by the Contractor pursuant to Section 3.01 (a) and 3.01 (b), including those such accounts that are delinquent.

### 13.04   CONTRACTOR TO ACT AS COLLECTOR. The Contractor shall submit statements to and collect from all construction (roll-off) bin services provided by the Contractor pursuant to Section 3.01 (c), including those accounts that are delinquent.

### 13.05   DELINQUENT AND CLOSED ACCOUNTS. The Contractor shall discontinue refuse collection services to all customers as set forth in a written notice sent to it by the City. Upon further notification by the City, the Contractor shall resume refuse collection on the next regularly scheduled collection day.

13.06 **CONTRACTOR BILLING TO CITY.** Within three (3) days following the end of each month, the City shall submit to Contractor the number of active residential units, commercial units receiving residential service, and commercial bin units during the preceding month. The Contractor shall bill the City for services rendered to residential units, commercial units receiving residential service, and commercial bin units within five (5) days following the end of the month of service and the City shall pay the Contractor on or before the twentieth (20th) day following the end of such month. Should Payment not be received on or before the twentieth (20th) day following the end of such month, a late fee of 1.5% will be charged on the delinquent amount. Such billing and payments shall be based on the price rates and schedules set forth in the contract documents. Subsequent to said billing, the Contractor shall be entitled to payment for services rendered to all residential units and commercial units and Industrial units irrespective of whether or not the City collects from the producer for such services.

13.07 **FRANCHISE FEES.** City shall receive 5% of all revenues as a franchise fee.

14.00 **EXLUSIVE CONTRACT**

The Contractor shall have the sole and exclusive franchise, license, and privilege to provide brush/bulky waste, residential, commercial, industrial, and construction / demolition refuse collection. removal and disposal services within the corporate limits of the City (not including Starr County or RGCCISD properties). The Contractor shall at all times have the right of first refusal to the collection of dead animals and hazardous waste from residential units and from commercial and industrial units.

15.00 **OWNERSHIP**

Title to refuse of any dead animals shall pass to the Contractor when placed in Contractor's collection vehicle, removed by the Contractor from a bin or Container, or removed by Contractor from the customer's premises, whichever last occurs.

16.00 **RECORDS AVAILABLE FOR INSPECTION**

All records maintained by the Contractor regarding performance of this Contract shall be available for inspection, audit or photocopying by the City during regular business hours.

17.00 **JURSIDICTION**

Any controversy between the parties to this agreement involving the construction or application of any of the terms, covenants, or conditions of this Agreement shall, on the written request of one party served on the other, be submitted to arbitration, and such arbitration shall comply with and be governed by the

provisions of the Texas General Arbitration Act and/or shall be litigated in Starr County, Texas.

## 18.00 ENTIRE AGREEMENT

This Contract together with any attachments hereto represents the entire agreement between the parties hereto and any other representatives or inducements which may have been made between the parties and which are not included herein are void.

## 19.00 TERMINATION

Notice of Breach – In the event of material breach of any term of this agreement, the City Manager shall give the contractor formal notice of the material breach of the agreement, and specify the particular deficiencies that the City has observed in the Contractor's performance. Additionally, the notice shall state Contractor's failure to cure such stated cause within (60) days upon receipt of said notice. A copy of the notice shall be promptly delivered to the contractor via certified mail at the address provided herein. The contractor shall have no more than (60) calendar days from the date of delivery of the resolution to correct or relieve the material breach of the agreement and notify the City Manager, in writing of the action for remediation taken by contractor to correct or relieve the material breach of the agreement. Should the Board of Councilmen at its reasonable discretion determine that Contractor failed to correct or relieve the material breach of the agreement, the Board of Councilmen, by resolution may terminate this agreement. Such termination shall be effective at the reasonable discretion of the Board of Councilmen the best interest to the community and to protect the health and safety of the residents.

## 20.00 CLEAN-UPS

In the event of a natural disaster for which the City is declared a disaster area by the State or Federal Government, it shall be the City's responsibility to dispose of brush and bulky waste caused by such disaster; and will attempt in good faith to use Contractor's services and facilities if they can be used at a completive cost as other methods available to the City; and can be mutually agreed upon by the Contractor and the City. This provision shall not apply to the disposal any brush and bulky waste not caused by the natural disaster.

## 21.00 INDEMNIFICATION

Indemnification. To the fullest extent permitted by applicable law, the Contractor and its agents, partner, subcontractors, and consultants (collectively "Indemnitors") shall and do agree to indemnify, protect, defend and hold harmless the Owner, the Owner's respective directors, elected officials, employees and agents (collectively "Indemnitees")from and against all claims, damages, losses,

liens, causes of action, suits, judgments and expenses, including attorney fees, of any nature, kind of description (collectively "Liabilities") of any person or entity whomsoever arising out of, caused by or resulting from the performance of the Contractor's services through activities of the Contractor, its agents, partners, subcontractors and/or consultants performed under this Agreement, and which are caused by or result form error, omission, or negligent act of the Contractor or of any person employed or contracted by the Contractor provided that any such Liabilities (1) are attributable to bodily injury, personal injury, sickness, disease or death of any person, or to the injury to or destruction of tangible resulting therefrom and (2) are caused in whole or in part by any negligent act or omission of the Contractor, anyone directly or indirectly employed by the Contractor or anyone for whose acts the Contractor may be legally liable. The Contractor shall also save harmless the Owner from any and all expense, including, but not limited to, attorney fees which may be incurred by the Owner in litigation or otherwise resisting said claim or liabilities which may be imposed on the Owner as a result of such activities by the Contractor its agents, partners, subcontractors and/or consultants. In this connection, it is agreed and understood that the Contractor shall not be responsible for any portion of the liability proximately caused by the Owner's negligence.

## 22.00   CONDITIONS OF CONTRACT

This Contract is entered into subject to the following conditions:

(a) Neither the Contractor nor the City shall be liable for the failure to perform their duties if such failure is caused by a catastrophe, riot, war, governmental order or regulation, strike, fire, inclement weather, accident, act of God or other similar or different contingency beyond the reasonable control of the Contractor or City.

(b) In the event that any provision or portion thereof of any Contract Document shall be found to be invalid or unenforceable, then such provision or portion thereof shall be reformed in accordance with the applicable laws. The invalidity or unenforceability of any provision or portion of any Contract Document shall not affect the validity or enforceability of any other provision or portion of the Contract Document.

IN WITNESS WHEREOF, WE, the contracting parties, by our duly authorized agents, hereto affix our signatures and seals at Rio Grande City, Texas, as of the 28th day of September 2015.

CITY:

CITY OF RIO GRANDE CITY, TEXAS
A Municipal Corporation of
Starr County, Texas

By: _____
Title: _Mayor_____

SEAL of the City of Rio Grande, Texas and: Holly D. Guerrero_____
City Secretary

ATTEST:

_____
Holly D. Guerrero, City Secretary

CONTRACTOR:

Grande Garbage Collection Company

By: _____
Name: _____
Title: _CEO_____

DC-15-604
Starr County - District Clerk
10/23/2015 1:59:54 PM
Eloy R. Garcia, District Clerk
Starr County, Texas

Litxzary Benavides

Cause No. _____

DC-15-604

| | | |
|---|---|---|
| **BFI WASTE SERVICES OF TEXAS, LP,** | § | **IN THE DISTRICT COURT** |
| **D/B/A ALLIED WASTE SERVICES OF** | § | |
| **RIO GRANDE VALLEY** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| | § | **229th** |
| **v.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| | § | |
| | § | |
| **CITY OF RIO GRANDE, TEXAS** | § | |
| **AND IT'S ELECTED OFFICIALS IN** | § | |
| **THEIR OFFICIAL CAPACITIES** | § | |
| **Defendants** | § | **STARR COUNTY, TEXAS** |

## ORIGINAL PETITION FOR DECLARATORY JUDGEMENT, INJUNCTIVE RELIEF AND DAMAGES

Plaintiff BFI WASTE SERVICES OF TEXAS, LP, D/B/A ALLIED WASTE SERVICES OF RIO GRANDE VALLEY, a Delaware Limited Partnership ("Allied") files this Original Petition for Declaratory Judgment, Injunctive Relief and Damages against Defendants CITY OF RIO GRANDE, TEXAS and its Mayor Joe Villarreal, Mayor Pro Tem Hernan R. Garza, III, Arcadio Salinas, III, Rey Ramirez and David Jones, as elected officials, (collectively, the "City") and requests a Temporary Restraining Order (in the event the City does not participate in a hearing on this request) or a Temporary Injunction (in the event the City does participate in a hearing on this request) be issued.

### I. DISCOVERY CONTROL PLAN

1. For purposes of Rule 190.1, Allied alleges that the nature of this case may involve extensive discovery, making a Level 2 discovery plan appropriate. However, Allied reserves the right to request entry of an order establishing a Level 3 discovery control plan.

1

## II. PARTIES

2.     Allied is a Delaware limited partnership, with its principal place of business at 18500 North Allied Way, Phoenix Arizona, 85054.  Allied is a full service provider of solid waste collection and disposal services, providing solid waste collection services to municipalities in the Rio Grande Valley

3.     Defendant City is a home rule city formed under the laws of and incorporated in the State of Texas.  It may be served by serving its Mayor, Joe Villarreal, at 5332 E. Highway 83, Rio Grande City, Texas 78582.  The individually named defendants comprise the City Commission and are sued in their official capacity.  The City Commissioners are:

4.     Joel Villarreal - Mayor

5.     Hernan R. Garza, III – Mayor Pro Tempore and Commissioner Place 3

6.     Arcadio Salinas, III – Commissioner Place 1

7.     Rey Ramirez – Commissioner Place 2

8.     Dave Jones – Commissioner Place 4

Each and every member of the Defendant City Commission can be served with process at 5332 E. Highway 83, Rio Grande City, Texas 78582.

## III. JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this case because the amount in controversy exceeds this Court's minimum jurisdictional requirements and the Plaintiff seeks both declaratory and injunctive relief.

2

10.     This Court has jurisdiction over the Defendants pursuant to Chapter 17 of the Texas Civil Practice and Remedies Code or otherwise as the City is incorporated in the State of Texas and the actions complained of have all occurred in whole or in part in the State of Texas.

11.     Venue for this case is proper in Starr County, Texas pursuant to Chapter 15 of the Texas Civil Practice and Remedies Code or otherwise because all or a substantial part of the events or omissions giving rise to the claims occurred in Starr County.

## IV.     NATURE OF ACTION

12.     Since 2007, Allied has provided residential, commercial, industrial and construction solid waste collection, removal and  disposal services within the corporate limits of the City under an exclusive franchise agreement (the "Agreement") between Allied and the City.  A true and correct copy of the current written agreement is attached as **Exhibit "A"**.  The Agreement is effective from October 1, 2011 through September 30, 2018.  The agreement is exclusive to Allied and the City may not contract with another entity to perform the solid waste collection services covered by the Agreement during the term of the Agreement.

13.     The City has waived sovereign immunity to both liability and suit by contracting for solid waste collection services with Allied.  Section 271.152 of the Texas Local Government Code provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.  Tex. Loc. Gov't.Code Ann. § 271.152 (Vernon 2005).

> The City and Allied entered into a written contract stating the essential terms of the

3

agreement for providing solid waste collection services and this agreement was approved by the City's governing body at a lawfully held meeting. As such, the City has waived immunity to this suit and the damages claimed.

14.     On April 14, 2015 the City presented a resolution expressing concerns described as "defaults and/or deficiencies of contract services" related to refuse collection, city wide cleanups and a claim by Starr County. A copy of the Notice Letter and Resolution is attached as **Exhibit "B"**. The resolution made reference to adoption of a Resolution to serve as notice regarding defaults and/or deficiencies in contractual services in accordance with Section 19.00 of the Contract. Allied responded by requesting and attending a May 1, 2015 meeting with City officials at the Rio Grande City Commissioners Meeting Room and by presenting the City with a letter attached as **Exhibit "C"** on May 14, 2015.

15.     There is no provision in the Agreement permitting termination for "defaults and/or deficiencies" as presented in the aforementioned City Resolution No. 2015-9. The Agreement clearly provides that if the City believes it has cause to terminate the Agreement prior to the expiration date of the Agreement, Allied must be provided with a Resolution giving Allied formal notice of a "material breach" of the Agreement and an opportunity to cure. See Page 13 of Exhibit "A". 19.00 Termination.

16.     At no time has the City provided Allied with any Resolution or claim that Allied has committed a "material breach" of the Agreement and therefore, the City may not invoke Section 19.00 of the Agreement to terminate the Agreement with Allied. Further, the City has at no time provided Allied with an opportunity to cure any such alleged breach, as is also required by Section 19.00 of the Agreement.

4

17. Even though the concerns expressed were not described by the City as "material breaches" of the Agreement, Allied responded as evidenced by **Exhibit "C".** Allied asserted that the matters cited by the City did not rise to the level of material breaches as contemplated in the contract and that nonetheless, Allied had either clarified that the defaults or deficiencies claimed by the City had been or were being resolved to the City's satisfaction. With respect to the three concerns addressed, Allied asked for the City to notify Allied immediately if the City was not satisfied with Allied's response.

18. As of the filing of the Petition, the City has not expressed any dissatisfaction with Allied's May 1, 2015 and May 14, 2015 responses regarding matters that did not rise to the level of material breaches of the Agreement.

19. On September 11, 2015 Allied sent the City a letter expressing concern over proposed City Ordinance 2015-8 which would violate the exclusivity provisions in Allied's Agreement with the City. The letter is attached as **Exhibit "D".** The letter also provided an analysis of legal authority contradicting terms proposed in Ordinance 2015-8. Unbeknownst to Allied, the City had already decided to take action to terminate the Agreement.

20. On September 14, 2015 the City sent Allied a letter notifying it that the City "has terminated your solid waste services" and instructing Allied to cease any and all solid waste collection activity in the City on October 9, 2015. The letter is attached as **Exhibit "E".** The letter further demanded that Allied remove all of its trash bins in the City on or before October 23, 2015. The letter threatened that the City would charge Allied for removal and storage of Allied's trash bins if Allied failed to remove them. Neither this letter nor any other notice or, to

Allied's knowledge, resolution, provide details of any alleged material breach or opportunity to cure as required by the City's contract with Allied. Further, nothing in the Agreement allows the City to remove Allied's property and impose charges for removal and storage of property that is placed in the City pursuant to a lawful Agreement.

21.    At about the time Allied received notice that it should cease waste collection activity in the City, Allied noticed that a competitor was placing commercial trash bins alongside Allied's receptacles in the City.  Such conduct (which has continued since that time), if permitted by the City, constitutes an additional breach of the City's Agreement with Allied, namely, a violation of the exclusivity provision found in Section 14. Exclusive Contract, Page 12 of Exhibit "A".

22.    On September 17, 2015 Allied wrote to the City informing the City that the City could not lawfully terminate the Agreement.  See the attached **Exhibit "F"**.  Allied once again pointed out that the City had not provided Allied with any notice of material breach of the Agreement or an opportunity to cure.

23.    The City has taken actions which, if allowed, will terminate the Agreement without cause on October 9, 2015, almost 36 months prior to the agreed upon termination date.  The City will deprive Allied of its rights under the Agreement thereby impairing Allied's contract rights, severely affecting and disrupting Allied's business operations, permanently damaging Allied's business operations and damaging Allied's business reputation and goodwill in Rio Grande City and Starr County, Texas.  Additionally, this breach of Agreement will cause Allied significant damages through the remainder of the term of the Agreement in the form of losses resulting from the loss of use of receptacles acquired specifically for the City and lost profits.  In addition, the City is violating constitutional rights afforded to Allied as will be shown below and Allied will

6

suffer irreparable harm if the City is allowed to terminate the Agreement without cause.

24.     Allied challenges those actions of the City, showing that those actions are in violation of the "Contract" Clause of the United States Constitution and the Texas Constitution, the "Due Process" clause of the United States Constitution and the "Due Process of Law" Clause of the Texas Constitution. The City has taken its actions for no identifiable public purpose as the City has alleged no material breach of the Agreement by Allied.

25.     The City's actions should be immediately and permanently enjoined during the remainder of Allied's contract term.

## V.     FACTS

26.     On February 6, 2013, Allied entered into an agreement with the City to provide solid waste collection and disposal services within the jurisdiction of the City of Rio Grande. The agreement is attached as **Exhibit "A."** The agreement included the following terms:

A)     A term ending on September 30, 2018. **TERM. Page 1 of Exhibit "A".**

B)     A scope of work obligating and giving Allied the right to provide commercial, industrial, construction and residential solid waste collection and disposal, within the corporate limits of the City. **2.00 SCOPE OF WORK. Page 4 of Exhibit "A".**

C)     A requirement that the City pay Allied the rates as outlined in the Rate Schedule, as modified in accordance with the Agreement. **13.02 MODIFICATION TO RATES Page 10 of Exhibit "A".**

D)     An exclusivity provision, granting Allied the sole and exclusive franchise, license and privilege to provide the services within the corporate limits of the City. **14.00**

7

**EXCLUSIVE CONTRACT Page 12 of Exhibit "A".**

E)      A termination provision requiring the City to notify Allied of any material breach and a thirty (30) day opportunity to cure any such breach. **19.00 TERMINATION. Page 13 of Exhibit "A".**

F)      A provision that should the Board of Councilmen at its reasonable discretion determine that the contractor [Allied] failed to correct or relieve the material breach of the agreement, the Board of Councilmen, by resolution may terminate this agreement. **19.00 TERMINATION. Page 13 of Exhibit "A".**

G)      On September 11, 2015, the City sent a notice of termination of the Agreement to Allied, notifying Allied of the City's decision to not continue services under the agreement, effective October 9, 2015.   A copy of the notice and resolution is attached as **Exhibit "D".**

27.     None of the alleged breaches were material or gave rise to any ability to terminate. Nevertheless, Allied promptly responded to the notices and there can be no claim that the alleged defaults were not cured.

28.     As of the filing of the Petition, the City has not presented Allied with a resolution as required by the agreement notifying Allied of the City's determination that Allied has failed to correct or relieve any material of the agreement.

29.     Pursuant to the Agreement, City pays Allied approximately $142,000 per month for a combination of residential, commercial and industrial solid waste collections.  If the City is allowed to continue with this violation of Allied's rights, Allied will lose the full value of its

8

agreement for the remainder of the contract term.

30.    Separately or in combination, the City's action to terminate the Agreement and decision to retain the services of a competitor constitute action by the City that operates as a substantial impairment to the Agreement, for no legitimate public purpose, much less a significant and legitimate public purpose.  Such conduct is also a breach of the Agreement.  The harm faced by Allied is real and immediate.

## VI.    FIRST CAUSE OF ACTION- VIOLATION OF CONTRACT CLAUSE-U.S.

31.    The actions of the City as set forth above substantially impair the contractual right of Allied to be the exclusive provider of solid waste services in the corporate limits of the City.

32.    The actions of the City do not advance any legitimate public purpose, much less a significant and legitimate public purpose.

33.    Even if the actions of the City were to advance a legitimate public goal, its actions were neither reasonable nor necessary to advance such a goal.

34.    Therefore, the City's actions violate the "Contract Clause" of the United States Constitution, Article I, Section 10.

## VII. SECOND CAUSE OF ACTION-VIOLATION OF CONTRACT CLAUSE-TEXAS

35.    The actions of the City are specifically directed at and directly abrogate Allied's contractual rights to provide exclusive solid waste services in the corporate limits of the City.

36.    The actions of the City do not represent an exercise of the police power.

9

37. Therefore, the City's actions violate the "Contract Clause" of the Texas Constitution, art. 1, Sections 16 and 29.

## VIII. THIRD CAUSE OF ACTION-VIOLATION OF DUE COURSE OF LAW CLAUSE-TEXAS

38. The actions by the City improperly impair Allied's vested rights under the Agreement.

39. The "due course of law" clause of the Texas Constitution prevents a City from depriving a citizen of the state of vested rights unless it acts according to its police powers and by due course of law.

40. Because the City's actions do not represent an exercise of the police power, and will impair Allied's vested rights under the Agreement, the City's actions violate the "due course of law" clause of the Texas Constitution, Art. 1, Section 19.

## VIII. FOURTH CAUSE OF ACTION-VIOLATION OF 14TH AMENDMENT-U.S.

41. The City's actions will deprive Allied of its vested right under the Agreement.

42. The City did not afford Allied any due process of law before taking the actions which will deprive Allied of its vested rights.

43. The City's actions are not an exercise of its police power.

44. The Due Process Clause, U.S. Const. Amend. 14, protects citizens from being subject to actions by the City which the City does not have the power to take.

45. The City's actions will deprive Allied of those rights without due process of law in violation of U.S. Const. Amend. 14. Section 1.

10

## IX. FIFTH CAUSE OF ACTION-BREACH OF AGREEMENT

46.     The City's termination of its Agreement with Allied and its intent to contract with another solid waste collection provider to begin solid waste collection services in the City is a breach of the valid and enforceable contract possessed by Allied to provide those services through September 30, 2018.  The breach of the existing contract has been made clear by presence in the City of trash containers/dumpsters belonging to a competitor in violation of Allied's exclusive contract with the City.

47.     City, by express language and conduct is repudiating its contractual obligation to use Allied through September 30, 2018 for its solid waste collection and disposal services.   As such, Allied's contractual right to collect and dispose of solid waste in the City will be violated and Allied will suffer damages over the term of the contract, exclusive of interest and costs.

48.     Allied has written to City and has declared that it has a valid and enforceable agreement and has specifically requested that the City withdraw its notice of termination dated September 11, 2015 or alternatively, that City abate the termination process for a period of at least sixty days to allow for the parties to attempt a resolution of this matter.  Allied's request is attached as **Exhibit "E"**.  At the time of the filing this complaint, the City Attorney has communicated that the City will be considering whether to abate the termination process at a meeting of the Board of Councilmen scheduled for October 8, 2015 at 5:30 p.m.  Allied has not been informed that the City intends to withdraw its termination letter dated September 14, 2014 or abate the termination process.

49.     City, by and through its elected and appointed officials refuses to acknowledge the

11

existence of a lawful, valid and enforceable obligation to use Allied as City's exclusive solid waste collection and disposal provider through September 30, 2018.  City's conduct is a breach of Allied's sole and exclusive right to provide those services through September 30, 2018.

## X. ATTORNEY'S FEES

50.     Allied is entitled to and requests judgment against the City for Allied's reasonable and necessary attorney's fees incurred in bringing and prosecuting this action.  Allied is entitled to attorney's fees pursuant to the Declaratory Judgment Act and Section 38.000 *et. seq.* of the Texas Civil Practice and Remedies Code.

## XI. DAMAGES

51.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

52.     As a result of Defendants' breach of contract, Plaintiff will suffer actual damages in the form of loss of goodwill, loss of reputation, business disruption, lost revenues, lost profits, out-of-pocket expenses and other damages which are collectively unliquidated and  incapable of being easily calculated. The damages claimed are in an amount in excess of the minimum amount necessary for jurisdiction in this court, exclusive of court costs and attorney fees.

53.     Plaintiff is entitled to recover its reasonable and necessary attorneys' fees and costs associated with prosecuting this action.  Plaintiff seeks an award of attorneys' fees and costs against Defendants.

54.     Plaintiff is entitled to recover pre-and post-judgment interest, at the statutory rate or at such other rate as is set by this Court.

## XII. REQUEST FOR DECLARATORY JUDGMENT

55. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

56. Plaintiff brings this action under the Uniform Declaratory Judgments Act, Sections 37.001 *et seq.* of the Texas Civil Practice and Remedies Code, seeking an interpretation and construction by this court of clauses in an agreement entered into between Allied and the City and attached as **Exhibit "A".**

57. Because of City's conduct in permitting a competitor to place waste disposal containers in the City of Rio Grande in violation of City's contract with Allied, and because of the disagreement between Allied and City over City's obligation to protect Allied and enforce Allied's right to exclusivity until September 18, 2018, Plaintiff is entitled to a declaratory judgment that City owes Allied for the value of services contracted pursuant to the agreement identified as **Exhibit "A".**

58. Furthermore, because of Defendant's failure to honor Plaintiff's timely written demand to cease actions in breach of the agreement, which necessitated Plaintiff preparing and filing this lawsuit, Plaintiff is entitled, pursuant to Tex. Civ. Prac. & Rem. Code § 37.009, to recover its costs and reasonable and necessary attorneys' fees incurred in compelling Defendant to perform its contractual obligations.

59. Pursuant to the Uniform Declaratory Judgments Act, Sections 37.001 et seq. of the Texas Civil Practice and Remedies Code, Plaintiff requests that this Court issue a declaratory judgment declaring:

13

1) That City entered into an agreement with Allied on February 6, 2013;

2) That pursuant to that agreement, Allied possesses the sole and exclusive right to provide solid waste collection and disposal services in the City of Rio Grande, Texas during the term of the agreement;

3) That the end date of the current contract term between the City of Rio Grande and Allied is September 30, 2018.

60. By granting the declaratory relief sought by Allied, this Court will clarify an ongoing and continuing dispute as to validity and enforceability of the Agreement through the term of the Agreement which ends on September 30, 2018.

61. Allied further asks the court to exercise its power of supplemental relief to carry the declaratory judgment into effect.

62. Allied has incurred costs and reasonable and necessary attorneys' fees in seeking this declaratory judgment.

## XIII. PRELIMINARY INJUNCTIVE RELIEF

63. Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

64. There is a substantial likelihood that Allied will succeed on the merits of its claims.

65. The relief sought is essential to prevent interference with Allied's constitutional, contractual and statutory rights. Unless the relief sought is granted, Allied will suffer irreparable injury, in that on October 10, 2015, Allied will lose its vested right to provide solid waste

14

collection and disposal service in the City of Rio Grande and receive payments due therefrom, and will be required to remove all of its solid waste collection containers throughout the City. Further, Allied has no adequate remedy at law, because Texas law likely prevents Allied from recovering damages against the City for these actions and even if the law afforded such relief, it is likely that the City does not possess the resources to make Allied whole.

66.     Allied's injury outweighs any harm that will result if a preliminary injunction is granted. In fact, the status quo will be preserved and no harm will result.

67.     Allied will suffer damages actual damages in the form of loss of goodwill, loss of reputation, business disruption, lost revenues, lost profits, out-of-pocket expenses and other damages which are collectively unliquidated and incapable of being easily calculated and more significantly, incapable of being assessed against the City based on sovereign immunity. The Texas Local Government Code Section 271.153 does not permit Allied to recover consequential damages such as those shown above as the Texas Legislature has not waived a local government's sovereign immunity to these types of claims. Therefore, Allied has no adequate remedy at law and will suffer irreparable harm unless the conduct is enjoined.

68.     Granting a preliminary injunction will not disserve the public interest.

69.     The affidavit of Jon Deicla, attached as **Exhibit "G"** is offered in support of Allied's claims for relief at law or in equity.

## XIV.   TEMPORARY RESTRAINING ORDER

70.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

15

71.     Allied has notified the City of its intent to file this request, and by copy of this petition emailed to the City Attorney, Jacqueline Salinas, has notified the City of this request. However, because the loss of Allied's rights is imminent and given this Court's busy docket and difficulties of coordinating schedules, Allied cannot afford to wait to insure the City's participation going forward.

## XV. JURY DEMAND

72.     Allied hereby requests a trial by jury of issues raised by this complaint that are triable to a jury.

## XVI.  PRAYER

WHEREFORE PREMISES CONSIDERED, Allied prays that the City be cited to appear and answer and after appropriate proceedings, the Court order the following relief:

1)     Find and declare that the City's termination of the Agreement with Allied and award of the Agreement to a competitor violates the "Due Process" and "Contracts" clauses of the United States Constitution and as such, such actions terminating the Agreement are void.

2)     Find and declare that the City's termination of the Agreement and award of the contract to a competitor violates the "Due Course of Law" and "Contracts" clauses of the Texas Constitution and as such, such actions terminating the Agreement are void.

3)     Find and declare that pursuant to the Agreement, Allied is entitled to be sole provider of the solid waste services described in the Agreement within the corporate limits of the City until September 30, 2018. Allied requests supplemental relief as necessary for the Court to carry out

16

this declaration.

4)     Find and declare that the City's actions constitute breach of the agreement and/or repudiation of the Agreement.

5)     Exercise supplemental relief to carry its declarations into effect.

6)     Grant a Temporary Injunction or Temporary Restraining Order to Allied, restraining the City and all of its officers and employees from taking any action that is inconsistent with Allied's contract rights as the exclusive franchisee for solid waste and disposal services, including but not limited to allowing another party to provide those same services.

7)     Grant a Temporary Injunction or Temporary Restraining Order the City and all of its officers and employees from taking any action or inaction interfering with Allied's right to exclusively provide solid waste collection services in the City and receive payment therefor during the term of the Agreement.

8)     Award Allied its damages for breach of contract, loss of goodwill and disruption of business in an amount exceeding the minimum jurisdictional amount for this court;

9)     Award Allied its reasonable attorney's fees in bringing this action;

10)    Award Allied its reasonable costs in bringing this action;

11)    Award Allied pre-judgement and post-judgment interest as allowed by law.

12)    Award Allied its costs of court.

13)    Provide for such other and further relief at law and in equity to which Allied may be

17

justly entitled.

Respectfully submitted,
Law Office of John David Franz

By: _____
John David Franz
State Bar No. 07389200
400 N. McColl, Suite B
McAllen, TX 78501
E-mail: jdf@johndavidfranz.com
Tel. (956) 686-3300
Fax. (956) 686-3578
ATTORNEY IN CHARGE FOR
BFI WASTE SERVICES OF TEXAS, LP,
d/b/a ALLIED WASTE SERVICES OF RIO
GRANDE VALLEY

18

## VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF HIDALGO       §

I, Jon Deicla, state that I have read the foregoing Petition and the factual statements contained therein are true and correct based on my knowledge and belief.

_Jon M. Deicla_
Jon Deicla

Subscribed and Sworn to before me on this 8th day of October, 2015.

_Melba Martinez_
Notary Public, State of Texas
My Commission Expires: 6-4-2016

MELBA MARTINEZ
Notary Public, State of Texas
My Commission Expires
June 04, 2016

19

CAUSE NO. DC-15-604

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, | § | IN THE DISTRICT COURT |
| D/B/A ALLIED WASTE SERVICES OF | § | |
| RIO GRANDE VALLEY | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | 229th JUDICIAL DISTRICT |
| | § | |
| CITY OF RIO GRANDE CITY, TEXAS | § | |
| AND IT'S ELECTED OFFICIALS IN | § | |
| THEIR OFFICIAL CAPACITIES | § | |
| | § | |
| DEFENDANTS/COUNTER PLAINTIFFS | § | STARR COUNTY, TEXAS |

---

## DEFENDANTS, THE CITY OF RIO GRANDE CITY, TEXAS AND IT'S ELECTED OFFICIALS' ORIGINAL ANSWER AND COUNTERCLAIM

---

TO THE HONORABLE DISTRICT COURT JUDGE:

NOW COME Defendants, the City of Rio Grande City, Texas and it's Elected Officials: Mayor Joel Villarreal, Mayor Pro-Tempore Hernan R. Garza, III, Commissioner Arcadio J. Salinas, III, Commissioner Rey Ramirez, and Commissioner Dave Jones, and files this, Defendants' Original Answer and Counterclaim to Plaintiff's Original Petition, Verified Request for Temporary and for Permanent Injunction, and respectfully shows the following:

1

## I.
## GENERAL
## DENIAL

Defendants exercise its right under Texas Rule of Civil Procedure 92 to deny each and every, all and singular the allegations and the causes of actions alleged in Plaintiff's Original Complaint, and demand strict proof thereof.

## II.
## AFFIRMATIVE DEFENSES

Pleading further, and in addition to its General Denial, Defendants assert the following affirmative defenses:

A.    Defendants plead the affirmative defense of independent discovery.

B.    Defendants plead the affirmative defense of unclean hands and fraud.

C.    Defendants plead the affirmative defense of estoppel.

D.    Defendants plead the affirmative defense of superior title and right to possess.

E.    Defendants plead the affirmative defense of abandoned opportunity.

F.    Defendants plead the affirmative defense of plaintiff's fault.

G.    Defendants plead the affirmative defense of pre-emption, that this suit is intended as a restraint of trade, which is governed exclusively by TEX. Bus. & COM. CODE § 15.05.

2

III.
COUNTERCLAIM: BREACH OF CONTRACT

1.    Plaintiffs entered into a contract with Defendant, the City of Rio Grande City, a Texas municipality, hereinafter, the "City" on October 1, 2011 to provide solid waste service.

2.    Defendants performed its contractual obligations.

3.    Plaintiff breached the contract by (1) failing to provide brush/bulky items pick-up constituting a material breach pursuant to Section 3.02 (a)(b) of the contract; (2) failing to provide four annual city-wide clean-ups constituting a material breach under Section 3.01(d) of the contract.; and (3) by fraudulent billing the City of Rio Grande City for services *not* rendered and such fraudulent billings totaling approximately $200,000.00.  More specifically, services for collection of solid waste for the County of Starr facilities were billed to the City and such services were not rendered, never performed and outside the scope of this contract since Plaintiff, BFI Waste Services of Texas, LP, D/B/A Allied Waste Services of Rio Grande Valley, hereinafter "Allied Waste," billed for service collections which were never performed at Starr County facilities.  Rio Grande City was monthly billed an estimated $200,000.00 since 2009- fraudulently and knowingly by Plaintiff, Allied Waste- these alleged collection services which were not rendered, yet billed; and constituting a material breach violating Section 13.06 of the contract. Section 13.06 of the contract states: "The Contractor shall bill the City for services rendered to residential units, commercial units receiving residential

3

service, and commercial bin units... ." Plaintiff, Allied Waste fraudulently billed the City

approximately $200,000.00 for services not performed.

4. Plaintiff, Allied Waste's breaches caused Defendants, the City of Rio Grande

City, *et al.* injury and substantial monetary loss to its taxpayers, and even worse, unsanitary

conditions throughout the City.

## IV.

## COUNTERCLAIM: QUANTUM MERUIT

5. Plaintiff, Allied Waste failed to provide services in picking up

brush/bulky waste, failing to provide four annual city wide clean-ups, and

fraudulently billed the City for services not rendered or performed approximately

totaling $200,000.00.

6. Defendant, the City relied on these services for sanitary, cleanliness of its community.

7. Plaintiff, Allied Waste had reasonable notice given by Resolution 2015-9 on April 14, 2015, passed at a public City meeting specifying ongoing material breaches to the City and its community, **See Exhibit A.**

8. Plaintiff, Allied Waste had reasonable notice that Defendants expected compensation reimbursement of the $200,000.00 billed fraudulently.

9. Plaintiff, Allied Waste's breaches caused Defendants, the City of Rio Grande City, *et al.* injury and substantial monetary loss to its taxpayers, and even worse, unsanitary conditions throughout the City.

4

V.
## COUNTERCLAIM: PROMISSORY ESTOPPEL

10.     Plaintiff, Allied Waste made a promise to Defendants, the City for specific performance of brush/bulky items pick-up; four city-wide clean-ups annually and to "bill for services rendered," not to fraudulently bill the City, its taxpayers, for services not provided and not rendered.

11.     Defendants, the City reasonably and substantially relied on these promise to its detriment by having an unsanitary unclean City and having approximately $200,00.00 taken from its taxpayers in fraudulent bills submitted to the City by Allied Waste.

12.     Defendants' reliance was foreseeable by Plaintiff.

13.     Due to the Defendants, City's reliance on the contractual provisions, the City detrimentally suffered loss monetarily and even worse, unsanitary conditions throughout the City. *Injustice can only be avoided by the City continuing service with another provider, and Allied Waste paying back the estimated $200,000.00 fraudulently billed to the City and dishonestly taken from its taxpayers.*

## VI.

## FRAUD

14.     Defendants, the City incorporate by reference the allegations contained in paragraphs 1-13 as if fully rewritten herein.

15.     By their own actions, Plaintiff, Allied Waste are liable for their misrepresentations in fraudulently billing Rio Grande City for services not rendered.  In 2014, Starr County conducted an internal audit and discovered that the City had been billing for Allied Waste trash pickup at Starr County facilities- when in reality Allied Waste was never picking up the trash at County facilities because the County had another solid waste contractor. (Allied Waste did not even have bins at these County facilities yet they charged for trash pick-up.) See **Exhibit B.** After receiving notice from the County, Rio Grande City looked into the matter and discovered that Allied Waste had been submitting invoices falsely charging for trash pick-up at Starr County Facilities since 2009.  The City further discovered that, more recently, Allied Waste was doing the same and charging for trash pick-up at Rio Grande City Consolidated School District facilities, a well, when they were no longer picking up trash at the school district facilities.  The City sent a Resolution to Allied Waste on April 14, 2015 putting them on notice and mandating reimbursement of approximately $200,000.00 for the fraudulent billings. **See Exhibit A.**  To date, Plaintiff, Allied Waste has failed to pay back the monies taken for services not rendered or performed.  The City is currently conducting its own internal audit to determine the exact amount of fraudulent

6

billings submitted by Allied Waste and will forward such evidence to local law enforcement upon completion.

16. Moreover, Plaintiff, Allied Waste made material misrepresentations in fraudulent billings/invoices which were false.

17. Plaintiff, Allied Waste either knew their material misrepresentations or recklessly billed material misrepresentations as positive assertions without knowledge of their truth.

18. Plaintiff, Allied Waste intended the City of Rio Grande City to act on those false misrepresentations, fraudulent billings.

19. Defendants, the City took action in reliance upon Allied Waste's misrepresentations and thereby suffered injury as a result. As a result of Plaintiff, Allied Waste's fraud the City of Rio Grande City has suffered pecuniary harm and requests compensatory and punitive damages in an amount to be determined at trial.

## VII.

## DAMAGES

20. Plaintiff, Allied Waste's material breaches as described above caused injury to Defendants, the City, which resulted in the following damages:

a. Loss of approximately $200,000.00 in fraudulent billing submitted monthly to the City from 2009 through the present.

b. Unclean, unsanitary conditions throughout the City and gross injustice to Rio Grande City and its taxpayers.

7

21.        The City of Rio Grande City, Defendant/Counter-Plaintiff, seeks unliquidated damages within the jurisdictional limits of this Court.

## VIII.

## EXEMPLARY DAMAGES

22.        Defendants, the City's injury resulted from Plaintiff, Allied Waste's malice and actual fraud which entitles the City of Rio Grande City, Texas to exemplary damages under Texas Civil Practice and Remedies Code Section 41.003(a).

## IX.

## PRAYER

23.        For these reasons, the City of Rio Grande City and its elected officials ask that justice be deemed and that it be awarded a judgment against Allied Waste for the following:

a.    Actual damages.

b.    Exemplary damages.

c.    Prejudgment and postjudgment interest.

d.    Court costs and attorneys' fees.

WHEREFORE, premises considered, Defendants respectfully pray that Plaintiff take nothing by this action, that all claims be dismissed with prejudice, that the Court award Defendants its reasonable and necessary attorneys' fees and costs of Court, that Defendants receive such other and further relief at law or in

equity to which it may be justly entitled, and that Defendants be awarded actual damages including pre- and post-judgment interest at the maximum rate allowed by law.

Respectfully submitted,

Jacqueline Lefevre Salinas
Rio Grande City Attorney
SOB: 24027947
507 N. Britton Avenue
Rio Grande City, Texas 78582
email: salinaslawfirm@gmail.com
Phone: (956) 488-1000
Facsimile: (956) 317-1269

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendants, Rio Grande City's Response and Counter Petition have been sent via email and facsimile to Attorney of Record, John David Franz on October 20, 2015.

Jacqueline Lefevre Salinas



AGENDA OF A MEETING OF THE
CITY COMMISSION OF RIO GRANDE CITY
MONDAY, SEPTEMBER 28, 2015  6:00 PM
COMMISSION CHAMBERS, CITY HALL
5332 E. Highway 83   Rio Grande City, Texas

1. GENERAL:
   A) Call to order, invocation and Pledge of Allegiance.
   B) Roll call and finding of quorum.
   C) Public Forum.
   D) Reading of proclamation designating October 4 to October 10 as Fire Prevention Week.

2. ORDINANCES
   A) Second Reading and adoption of Ordinance No. 2015-9 adopting the General, Special and Enterprise Funds Budget for fiscal year 2015-2016.
   B) Second Reading and adoption of Ordinance No. 2015-10 establishing an ad valorem tax and levying a maintenance and operation tax rate and an interest and sinking tax rate for the tax year ending 2015.

3. EXECUTIVE SESSION, CHAPTER 551, TEXAS GOVERNMENT CODE SECTION 551.071 (Consultation with Attorney) and SECTION 551.072 (Deliberations regarding Real Property)
   A) Discussion and possible action -- Consultation with attorney regarding Cause No. DC-14-182 José De La Fuente f/d/b/a Del Sol Homes and Del Sol Homes, LLC vs. Rio Grande City, Texas, 229th District Court of Starr County, Texas.
   B) Discussion and possible action -- Consultation with attorney regarding Cause No. DC-10-279 Remedios Herrera v. City of Rio Grande City, 381st District Court of Starr County, Texas.
   C) Discussion and possible action -- Consultation with attorney regarding Cause No. DC-15-471, Maria Julissa Pena, et al v. Rio Grande City, Texas, 381st District Court of Starr County, Texas.
   D) Discussion and possible action regarding notice to Allied Waste through Resolution No. 2015-9 and response from Allied Waste.
   E) Discussion and possible action regarding Prospect No. 2015-6.

4. ADJOURNMENT

With regard to any item, the City Commission may take various actions including but not limited to rescheduling an item in its entirety for a future date or time. The City Commission may elect to go into Executive Session on any item listed above as authorized by the Texas Government Code Sections 551.071(Consultation with Attorney), 551.072 (Deliberations regarding Real Property), 551.072 (Deliberations regarding Gifts and Donations), 551.074 (Personnel Matters), 551.076 (Deliberations regarding Security Devices) and 551.087 (Deliberations regarding Economic Development Negotiations).

CERTIFICATION

This is to certify that I, Holly D. Guerrero, posted this Notice on the alcove wall adjacent to the front door entrance of City Hall, visible and accessible to the general public during and after regular working hours. This Notice was posted on the 25th day of September 2015 on or before 5:00 pm and will remain so posted for at least 72 hours preceding the scheduled time of said meeting in accordance with Chapter 551 of the Texas Government Code.

Holly D. Guerrero, City Secretary

City Commission
9-28-2015

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, | § | |
| d/b/a ALLIED WASTE SERVICES OF | § | |
| RIO GRANDE VALLEY, | § | Case No. 7:15-cv-00459 |
| | § | |
| Plaintiff, | § | |
| | § | Judge Micaela Alvarez |
| v. | § | |
| | § | |
| CITY OF RIO GRANDE CITY, TEXAS | § | |
| AND ITS ELECTED OFFICIALS IN | § | |
| THEIR OFFICIAL CAPACITIES, | § | |
| | § | |
| Defendants. | § | |

## MOTION TO REMAND AND REQUEST TO
## EXTEND TEMPORARY RESTRAINING ORDER

This case arises from a contract for solid waste services between Plaintiff BFI Waste

Services of Texas, LP, d/b/a Allied Waste Services of Rio Grande Valley ("Allied") and

Defendant the City of Rio Grande (the "City"). The parties clearly waived federal jurisdiction in

that contract by specifying in the dispute resolution provision that "venue shall rest in Starr

County, Texas." The courts in the Fifth Circuit have uniformly held that such a clause waives

federal jurisdiction when, as here, no federal court sits in the specified county. The City's

removal of this case was improper, and the Court should remand it back to state court.

Before the City's improper removal, the Starr County district court entered a temporary

restraining order ("TRO") against the City precluding it from utilizing a new company to pick up

and haul solid waste in violation of the Allied/City contract. The City's attempted removal

appears to be motivated by a desire to get out from under that TRO and to avoid a hearing on the

1

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, CLERK
By _____
Deputy Clerk

TRO that was scheduled for November 5, 2015. To prevent Allied from being further harmed by the City's improper actions, Allied respectfully requests this Court to continue the TRO, which is entirely appropriate under federal law, pending a ruling on Allied's motion to remand. Allied supports this motion with the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    FACTUAL BACKGROUND.

On December 7, 2011, the City granted Allied the exclusive right to provide certain services within the City through September 30, 2018 (the "Contract"). The Contract is attached hereto as **Exhibit 1**. The City, however, breached the Contract by terminating Allied without cause and in contravention of the Contract's termination procedures. The City then immediately purported to award a new exclusive contract to Allied's competitor—Grande Garbage Collection Company ("Grande Garbage"). *See* Dkt. 1-7. Grande Garbage is owned by the Mayor's Campaign Treasurer, Pat Hernandez, who is also the Mayor's largest campaign donor. Simply, the City improperly terminated and replaced Allied to reward a friend of the Mayor.

More specifically, Allied challenges the City's termination of the Contract because: (1) Allied committed no material breaches for which the termination procedure of Section 19.00 of the Contract would apply to allow the City to terminate Allied; (2) even if the three service issues for which the City notified Allied constitute material breaches, Allied cured these breaches, and the City failed to present Allied with a resolution notifying Allied of any failure to cure these breaches as required by Section 19.00 of the Contract; and (3) the City violated the Texas Open Meetings Act rendering the decisions to terminate the Contract and purport to award a contract to Grande Garbage void.

On October 8, 2015, Allied sued the City in Starr County, Texas District Court, alleging various claims arising from the City's improper actions. The Starr County district court granted

2

a TRO against the City on October 12, 2015.  TRO, attached hereto as **Exhibit 2**.  The TRO was

to operate until October 22, 2015 and pending a hearing on Allied's Petition for a Temporary

Injunction set for that date.  *Id.*  On October 22, 2015, the district court called the temporary

injunction hearing and recessed it to continue on November 5, 2015.  *See* Order dated October

26, 2015, attached hereto as **Exhibit 3**.  In doing so, the district court extended the TRO until

that time.  *Id.*  The Court also ordered that the parties were to attend mediation prior to the

continuation of the temporary injunction hearing on November 5, 2015.  *Id.*

As noted, the City purported to enter into a contract for solid waste services with Grande

Garbage.  The City did not have legal grounds to terminate the Allied contract or to enter into a

new contract with this competitor.  Moreover, the City violated numerous open meeting and

notice laws and purported to enter into a new agreement with Grande Garbage behind closed

doors.  Now, the City and Grande Garbage are violating the TRO by having Grande Garbage

provide service within the City limits.  On October 29, 2015, Allied took photos of Grande

Garbage providing services within the City limits.  *See* Affidavit of Jesse Sanchez, attached

hereto as **Exhibit 4**.

On October 31, 2015, the City removed the Starr County case to this Court.  Dkt. 2.

Subsequently, Grande Garbage improperly attempted to intervene in the action.  Dkt. 1.  Allied

has demanded that the City stipulate to remand the case back to state court, but the City refuses

to do so.  *See* Letter dated November 2, 2015, attached hereto as **Exhibit 5**.

## II.     THE CITY'S REMOVAL WAS INAPPROPRIATE AND THE COURT SHOULD REMAND THE CASE.

The Contract gives Allied "the sole and exclusive franchise, license, and privilege to

provide brush/bulky waste, residential, commercial, industrial, and construction/demolition

refuse collection, removal and disposal services within the corporate limits of the City" (not

3

including Starr County of RGCCISD properties). Exhibit 1, § 14.00. Despite granting this exclusive franchise, the City has attempted to contrive reasons to terminate the Contract and instead allow the Mayor, who also is a defendant, to repay political favors and award it to a friend.

The Contract also contains a Section 17.00 entitled "Jurisdiction." This section provides that disputes "**shall** rest in Starr County, Texas." Exhibit 1, § 17.00 (emphasis added).

No federal court sits in Starr County, Texas and the venue provision constituted a waiver by both parties of federal jurisdiction that otherwise might exist. Several courts, including one in this district, have addressed this precise situation and held that federal court jurisdiction does not exist. In *Collin Cnty. v. Siemens Bus. Servs., Inc.*, 250 F. App'x 45 (5th Cir. 2007) (unpublished), the court affirmed remand of a diversity case where the parties' contract stated that "venue for all actions in connection with this Agreement shall lie exclusively in Collin County, Texas." The district court ruled that the clause "constitutes a valid waiver of federal removal rights because there currently is no federal district courthouse within Collin County . . . ." *Id.* at 47. The Fifth Circuit agreed and affirmed, stating that "the venue clause constituted a waiver of federal removal rights" and further that "Collin County's lack of a federal courthouse renders the clause at issue such a waiver." *Id.* at 52; *see Alliance Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 394, 400 (5th Cir. 2008) (holding that federal jurisdiction existed under contract provision like the one at issue here, **but only** because there **was** a federal court sitting in the county at issue and distinguishing *Collin County* as dispositive in light of that factor).

No federal court sits in Starr County, Texas and the parties agreed that any disputes "shall" be litigated in Starr County. As the above cases illustrate, the parties waived federal

4

jurisdiction and this case must be litigated in state court. The City's removal was improper and Allied respectfully urges the Court to remand the action.

## III.    THE TRO SHOULD BE EXTENDED.

A court may extend a temporary restraining order for an additional 14 days " for good cause shown" and for longer periods upon the consent of the parties. Fed. R. Civ. P. 65(b)(2). Good cause exists when the grounds on which the court originally granted the TRO continue to exist and the court has not yet had an opportunity to pass on the merits of a demand for a temporary injunction and/or any pending motions. *See Jones v. Belhaven Coll.*, 98 F. App'x 283, 284 (5th Cir. 2004) (unpublished); *Flying Cross Check, L.L.C. v. Cent. Hockey League, Inc.*, 153 F. Supp. 2d 1253, 1260 (D. Kan. 2001), *modified* (Mar. 8, 2001) (explaining that there is little case law on "what constitutes 'good cause' for purposes of extending a Rule 65(b) order," however, "a showing that the grounds for originally granting the temporary restraining order continue to exist should be sufficient."); *S.E.C. v. Comcoa Ltd.*, 887 F. Supp. 1521, 1526 (S.D. Fla.) *aff'd sub nom. Levine v. Comcoa Ltd.*, 70 F.3d 1191 (11th Cir. 1995) ("While TRO's cannot be extended indefinitely, they can be extended pending a ruling on a motion for a preliminary injunction."); *see also In re Davidson*, 908 F.2d 1249, 1250 (5th Cir. 1990) (extending a temporary restraining order after hearing motions for preliminary injunction and to dissolve the temporary restraining order presumably to decide those motions).

*Jones v. Belhaven Coll.*, 98 F. App'x 283, 284 (5th Cir. 2004) (unpublished) is directly on point here. In *Jones*, the district court extended a temporary restraining order without holding an evidentiary hearing until it could hold a hearing on whether the court had subject matter jurisdiction over the case following removal. *Id.* The Fifth Circuit affirmed the district court's extension of the temporary restraining order explaining, "The district court did not abuse its discretion extending the TRO as the court had the inherent authority to preserve the status quo

5

until the question of its jurisdiction could be resolved." *Id.* (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 292–93, 67 S. Ct. 677, 91 L. Ed. 884 (1947); *United States v. Hall*, 472 F.2d 261, 265 (5th Cir.1972)).

Good cause exists here. The grounds on which the court originally granted the TRO continue to exist. The TRO intends to preserve the status quo—of Allied providing the services—and prevent immediate and irreparable harm until the court has the opportunity to pass on the merits of a demand for a temporary injunction. Allied has sought a temporary injunction. The parties attended a hearing on the temporary injunction while the TRO was in effect, but the Starr County district court recessed and continued the hearing. Because the Starr County district court continued the temporary injunction hearing, no court has had an opportunity to pass on the merits of the temporary injunction. As a result, the TRO must be extended.

What is worse, even more grounds now exist warranting the TRO. The TRO restrained the City from acting in concert or participation from (i) taking any action that is inconsistent with Allied's rights under the Contract, which includes allowing another party to provide the solid waste services, and (ii) preventing Allied from providing the solid waste services. The City and Grande Garbage, however, are now violating the TRO despite the fact that they know of the TRO and that their actions are subject to it. Allied has taken photos as of October 29, 2015 of Grande Garbage making pick-ups from Grande Garbage containers within the City, which is a clear violation of the TRO. *See* **Exhibit 4**. In fact, in its October 31, 2015 Original Petition in Intervention, Grande Garbage stated that "Grande Garbage at the time of [Allied's September 18, 2015 cease and desist] notice and *to this day*, provides solid waste collection services" to the City and Starr County. Dkt. 1, ¶ 7 (emphasis added). Simply, Grande Garbage has admitted that it is aware of the TRO, yet it continues to service the City. *Id.* at ¶¶ 7, 9–10.

6

## IV.   CONCLUSION

The City and Grande Garbage are clearly violating the TRO. Instead of complying with the TRO, the City improperly removed this action, and Grande Garbage continues to service the City despite knowing of the TRO. Because removal is improper, this Court should remand the case to state court. This Court should also immediately extend the TRO pending this Court's decision of this motion to remand and until a court has an opportunity to consider the merits of Allied's request for a temporary injunction.

Respectfully submitted,

Law office of John David Franz

By: _____

John David Franz
State Bar No. 07389200
400 N. McColl, Suite B
McAllen, TX 78501
Email: jdf@johndavidfranz.com
Telephone: (956) 686-3300
Facsimile: (956) 686-3578
*Attorney-in-Charge for BFI Waste Services of Texas, LP, d/b/a Allied waste Services of Rio Grande Valley*

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 3, 2015, the foregoing **Motion to Remand** was electronically transmitted to the Clerk's Office using the CM/ECF system for filing and service via transmittal of a Notice of Electronic Filing to the following CM/ECF registrants. All non-registered parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Jacqueline Ruth Lefevre
612 E. Nolana, Suite 350
McAllen, TX 78504

Kennedy Felix Salinas
Salinas Law Firm
507 N. Britton Ave.
Rio Grande City, TX 78582
Email: kennedyfsalinas@gmail.com

Eloy R Garcia , Jr
118 E. Cano Street
Edinburg, TX 78539
Email: eloygarciajr@gmail.com

11007203

8

*THE STATE OF TEXAS*      §

*CITY OF RIO GRANDE*      §

*COUNTY OF STARR*      §


### CONTRACT FOR SOLID WASTE COLLECTION AND DISPOSAL SERVICE

*This Contract for Solid Waste Collection and Disposal Service for the City of Rio Grande, Texas (hereinafter referred to as the "Contract") is made on the 7th day of December, 2011 between the City of Rio Grande, Texas (hereinafter referred to as "City") 101 South Washington Street, Rio Grande, Texas 78582 and BFI Waste Services of Texas, LP, a Delaware limited partnership d/b/a Allied Waste Services of Rio Grande Valley (hereinafter referred to as "Contractor") 9402 W. Expressway 83, Harlingen, Texas 78552.*

### TERM

*The term of the contract with the City of Rio Grande and the Contractor will be effective beginning October 1, 2011 through September 30, 2018 (Contract originally ended September 30, 2015 however a 3 year extension was approved on February __, 2013)*

*The provisions of this Contract shall be strictly complied with and conformed to by the Contractor and the City, and no amendment to this Contract shall be made except upon the written consent of the City and the Contractor.*

*No amendment to this Contract shall be construed to release either party from any obligation of this Contract except as especially provided for in such amendment.*

*The Contractor shall not be liable for the failure to perform its duties, in whole or in part, if such failure is caused by catastrophe, riot, war, governmental order or regulation, strike, fire, act of God, inclement weather, changes to city, state, or federal regulations impacting the Contractor or any similar or different contingencies beyond the reasonable control of the Contractor.*

*In the event that any provision or portion of this Contract shall be found invalid, unconstitutional, or unenforceable, by a court of competent jurisdiction, its invalidity, unconstitutionality, or unenforceability shall not affect remaining provisions of this Contract and the remaining provisions shall continue in full force and effect as if such invalidity, unconstitutionality or unenforceability never existed.*

**EXHIBIT**

1

## 1.00 DEFINITIONS

1.01 BIN – Metal receptacle designed to be lifted and emptied mechanically for use only at commercial and industrial units.

1.02 BRUSH – Tree trimmings, grass cuttings, dead trees or branches thereof, shrubs, chips shavings produced at an occupied residential lot. Brush generated from lot clearing operations is not covered under the definition of brush.

1.03 BULKY WASTE – Appliances such as washers, dryers, stoves, air conditioners and refrigerators (provided Freon has been removed by a licensed facility and is labeled as such), water tanks, furniture, and mattresses generated at an occupied residential, or small commercial lot.

1.04 CITY- City of Rio Grande, Texas.

1.05 COMMERCIAL AND INDUSTRIAL REFUSE – All bulky waste, construction debris, garbage, and rubbish and stable matter generated by a producer or contractor at a commercial and industrial unit.

1.06 COMMERCIAL AND INDUSTRIAL UNIT – All premises locations or entities, public or private requiring refuse collection within the corporation limits of the City not a residential unit.

1.07 CONSTRUCTION DEBRIS – Waste building materials resulting from commercial, industrial, or residential construction, remodeling, repair or demolition operations.

1.08 CONTAINERS – 96-Gallon wheel carts for residential use, to be provided by contractor, to be used in conjunction with a fully authorized pickup plan.

1.09 CONTRACT DOCUMENTS – Contractor's proposal, general specifications, the contract and any addenda or changes to the foregoing documents agreed to by the City of Rio Grande and the Contractor. Contract documents shall include the following documents, and this Contract does hereby expressly incorporate same herein as fully as is set forth verbatim in this contract:

(a) The Contractor's Rate Quotations;
(b) The General Specifications;
(c) The resolution of the City of Rio Grande ordering or authorizing the work and services contemplated herein;
(d) This Instrument; and,
(e) Any addenda or change to the foregoing documents agreed to by the parties hereto.

1.10 CONTRACTOR – BFI Waste Services of Texas, LP, a Delaware limited partnership d/b/a Allied Waste Services of Rio Grande Valley that is the

2

corporation performing refuse collection and disposal under contract with the City.

1.11   DEAD ANIMALS – Animals or portions thereof equal to or less than 20 pounds in weight that have expired from any cause, except those slaughtered or killed for human use.

1.12   DISPOSAL SITE – A refuse depository not limited to sanitary landfills, transfer stations, incinerators, and waste processing/separation centers licensed, permitted or approved to receive for processing or final disposal of refuse and dead animals by all governmental bodies and agencies having jurisdiction and requiring such licenses, permits or approvals.

1.13   GARBAGE – Any and all dead animals of less than 20 pounds in weight, except those slaughtered for human consumption; every accumulation of waste (animal, vegetable and/or other matter) that results from the preparation, processing, consumption dealing in, handling, packing, canning, storage, transportation, decay or decomposition of meats, fish, fowl, birds, fruits, but not by way of limitation, used tin cans and other decomposable waste animal or vegetable matter which is likely to attract flies or rodents); except (in all cases) any matter included in the definition of bulky waste, construction debris, dead animals, hazardous waste, rubbish or stable matter.

1.14   HAZARDOUS WASTE – Waste, in any amount, which is defined, characterized or designated as hazardous by the United States Environmental Protection Agency or appropriate State Agency by or pursuant to Federal or State law, or waste, in any amount, which is regulated under Federal or State law. For purposes of this contract, the term hazardous waste shall also include motor oil, gasoline, paint and paint cans.

1.15   LANDFILL – A lawfully permitted sanitary landfill of the Contractor's selection.

1.16   PRODUCER – An occupant of a commercial and industrial unit, construction site, or a residential unit who generates refuse.

1.17   REFUSE – Residential refuse, commercial and industrial refuse, brush/bulky items, construction debris, demolition debris, and stable matter generated by a producer or contractor.

1.18   RESIDENTIAL REFUSE – All garbage and rubbish generated by a producer at a residential unit or a small business receiving residential service.

1.19   RESIDENTIAL UNIT – A dwelling within the corporate limits of the City occupied by a person or group of persons comprising not more than four families. A residential unit shall be deemed occupied when water services are being supplied thereto. A condominium dwelling, whether of single or multi-level construction, consisting of four or less contiguous or separate single-family dwelling within any such residential unit shall be treated as a residential unit, except that each single-family dwelling within any such residential unit.

3

1.20  RUBBISH – See BULKY WASTE.

1.21  STABLE MATTER - All manure and other waste matter normally accumulated in or about a stable, or any animal, livestock or poultry enclosure, and resulting from the keeping of animals, poultry or livestock.

## 2.00  SCOPE OF WORK

The work under this Contract shall consist of commercial, industrial, construction, demolition, brush/bulky, and residential solid waste collection and disposal, including all the supervision, material, equipment, labor and all other items necessary to complete said work in accordance with the contract documents.

## 3.00  COLLECTION OPERATIONS

### 3.01  SERVICE PROVIDED

(a)     Contractor shall provide automated curbside cart collection service for the collection of residential refuse to each residential unit and commercial unit receiving residential service one (1) time per week. The Contractor shall provide appropriate containers to each residential account. Contractor shall pick up and remove all brush/bulky waste once every month under a schedule with the City (limit of 10 cubic yards per house per month). City shall require by ordinance that containers and brush/bulky waste shall be placed at curbside by 7:00 a.m. on the designated collection day.

(b)     Contractor shall provide dumpster bin collection services for the collection of refuse to commercial units, industrial units, and multi-family residential complexes of five (5) or more dwellings, or any units under construction according to individual agreement.

(c)     During the term of this contract the Contractor shall make available or provide for the special collection from residential units, commercial units, and construction / demolition sites for construction / demolition material, debris, and stable matter upon terms and conditions as contractor shall specify. Also, the Contractor may from time to time provide for the special collection of Dead Animals and Hazardous Waste at Commercial and Industrial Units and Residential Units at its sole discretion and upon such terms and conditions as Contractor shall specify.

(d)     Contractor shall provide the following services to City owned properties at no additional cost.

4

- *Furnish six 30-cubic yard roll-off hauls per year for annual events of the City and Economic Development Committee.*

- *Up to seven (7) 4-yard dumpsters (or 96 gallon carts) serviced once per week at various City locations including City Hall, Fire Department, Public Works facility, Library, Public Utility Department, and other municipal buildings.*

- *Assistance in up to four (4) city wide clean-ups per year. Contractor will assist with City wide clean-ups four (4) times per year with brush truck collection. Items collected will be of the same nature of waste collected during the monthly brush/bulky item collection.*

## 3.02 LOCATION OF BINS, CONTAINERS, BRUSH/BULKY WASTE FOR COLLECTION

(a) Containers and brush/bulky items shall be placed at curbside for collection as required by City ordinance. Curbside refers to that portion of right-of-way adjacent to paved or traveled City roadways. Containers, brush/bulky items shall be placed as close to the roadway as practicable without interfering with or endangering the movement of vehicles or pedestrians. When construction work is being performed in the right-of-way, containers, brush/bulky items shall be placed as close as practicable to an access point for the collection vehicle. Contractor may decline to collect any residential refuse not properly placed in a Contractor issued container.

(b) Contractor shall provide bins for commercial and industrial units and construction sites whenever customers request their use. Each bin shall be placed in an accessible, unobstructed location on a hard surface according to individual agreement, subject to city ordinance. Contractor may decline to collect refuse in bins not so placed to permit a collection vehicle unobstructed access. Contractor will not be held responsible for wear and tear or surface damage on customer's private property caused by normal collection operations.

## 3.03 ITEMS NOT COLLECTED

Items not collected under the terms of this contract include batteries, liquids of any kind, medical waste, hazardous waste, asbestos, junk vehicles, dirt, rocks, asphalt, items containing Freon, corrugated metal, or any materials not included under the definitions of garbage, rubbish, commercial and industrial refuse, residential refuse, construction debris or brush/bulky waste.

## 4.00 COLLECTION OPERATIONS

5

## 4.01 HOURS OF OPERATION

(a) Collection of residential refuse shall not start before 7:00 a.m. or continue after 7:00 p.m. on the same day unless by the mutual agreement of City and Contractor due to unusual circumstances.

b) Collection of commercial and industrial refuse and construction debris shall take place according to agreement between Contractor and its customers but such agreement shall conform to the terms of City ordinance.

## 4.02 ROUTES OF COLLECTION

(a) Residential collection routes shall be established by the Contractor. Contractor shall submit a schedule designating the residential unit collection routes to the City for its approval, which approval shall not be unreasonably withheld. The Contractor may from time to time propose changes in routes or schedule, which approval shall not be unreasonably withheld. Upon City's approval of the collection routes or any subsequent proposed changes, Contractor shall promptly give written or published notice to the affected residential units.

(b) Commercial and industrial unit collection routes shall be established by the Contractor. All routing must comply with City and State traffic laws. Contractor is not to use alleyways for traffic passage unless bins are located in the alleyway.

## 4.03 HOLIDAYS

The following shall be holidays for the purpose of this contract:

New Year's Day
Memorial Day
Independence Day
Labor Day
Thanksgiving Day
Christmas Day

Contractor may decide to observe any or all of the above mentioned holidays by suspension of collection services on the holiday, but such decision in no manner relieves Contractor of its obligation to provide collection services at residential units once per week and commercial, industrial, and construction customers as per agreement with customer. Contractor will furnish advance notice to City of which holidays will be observed and what the alternate schedule will be. Alternate schedules will be subject to approval by the City.

6

### 4.04 COMPLAINTS

All complaints from a producer, the public or the City shall be made directly to the Contractor and shall be given prompt and courteous attention. In the case of alleged missed scheduled collections, the Contractor shall investigate, and if such allegations are verified, shall arrange for the collection of refuse not collected within 24 hours after the complaint is received.

### 4.05 COLLECTION EQUIPMENT

The Contractor shall provide an adequate number of vehicles for regular collection services. All vehicles, bins and other equipment shall be kept in good repair, appearance, and in a sanitary condition at all times. Each vehicle shall have clearly visible, on each side, the identification and telephone number of the Contractor. The Contractor shall also provide reliable back up vehicles for regular collection service vehicles.

### 4.06 OFFICE

The Contractor shall maintain an office or other facilities through which he can be contacted. It shall be equipped with sufficient telephones and a local telephone number or a toll free number, and shall have a responsible person in charge from 8:00 a.m. to 5:00 p.m. from Monday through Friday, except for holidays.

### 4.07 HAULING

All refuse hauled by the Contractor shall be so contained or enclosed that leaking, spilling or blowing are reasonably prevented.

### 4.08 DISPOSAL

All refuse collected for disposal by the Contractors shall be hauled to a disposal site. The charge for disposal shall be included in the rates set forth in the proposal for each commercial and industrial unit and residential unit serviced by the contractor.

### 4.09 NOTIFICATION

The Contractor shall initially notify all producers at commercial and residential units about regulations and days for scheduled refuse collection.

### 4.10 POINT OF CONTACT

7

*All dealings between the Contractor and the City shall be directed by the Contractor to the City Manager or his/her designated appointee, and by the City to the appropriate person to be designated by the Contractor.*

## 5.00 COMPLIANCE WITH LAW

*The Contractor shall conduct operations under this Contract in compliance with all applicable laws; provided, however, that the General Specifications shall govern the obligations of the Contractor where there exists conflicting ordinances of the City on the subject.*

## 6.00 EFFECTIVE DATE

*This Contract shall be effective upon the execution of the Contract and performance of such Contract shall begin on the date as jointly agreed upon by the parties involved which will ensure a smooth transition of responsibilities between the out-going and in-coming contractor and avoid the interruption of services to the customers. For the purpose of this agreement the effective date will be October 1, 2011.*

## 7.00 NONDISCRIMINATION

*The Contractor shall not discriminate against any person because of race, sex, age, creed, color, religion or national origin.*

## 8.00 INDEMNITY

*The Contractor will indemnify and save harmless the City, its officers, agents, servants, and employees from and against any and all suits, actions, legal proceedings, claims, demands, damages, costs, expenses, and attorneys' fees arising out of a willful or negligent act or omission of the Contractor, its officers, agents, servants, and employees; provided, however, that the Contractor shall not be liable for any suits, actions, legal proceedings, claims, demands, damages, costs, expenses and attorney's fees arising out of the award of this Contract or a willful or negligent act or omission of the City, its officers, agents, servants and employees.*

## 8.00 LICENCES AND TAXES

*The Contractor shall obtain all licenses and permits (other than the license and permit granted by the contract) and promptly pay all taxes required by the State.*

## 10.00 TERM

*The Contract shall be for a four (4) year period beginning upon the execution of Contract. The initial four (4) year term of this Contract can be extended for successive additional three (3) year terms provided both parties are in mutual*

8

agreement. Should a mutual agreement not be reached, either party shall notify the other party in writing not less than one-hundred eighty (180) days prior to the expiration of the initial three (3) year term or of any successive term, if its intention is to terminate this contract. Any such written notice shall be served by certified or registered mail, return receipt requested.

## 11.0   INSURANCE

Contractor shall at all times during the Contract maintain in full force and effect Employer's Liability, Worker's Compensation (or equivalent), Public Liability, and Property Damage Insurance, including contractual liability coverage for the provision of Section VIII.

Before commencement of work hereunder, Contractor agrees to furnish to City certificate of insurance or other evidence satisfactory to City to the affect that such insurance has been procured and is in full force.

For the purpose of this Contract, Contractor shall carry the following types of insurance in at least the limits specified below:

| Coverage: | Limits of Liability: |
|---|---|
| Worker's Compensation (or equivalent) | Statutory |
| Employer's Liability | $500,000.00 |
| Bodily Injury Liability Except Automobile | $500,000.00 each occurrence $1,000,000.00 aggregate |
| Property Damage Liability Except Automobile | $500,000.00 each occurrence $1,000,000.00 aggregate |
| Automobile Bodily Injury Liability | $500,000.00 each occurrence $1,000,000.00 aggregate |
| Automobile Property Damage Liability | $500,000.00 each occurrence |
| Excess Umbrella Liability | $500,000.00 each occurrence |
| Commercial General Liability | $5,000,000.00 |

9

**12.00   TRANSFERABILITY OF CONTRACT**

Other than by operation of law and assignment to affiliates of Contractor, no assignment of the Contract or any right accruing under this Contract shall be made in whole or in part by the Contractor without the express written consent of the City. In the event of any assignment, the assignees shall assume the liability of the Contractor.

**13.00   BASIS AND METHOD OF PAYMENT**

**13.01   COLLECTION**

(a)  For collection service required to be performed pursuant to Section 3.01 (a)-(c), the charges shall not exceed the rates as fixed by the contract documents as adjusted in accordance with Section 13.02.

(b)  For special collection provided by the Contractor pursuant to Section 3.01 (d), the charges are to be negotiated between the Contractor and the producer prior to collection. Fees charges shall be in compliance with a schedule of fees.

(c)  Invoices sent to City by Contractor should reflect the rates shown on the attached rate quotation sheet. See Contractor's proposal attached.

**13.02   MODIFICATION TO RATES**

(a)  The fees which may be charged by Contractor effective October 1, 2012 shall be adjusted upward to reflect changes in the cost of operations, as reflected by fluctuations in the Consumer Price Index for All Urban Consumers Water and Sewer and Trash Collection Services Index as published by the U.S. Department of Labor, and the Gulf Coast Weekly Retail On-Highway Diesel Prices Index as published by the Department of Energy. As of October 1, 2014 and on October 1 of each subsequent twelve (12) month period thereafter (the "Rate Modification Date"), fees shall be increased the ensuing twelve-month period in a percentage amount equal to ninety percent (90%) of the net percentage change of the Water and Sewer and Trash Collection Services Index, plus ten percent (10%) of the net percentage change of the Diesel Prices Index. All percentage changes are to be computed as the twelve month average, year over year difference between the index values as of the month of June. Annually modified rates shall not be lower than preceding year's rates.

(b) As soon as possible before a Rate Modification Date, Contractor shall send to City a comparative statement setting out for both the Water and Sewer and Trash Collection Services Index and the Diesel Prices Index: (i) the twelve month average index values as of the month of June from the current and

10

previous year; (ii) the net percentage change; (iii) the composite percentage change equal to ninety percent (90%) of the net percentage in the Water and Sewer and Trash Collection Services Index, plus ten percent (10%) of the net percentage change in the Diesel Prices Index; and (iv) the increase in the fees which may be charged by Contractor. Increases enacted under this section shall not exceed 4% per contract year.

(c) In addition, to the adjustment described in 13.02(a) and 13.02(b), the Contractor may from time-to-time petition the City for unit price adjustments on the basis of increased disposal costs, change in disposal site, additional duties and responsibilities imposed upon Contractor by changes or additions to laws, ordinances, rules or regulations currently in effect or additional duties and responsibilities imposed by new laws, ordinances, rules and regulations not in effect on the effective date of this Contract.

**13.03   CITY TO ACT AS COLLECTOR.** The City shall submit statements to and collect from all customers for residential, commercial receiving residential, and commercial bin services provided by the Contractor pursuant to Section 3.01 (a) and 3.01 (b), including those such accounts that are delinquent.

**13.04   CONTRACTOR TO ACT AS COLLECTOR.** The Contractor shall submit statements to and collect from all construction (roll-off) bin services provided by the Contractor pursuant to Section 3.01 (c), including those accounts that are delinquent.

**13.05   DELINQUENT AND CLOSED ACCOUNTS.** The Contractor shall discontinue refuse collection services to all customers as set forth in a written notice sent to it by the City. Upon further notification by the City, the Contractor shall resume refuse collection on the next regularly scheduled collection day. The City shall indemnify and hold the Contractor harmless from any claims, suits, damages, liabilities or expenses (including, but not limited to expenses of investigation and attorneys' fees) resulting from the Contractor's discontinuing service at any location at the direction of the City.

**13.06   CONTRACTOR BILLINGS TO CITY.** Within three (3) days following the end of each month, the City shall submit to Contractor the number of active residential units, commercial units receiving residential service, and commercial bin units during the preceding month. The Contractor shall bill the City for services rendered to residential units, commercial units receiving residential service, and commercial bin units within five (5) days following the end of the month of service and the City shall pay the Contractor on or before the twentieth (20th) day following the end of such month. Should Payment not be received on or before the twentieth (20th) day following the end of such month, a late fee of 1.5% will be charged on the delinquent amount. Such billing and payments shall be based on the price rates and schedules set forth in the contract documents. Subsequent to said billing, the

11

Contractor shall be entitled to payment for services rendered to all residential units and commercial units and industrial units irrespective of whether or not the City collects from the producer for such services.

13.07 **FRANCHISE FEES.** City shall receive 5% of all revenues as a franchise fee.

14.00 **EXCLUSIVE CONTRACT**

The Contractor shall have the sole and exclusive franchise, license, and privilege to provide brush/bulky waste, residential, commercial, industrial, and construction / demolition refuse collection, removal and disposal services within the corporate limits of the City. The Contractor shall at all times have the right of first refusal to the collection of dead animals and hazardous waste from residential units and from commercial and industrial units.

15.00 **OWNERSHIP**

Title to refuse of any dead animals shall pass to the Contractor when placed in Contractor's collection vehicle, removed by the Contractor from a bin or Container, or removed by Contractor from the customer's premises, whichever last occurs.

16.00 **RECORDS AVAILABLE FOR INSPECTION**

All records maintained by the Contractor regarding performance of this Contract shall be available for inspection, audit or photocopying by the City during regular business hours.

17.00 **JURISDICTION**

Any disputes arising under this Contract shall be decided pursuant to the laws of the State of Texas and venue shall rest in Starr County, Texas.

18.00 **ENTIRE AGREEMENT**

This Contract together with any attachments hereto represents the entire agreement between the parties hereto and any other representatives or inducements which may have been made between the parties and which are not included herein are void.

12

## 19.00   TERMINATION

*Notice of Breach – In the event of material breach of any term of this agreement, the Board of Alderman shall by resolution adopted at a Board of Councilmen meeting give the contractor formal notice of the material breach of the agreement, and contractor's failure to cure such stated cause within (30) days upon receipt of said notice. A copy of the resolution shall be promptly delivered to the contractor via certified mail at the address provided herein. The contractor shall have no more than (30) calendar days from the date of delivery of the resolution to correct or relieve the material breach of the agreement and notify the City Manager, in writing of the action for remediation taken by contractor to correct or relieve the material breach of the agreement. Should the Board of Councilmen at its reasonable discretion determine that Contractor failed to correct or relieve the material breach of the agreement, the Board of Councilmen, by resolution may terminate this agreement. Such termination shall be effective at the reasonable discretion of the Board of Councilmen the best interest of the community and to protect the health and safety of the residents.*

## 20.00   CLEAN-UPS

*In the event of a natural disaster for which the City is declared a disaster area by the State or Federal Government, it shall be the City's responsibility to dispose of brush and bulky waste caused by such disaster; and will attempt in good faith to use Contractor's services and facilities if they can be used at a competitive cost as other methods available to the City; and can be mutually agreed upon by the Contractor and the City. This provision shall not apply to the disposal of any brush and bulky waste not caused by the natural disaster.*

## 21.00   INDEMNIFICATION

*Indemnification. To the fullest extent permitted by applicable law, the Contractor and its agents, partner, subcontractors, and consultants (collectively "Indemnitors") shall and do agree to indemnify, protect, defend and hold harmless the Owner, the Owner's respective directors, elected officials, employees and agents (collectively "Indemnitees") from and against all claims, damages, losses, liens, causes of action, suits, judgments and expenses, including attorney fees, of any nature, kind of description (collectively "Liabilities) of any person or entity whomsoever arising out of, caused by or resulting from the performance of the Contractor's services through activities of the Contractor, its agents, partners, subcontractors and/or consultants performed under this Agreement, and which are caused by or result form error, omission, or negligent act of the Contractor or of any person employed or contracted by the Contractor provided that any such Liabilities (1) are attributable to bodily injury, personal injury, sickness, disease or death of any person, or to the injury to or destruction of tangible resulting therefrom and (2) are caused in whole or in part by any negligent act*

13

*or omission of the Contractor, anyone directly or indirectly employed by the Contractor or anyone for whose acts the Contractor may be legally liable. The Contractor shall also save harmless the Owner from any and all expense, including, but not limited to, attorney fees which may be incurred by the Owner in litigation or otherwise resisting said claim or liabilities which may be imposed on the Owner as a result of such activities by the Contractor, its agents, partners, subcontractors and/or consultants. In this connection, it is agreed and understood that the Contractor shall not be responsible for any portion of the liability proximately caused by the Owner's negligence.*

### *22.00    CONDITIONS OF CONTRACT*

*This Contract is entered into subject to the following conditions:*

*(a) Neither the Contractor nor the City shall be liable for the failure to perform their duties if such failure is caused by a catastrophe, riot, war, governmental order or regulation, strike, fire, inclement weather, accident, act of God or other similar or different contingency beyond the reasonable control of the Contractor or City.*

*(b) In the event that any provision or portion thereof of any Contract Document shall be found to be invalid or unenforceable, then such provision or portion thereof shall be reformed in accordance with the applicable laws. The invalidity or unenforceability of any provision or portion of any Contract Document shall not affect the validity or enforceability of any other provision or portion of the Contract Documents.*

14

IN WITNESS WHEREOF, WE, the contracting parties, by our duly authorized agents, hereto affix our signatures and seals at Rio Grande, Texas, as of the 6th day of February 2013.

CITY:

CITY OF RIO GRANDE, TEXAS
A Municipal Corporation of
Starr County, Texas

By: _____
Title _____

SEAL of the City of Rio Grande, Texas and _____
City Secretary

ATTEST:                                    CONTRACTOR:

_____

BFI Waste Services of Texas, LP, a Delaware
limited partnership d/b/a Allied Waste
Services of Rio Grande Valley

By: _____
Name: _____
Title: _____

15

## *Rate Schedule*

* Pricing Information contained herein includes a 5% franchise fee payable to the City of Rio Grande City on a quarterly basis.

### *96-Gallon Cart Pricing*

* Once per week residential 96-gallon cart: $11.61* per month
* Once per week second residential 96-gallon cart: $6.20 per month (limit of one per residence at this price).

* Once per week small commercial 96-gallon cart: $14.06* per month
* Once per week second small commercial 96-gallon cart: $7.30 per month (limit of one per unit at this price).

* Once per month brush/bulky waste collection: $4.64 per month.

### Rio Grande City Commercial Rates as of October 1, 2012

| Container Size | 1 x wk | 2 x wk | 3 x wk | 4 x wk | 5 x wk | 6 x wk |
|---|---|---|---|---|---|---|
| 2 cubic yard | $ 51.59 | $ 97.97 | $ 144.36 | $ 190.73 | $ 237.11 | $ 283.49 |
| 3 cubic yard | $ 65.34 | $ 127.13 | $ 186.62 | $ 246.76 | $ 306.90 | $ 366.03 |
| 4 cubic yard | $ 87.13 | $ 168.00 | $ 248.80 | $ 329.77 | $ 410.64 | $ 485.28 |
| 6 cubic yard | $ 120.90 | $ 233.46 | $ 346.02 | $ 458.58 | $ 571.15 | $ 683.71 |
| 8 cubic yard | $ 142.53 | $ 276.67 | $ 409.82 | $ 541.96 | $ 675.11 | $ 884.68 |
| 30 cubic yard | $224.08/Haul, $28.28/Ton Disposal and $4.17/Day Rental | | | | | |

* *Rental waived if hauled at least twice per month.
* Rates quoted above do not include $1.00 per account billing fee.

16



ALLIED WASTE SERVICES
A REPUBLIC SERVICES COMPANY

January 30, 2013

Ruben O. Villareal - Mayor
The City of Rio Grande City
101 South Washington St.
Rio Grande City, Texas 78582

Re: Contract Extension

Dear Mayor,

We at Allied Waste have enjoyed our relationship with the residents, business owners, and City staff of Rio Grande City since we began providing solid waste services in October, 2007.

Since the service began, the City has taken on an improved appearance due to the monthly brush/bulky collection, complaints have been minimal, and rates have remained reasonable.

As you are aware, our current contract term ends on September 30, 2015. Section 10.00 (Term) allows for 36 month contract extensions. At this time, I would like to request that the contract be extended for an additional 36 month period (new term ends September 30, 2018). This would allow the residents and business owners of Rio Grande City to continue to receive the excellent service they have become accustomed to. All other terms of the contract would remain unchanged.

If accepted, Allied Waste would waive the 2012 and 2013 CPI increases. If not accepted, the 2012 CPI increase would remain in effect.

Thank you for your consideration of this matter and please do not hesitate to contact me at (800) 423-7316 office, or (956) 495-4236 mobile if you should have questions.

Sincerely,

Jon M. Delcia
General Manager

Cc:   Mayor Ruben O. Villareal
      Mayor Pro-tem Hernan Garza III
      Commissioner Dave Jones
      Commissioner Arcardio Salinas III
      Commissioner Rey Ramirez

P O Drawer 1217
La Feria, TX 78559
956.423.7316 / FAX 956.428.2045
www.disposal.com

Cause No. DC-15-604

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, <br> D/B/A ALLIED WASTE SERVICES OF <br> RIO GRANDE VALLEY | § <br> § <br> § <br> § | IN THE DISTRICT COURT |
| Plaintiff | § <br> § | |
| v. | § <br> § <br> § | 229th JUDICIAL DISTRICT |
| CITY OF RIO GRANDE, TEXAS <br> AND IT'S ELECTED OFFICIALS IN <br> THEIR OFFICIAL CAPACITIES <br> Defendants | § <br> § <br> § <br> § | STARR COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

This Court, having considered BFI WASTE SERVICES OF TEXAS, LP, D/B/A ALLIED WASTE SERVICES OF RIO GRANDE VALLEY's ("Allied") Petition for a Temporary Restraining Order and all evidence and arguments of counsel with/without notice to CITY OF RIO GRANDE and its ELECTED OFFICIALS ("City") is of the opinion that immediate and irreparable injury, loss, or damage will result to Allied before the City of Rio Grande can be served with notice and a hearing held on the application unless the City of Rio Grande and its elected officials are restrained because Allied has presented evidence of an exclusive contract to collect and dispose of solid waste in the City until September 30, 2018 as well as evidence of:

1) The City's actions depriving Allied of State and Federal Constitutional Rights without due process of law;

2) The City's actions depriving Allied of protections afforded by the Contracts Clauses of the State and Federal Constitutions in that Allied has a vested right in a contract and the City is attempting to violate Allied's right by conduct that does not advance any legitimate public purpose;

3) The City's actions depriving Allied of due course of law as afforded by the Texas Constitution wherein citizens such as Allied are protected from government actions taken without due course of law;

4) The City's actions depriving Allied of due process of law as afforded by the 14th Amendment to the U.S. Constitution which protects Allied from actions taken to deprive Allied of its rights without due process of law; and



**EXHIBIT**

2

5) The City's actions breaching an agreement which will cause Allied irreparable harm in that Allied will be left with no adequate remedy at law if the City is not enjoined from breaching its agreement with Allied; IT IS THEREFORE,

ORDERED that the Clerk of this Court issue a Temporary Restraining Order, operative until the 22nd day of October, 2015, and pending the hearing ordered below, restraining the City of Rio Grande or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them who receive actual notice of this Order from

A.      Taking any action that is inconsistent with Allied's contract rights as the exclusive franchisee for solid waste and disposal services, including but not limited to allowing another party to provide those same services;

B.      Preventing Allied from providing those services and from taking any other action or inaction interfering with Allied's right to exclusively provide solid waste collection services in the City and receive payment therefor during the term of the Agreement. Allied shall, prior to the issuance of the restraining order, file with the Clerk a bond executed by Plaintiff in the sum of $ 1000⁰⁰ _____, payable to City of Rio Grande, approved and conditioned as the law requires. It is, further,

ORDERED that Allied's Petition for a Temporary Injunction, as contained in its verified Original Petition, will be heard in the 229th Judicial District Court on the 22nd day of October, 2015, at 2:00 o'clock _ p.m.

SIGNED this 12th day of October, 2015.

*Magdalia Lopez*

Judge Presiding

Cc: Law Office of John David Franz          jdf@johndavidfranz.com
    400 N. McColl, Suite B
    McAllen, TX 78501

Cause No. DC-15-604

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, | § | IN THE DISTRICT COURT |
| D/B/A ALLIED WASTE SERVICES OF | § | |
| RIO GRANDE VALLEY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | 229ᵗʰ JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| CITY OF RIO GRANDE, TEXAS | § | |
| AND IT'S ELECTED OFFICIALS IN | § | |
| THEIR OFFICIAL CAPACITIES | § | |
| Defendants | § | STARR COUNTY, TEXAS |

## ORDER

The Court, having called Plaintiff BFI WASTE SERVICES OF TEXAS, LP, D/B/A ALLIED WASTE SERVICES OF RIO GRANDE VALLEY's ("Allied") Application for Temporary Injunction, and the Court having recessed the hearing until 11:00 A.M. on November 5, 2015, is of the opinion that the Temporary Restraining Order in effect in this case should be extended. It is, therefore,

ORDERED that the hearing on Allied's Application for Temporary Injunction is recessed and reset to continue on the 5ᵗʰ day of November, 2015 at 11:00 A.M. in the 229ᵗʰ Judicial District Court of Starr County, Texas, and that the Temporary Restraining Order issued in this case be continued in full force and effect until that time.

*Parties to attend mediation prior to next setting*

SIGNED this 26th day of October, 2015, at 10:43 A .m.

*Migdalia Lopez*

Presiding Judge Migdalia Lopez, Judge of the 197ᵗʰ Judicial District Court of Cameron County, Texas

**EXHIBIT**

tabbies

3

STATE OF TEXAS §

§

COUNTY OF HIDALGO §

## AFFIDAVIT of JESSE SANCHEZ

BEFORE ME, the undersigned authority, personally appeared JESSE SANCHEZ, who being by me duly sworn deposed as follows:

My name is JESSE SANCHEZ. I am the Operations Supervisor for BFI Waste Services Of Texas, LP, D/B/A Allied Waste Services of Rio Grande Valley. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am an Operations Supervisor for BFI Waste Services Of Texas, LP, D/B/A Allied Waste Services of Rio Grande Valley ("Allied"). Part of my responsibility is to supervise solid waste collection and disposal in the City of Rio Grande. Attached to this affidavit which is part of Allied's Motion to Remand and Request to Extend Temporary Restraining Order hereto are **Exhibits A** and **B**. These exhibits are each copies of photographs I took in the City of Rio Grande on October 29, 2015 at a time when it was my understanding that the City of Rio Grande was prohibited by a State District Court Judge's Order from allowing any solid waste collection company other than Allied from collecting solid waste in the City of Rio Grande. Each of the photographs clearly and accurately depict a Grande Garbage Collection Company truck collecting solid waste at SDI Operating, 5270 East U.S. Highway 83, a commercial location within the corporate limits of the City of Rio Grande on October 29, 2015.

_____
Jesse Sanchez
Operations Supervisor

SUBSCRIBED AND SWORN TO before me, on the 3rd day of November, 2015.

_____
Notary Public in and for the State of Texas
My Commission Expires: 6-04-2016

MELBA MARTINEZ
Notary Public, State of Texas
My Commission Expires
June 04, 2016

Jesse Sanchez Affidavit

**EXHIBIT**

4



tabbies®

EXHIBIT

A.

EXHIBIT
B.

LAW OFFICES OF

# JOHN DAVID FRANZ

400 N. McCOLL, SUITE B
McALLEN, TX 78501

BOARD CERTIFIED
PERSONAL INJURY TRIAL LAW                                                                                    (956) 888-3300
TEXAS BOARD OF LEGAL SPECIALIZATION                    November 2, 2015                      FAX: (956) 888-3578

Jacqueline R. Salinas
**City Attorney**                              Via Fax:  (956) 317-1269
City of Rio Grande                         & Email
507 N. Britton Ave.
Rio Grande City, Texas 78582

Tony Martinez
**Martinez, Barrera & Martinez, LLP**          Via Fax (956) 544-3559
1201 East Van Buren                        & Email
Brownsville, Texas 78520

### Re:  MEDIATION

Dear Ms. Salinas and Mr. Martinez:

As you are both aware, Judge Lopez of the 197th Judicial District Court sitting in Starr County pursuant to an assignment by Justice Hecht, issued a Temporary Restraining Order enjoining the City of Rio Grande from interfering with Allied's contractual right to collect and dispose of solid waste within the corporate limits of Rio Grande City.  The Temporary Restraining Order was extended on October 22, 2015 pending completion of the Temporary Injunction Hearing.  The extension of the Temporary Restraining Order included an order to mediate this case.  Attached is a copy of the Court Order requiring us to mediate before the next setting (November 5, 2015).

Last week, in an effort to comply with Judge Lopez' order, I communicated extensively with Ms. Salinas, Mr. Hinojosa and potential mediators regarding an agreeable mediation date and time.  I advised Ms. Salinas that Scott McLain was available on November 2, 2015 and she rejected the date because co-counsel Martinez would not be available.  Ms. Salinas did say Gil Peralez was available on November 3, 2015 and she would like mediation in the afternoon so that Mr. Martinez could attend.  After contacting the mediator Ms. Salinas suggested the afternoon of November 4, 2015 was proposed as an acceptable mediation date.  Ms. Salinas stated that the afternoon of November 4, 2015 was acceptable and Mr. Peralez was advised that the parties would present themselves for mediation at his office at noon on November 4, 2015. Ms. Salinas was copied on an email to Mr. Peralez which confirmed the mediation date and time. See attached copy of email.  At no time has anyone representing the City indicated anything that would indicate an unwillingness to mediate this case as ordered by Judge Lopez.

**EXHIBIT**

**5**

On Saturday October 31, 2015, Defendant Rio Grande City removed the case to federal court. Please be advised that although Judge Lopez no longer has jurisdiction over this case, her orders remain in effect. Case law, including some U.S. Supreme Court holdings make it clear that "after removal, state court orders remain in effect."

"[A]fter removal, such state court orders remain in effect but 'federal rather than state law governs the future course of proceedings.' " *Palmisano v. Allina Health Systems, Inc.*, 190 F.3d 881, 885 (8th Cir.1999) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 437, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)). In other words, "after removal, the federal court merely takes up where the state court left off." *Alpert v. Resolution Trust Corp.*, 142 F.R.D. 486, 487 (D.Colo.1992). The court "must apply the Federal Rules of Civil Procedure and treat the case as though it were originally commenced here." *Bruley v. Lincoln Property Co., Inc.*, 140 F.R.D. 452, 453 (D.Colo.1991). Consequently "[a]n ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." *Granny Goose Foods*, 415 U.S. at 439–40, 94 S.Ct. 1113; *Rothner v. City of Chicago*, 879 F.2d 1402, 1418 (7th Cir.1989); *Carrabus v. Schneider*, 111 F.Supp.2d 204, 210–11 (E.D.N.Y.2000).

Therefore, Allied will be present at Mediator Gil Peralez' office at noon on November 4, 2015 to mediate the case as ordered by Judge Lopez. I trust that Rio Grande City and each of the defendants will be present for the mediation ordered by Judge Lopez and agreed to by Ms. Salinas as attorney for Rio Grande City and its elected officials.

Sincerely,

John David Franz

JDF/mm

Encl. Order Extending TRO and Ordering Mediation

Cc: Gilberto Hinojosa     Via Email
    Gil Peralez          Via Email

Cause No. DC-15-604

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, D/B/A ALLIED WASTE SERVICES OF RIO GRANDE VALLEY | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | 229th JUDICIAL DISTRICT |
| | § | |
| CITY OF RIO GRANDE, TEXAS AND IT'S ELECTED OFFICIALS IN THEIR OFFICIAL CAPACITIES | § | |
| Defendants | § | STARR COUNTY, TEXAS |

## ORDER

The Court, having called Plaintiff BFI WASTE SERVICES OF TEXAS, LP, D/B/A ALLIED WASTE SERVICES OF RIO GRANDE VALLEY's ("Allied") Application for Temporary Injunction, and the Court having recessed the hearing until 11:00 A.M. on November 5, 2015, is of the opinion that the Temporary Restraining Order in effect in this case should be extended. It is, therefore,

ORDERED that the hearing on Allied's Application for Temporary Injunction is recessed and reset to continue on the 5th day of November, 2015 at 11:00 A.M. in the 229th Judicial District Court of Starr County, Texas, and that the Temporary Restraining Order issued in this case be continued in full force and effect until that time. _Parties to attend mediation prior to next setting_

SIGNED this 26th day of October, 2015, at 10:43 A.m.

_Migdalia Lopez_
Presiding Judge Migdalia Lopez, Judge of the 197th Judicial District Court of Cameron County, Texas

## John David Franz

| | |
|---|---|
| **From:** | John David Franz |
| **Sent:** | Wednesday, October 28, 2015 6:22 PM |
| **To:** | 'gpp@peralezfranzlaw.com'; 'Jacqueline Salinas'; Gilberto Hinojosa (ghinojosa@ghinojosalaw.net) |
| **Subject:** | Mediation Date: November 4, 2015 Noon |

Counselors:   Mr. Gil Peralez has agreed to mediate our case starting at noon on November 4, 2015 at his McAllen office on Dove Street. I trust we will have representatives from each of the parties with authority to settle. Mr. Peralez will have his office send out the necessary documents to each of us.   Ms.Salinas has agreed to the date as has Mr. Hinojosa.   We are moving forward with mediaton on that date.   JD

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, | § | |
| d/b/a ALLIED WASTE SERVICES OF | § | |
| RIO GRANDE VALLEY, | § | Case No. 7:15-cv-00459 |
| | § | |
| Plaintiff, | § | |
| | § | Judge Micaela Alvarez |
| v. | § | |
| | § | |
| CITY OF RIO GRANDE CITY, TEXAS | § | |
| AND IT'S ELECTED OFFICIALS IN | § | |
| THEIR OFFICIAL CAPACITIES, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Plaintiff has asked this Court to expedite consideration of **Plaintiff's Motion to Remand** and Request to Extend Temporary Restraining Order. After consideration of the Motion, and good cause shown, there appearing no just reason for delay,

**IT IS HEREBY ORDERED** that **Plaintiff's** Motion to Remand and Request to Extend Temporary Restraining Order be set for hearing on an expedited basis.

The Court hereby sets this matter for consideration on the _____ day of November, 2015 at _____ o'clock _____.m. in the U.S. District Court, Bentsen Tower, 9ᵗʰ Floor, 1701 W. Business Highway 83, McAllen, Texas.

Signed this _____ day of November, 2015.

_____
Hon. Micaela Alvarez

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, d/b/a ALLIED WASTE SERVICES OF RIO GRANDE VALLEY, | § § § § | Case No. 7:15-cv-00459 |
| Plaintiff, | § § | Judge Micaela Alvarez |
| v. | § § | |
| CITY OF RIO GRANDE CITY, TEXAS AND ITS ELECTED OFFICIALS IN THEIR OFFICIAL CAPACITIES, | § § § § § | |
| Defendants. | § | |

## ORDER

Having considered Plaintiff's Motion to Remand and Request to Extend Temporary Restraining Order, and good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Request to Extend Temporary Restraining Order is granted, and that the Temporary Restraining Order issued by the Starr County District Court in this case be continued in full force and effect until the merits of Allied's Application for Temporary Injunction have been decided.

IT IS FURTHER ORDERED that Plaintiff's Motion to Remand is set for hearing on the ____ day of November, 2015 at _____ o'clock ____.m. in the U.S. District Court, Bentsen Tower, 9th Floor, 1701 W. Business Highway 83, McAllen, Texas.

Signed this _____ day of November, 2015.

_____
Hon. Micaela Alvarez

1

# EXHIBIT C

United States District Court
Southern District of Texas
**ENTERED**
November 10, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:15-CV-459 |
| | § | |
| CITY OF RIO GRANDE CITY, TEXAS, | § | |
| *et al,* | § | |
| | § | |
| Defendants. | | |

## ORDER

Pending before the Court is BFI Waste Services of Texas, L.P.'s ("Plaintiff") motion to remand.[1] After considering the motion and relevant authorities, the Court **GRANTS** the motion.

### I. Background

On October 8, 2015 Allied Waste Services ("Plaintiff") filed a petition for declaratory judgment in state court against City of Rio Grande ("RGC") and certain elected officials of Rio Grande City (collectively "Defendants").[2] According to Plaintiff, October 1, 2011 is the effective date of an agreement entered into by Plaintiff and RGC in which Plaintiff alleges it was granted the exclusive license to perform solid waste collection services within the corporate limits of RGC through 2018.[3] Plaintiff made various allegations in its original petition, including that RGC breached the agreement by terminating it, violated the contract clause of the U.S. Constitution, and violated of the 14th Amendment.[4]

---

[1] Dkt No. 4 ("Motion").
[2] Dkt. No. 5, Exh. 1 (Original Petition).
[3] *Id.*
[4] *Id.*

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, CLERK
By
Deputy Clerk

On October 31, 2015, the case was removed to this Court by Defendants. As basis for the removal, Defendants assert that jurisdiction is proper based on diversity and because Plaintiff alleges that RGC violated the contract clause of the U.S. Constitution and the 14th Amendment.[5] The Court now addresses the merits of Plaintiff's motion.

## II. Discussion

As basis for the requested relief, Plaintiff points to a venue clause provision in Plaintiff and RGC's agreement which states "venue *shall* rest in Starr County, Texas."[6] The Fifth Circuit has held that in order "[f]or a contractual clause to prevent a party from exercising its right to removal, the clause must give a clear and unequivocal waiver of that right. A party may waive its rights by . . . establishing an exclusive venue within the contract."[7] Additionally, "contractual clauses purporting to waive federal jurisdiction must be mandatory . . . . [And such clauses] will be enforced only if enforcement is reasonable."[8]

In the instant case, the Court is convinced that remand is proper. The plain text of the clause at issue clearly establishes that the clause is mandatory. Additionally, in *Collin County*, the Fifth Circuit found that a clause in the parties' agreement stipulating that venue for all actions between the parties *shall* lie in Collin County, Texas, constituted an effective waiver of federal removal rights because there was no federal courthouse in Collin County.[9] Here, similar to the facts in *Collin County*, Starr County is also without a federal courthouse. Lastly, there is nothing before the Court indicating that enforcement of the clause would be unreasonable. Plaintiff is merely asking the Court to enforce a provision which would in effect send the parties back to the state court in the county where RGC is located. Thus, the Court believes that the venue clause at

---

[5] Dkt. No. 2 at ¶¶ 3-4.
[6] Dkt. No. 5, Exh. 1 p. 12.
[7] *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir.2004).
[8] *Collin County v. Siemens Bus. Servs., Inc.*, 250 Fed.Appx. 45, 51 (5th Cir.2007).
[9] *Id.* at 52.

issue in the instant case constitutes an effective waiver of removal rights. Accordingly, the Court **GRANTS** Plaintiff's motion.

### III. Holding

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand and **REMANDS** this case to the 229th Judicial District Court of Starr County, Texas.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 9th day o



# EXHIBIT D

| | | |
|---|---|---|
| BFI WASTE SERVICES OF TEXAS, LP, | § | IN THE DISTRICT COURT |
| D/B/A ALLIED WASTE SERVICES OF | § | |
| RIO GRANDE VALLEY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | 229th JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| CITY OF RIO GRANDE, TEXAS | § | |
| AND IT'S ELECTED OFFICIALS IN | § | |
| THEIR OFFICIAL CAPACITIES | § | |
| Defendants | § | STARR COUNTY, TEXAS |

## TEMPORARY INJUNCTION ORDER

On October 22, 2015 the Honorable Migdalia Lopez, Judge of the 197th Judicial District Court of Cameron County, Texas, having been assigned to preside over this cause by Order of Texas Supreme Court Justice Nathan Hecht, considered the Plaintiff's application for a temporary injunction. Plaintiff BFI Waste Services of Texas, LP D/B/A Allied Waste Services of Rio Grande Valley ("Allied") appeared through its representative, Jon Deicla and by and through its attorneys of record and Defendants, City of Rio Grande, Joel Villarreal, Hernan Garza, III, Arcadio Salinas, Rey Ramirez and Dave Jones in their official capacities as elected officials of the City of Rio Grande appeared by and through their attorneys of record.

The court, after reviewing the pleadings on file, having considered the witness testimony of Juan Zuniga, Maria Becerra and Rey Alegria, having admitted in evidence nineteen (19) exhibits offered by Allied and considered same, as well as the evidence submitted by the City at the temporary injunction hearing; and furthermore, considering that the City has not had an opportunity to conclude its presentation in opposition to Allied's application, the Court conditionally grants Allied's request for Temporary Injunction pending the conclusion of the Temporary Injunction Hearing. The Court is of the opinion that Plaintiff has presented sufficient evidence that it will suffer an immediate and irreparable harm and injury if a temporary injunction is not granted against Defendants and that Plaintiff has no other adequate remedy at law. It also appears from the facts set forth in Plaintiff's verified original petition as well as the evidence presented by the witnesses at the Temporary Injunction hearing that Plaintiff will likely be successful on the merits as to its claims against Defendants, and that unless the court issues a temporary injunction order, subject to the City's right to present evidence at a later date, Allied is entitled to a temporary injunction enjoining Defendants, their agents, servants, employees, representatives, attorneys and those persons in active concert or participation with them from committing any of the acts described below:

A.     Taking any action that is inconsistent with Allied's contract rights as the exclusive

franchisee for solid waste and disposal services, including but not limited to allowing another party to provide those same services;

B.     Preventing Allied from providing those services and from taking any other action or inaction interfering with Allied's right to exclusively provide solid waste collection services in the City of Rio Grande and receive payment therefor during the term of the Agreement.

Unless enjoined, such acts may, and probably will, be committed by Defendants. Injunctive relief is sought for the purpose of maintaining the status quo and preventing the destruction and/or dissipation of Plaintiff's vested property right. If commission of the acts described above is not restrained and enjoined immediately, Plaintiff will suffer immediate irreparable injury because without such relief Plaintiff probably will be deprived of a property interest by the City and its officials without due process of law and will probably be disfranchised of a property right without due course of law . If Defendants are not enjoined, there is a substantial likelihood that Defendants will engage in actions that will cause irreparable harm to Plaintiff. The Court does find that Plaintiff will likely suffer irreparable harm if Defendants are not enjoined in that Plainiff will face logistical challenges of an interruption of Allied's service to over 5,000 residential accounts and over 430 commercial accounts in Rio Grande City and the likely loss of goodwill and disparagement of Allied's business resulting from Defendants arbitrary and unreasonable actions, loss of goodwill and reputation as a result of a public campaign by Defendants to disparage Allied and further, Allied likely has no adequate remedy at law for losses such as consequential damages or damages for disparagement resulting from actions of Defendants. The court finds that no other remedy will fully and adequately preserve Plaintiff's rights and property. For all of the foregoing reasons, the court is of the opinion that Plaintiff is entitled to a Temporary Injunction Order as stated herein.

A Telephonic Docket Control Conference is ordered to be held at 11:30 o'clock A. m. on the 15th day of December , 2015 to schedule the conclusion of the Temporary Injunction hearing.

The Court hereby orders that Allied's $1,000 bond currently on file in relation to the previously granted Temporary Restraining Order remain on file as bond for this Temporary Injunction.

The Court further orders that the parties be allowed to conduct discovery on an expedited basis between the date of this order and the date the the hearing for Temporary Injunction is ultimately concluded.

SIGNED this 10th day of November, 2015.

Hon. Migdalia Lopez, Judge
197th Judicial District Court of Texas